## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **TOTAL REBUILD, INC.,** | § | |
| | § | **Civil Action No. 6:15-cv-01855-RFD-CBW** |
| **Plaintiff,** | § | |
| | § | **JUDGE DOHERTY** |
| **vs.** | § | |
| | § | **MAGISTRATE WHITEHURST** |
| **PHC FLUID POWER, L.L.C.** | § | |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |

_____

### PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF

In response to Defendant's Responsive Claim Construction Brief (Doc. 76-2), Plaintiff, Total Rebuild, Inc. ("Total"), pursuant to the Court's Scheduling Order (Doc. 50), respectfully submits this Reply Claim Construction Brief regarding the claims of Total's U.S. Patent 8,146,428 (" '428 Patent" or "patent-in-suit") to address misstatements of fact and law contained in Defendant, PHC Fluid Power, L.L.C.'s ("Defendant") Brief and to propose agreements to terms over which the parties appear to have little disagreement.

Total maintains its position that claim construction and a *Markman* hearing are unnecessary in the present case and requests that the Court decline to construe any terms as the meaning of all terms and phrases contained within the claims of the '428 Patent are simple to understand in their ordinary meaning as understood by those of ordinary skill in the art and as defined by the '428 Patent specification.

## <u>TABLE OF CONTENTS</u>

*A.* **Defendant Ignores Claim Construction's Proper Purpose** …………………………..1

*B.* **Terms Must Be Given Their Ordinary Meanings** …..…………………………….....4

    *a.* Explosion-Proof Safety Housing…..……………………………………………4

    *b.* Closeable Access Opening In Said Housing …...……………………………….7

    *c.* Means Within Said Housing For Coupling Said High-Pressure Pneumatics
        Testing Equipment To Said High-Pressure Device For Testing…...………………9

    *d.* Means Linking Said High-Pressure Pneumatics Testing Equipment To Said
        Control Panel" or "Coupling Said Control Panel To The Testing Equipment
        Inside Said Housing" AND "Means For Monitoring And Recording…...……….11

    *e.* Stationary Housing…...……………...............................................................18

    **C. CONCLUSION** ………………….………………………..……………21

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318 (Fed. Cir. 1999)……………………......9, 11

*Arnold PipeRentals Co. v. Engineering Enterprises, Inc*., 350 F.2d 885 (5th Cir. 1965)……….14

*Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999)……………...10

*Baxter Int'l, Inc. v. Fresenius Med. Care Holdings, Inc.*, No. 12C6890, 2015 WL 74049 at *3 (N.D. Ill. Jan 5, 2015)………………………………………………………………………………..3

*Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 797, 17 USPQ2d 1097, 1100 (Fed.Cir.1990)………………………………………………………………………………………16

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.,* 55 F.3d 615, 620 (Fed. Cir. 1995)…………………………………………………………………………….7, 9, 21

*Biomedino, LLC v. Waters Tech. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007)………………..3, 10

*Brown v. Piper,* 91 U.S. 37, 41, 23 L.Ed. 200 (1875)………………………………………………15

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc*., 145 F.3d 1303, 1308 (Fed. Cir. 1998)………………………………………………………………………………………..13

*Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186-87 (Fed. Cir. 1998)………..…………………………………………………………………………...2, 18

*C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004)……………………...2

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc. (d/b/a The Home Depot)*, 412 F.3d 1291, 1302 (Fed. Cir. 2005)………………………………………………………………...10

*Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1349 (Fed. Cir. 2013)………..8

*Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1375 (Fed. Cir. 2002)……………….............6

*Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1384 (Fed. Cir. 1986)* ……*10, 16*

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,* 381 F. 3d 111, 1115 (Fed. Cir. 2004)…………………………………………………………………………………………8

*Johnson Worldwide Assocs., v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999)
………………………………………..……………………………………………...…2, 5, 8, 21

*Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir.
1999)………………………………………………………………………………6, 17, 18

*Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362 (Fed. Cir. 2000)…………………………..6

*Kudlacek v. DBC, Inc.*, 25 Fed. Appx. 837, 843 (Fed. Cir. 2001)………………………............18

*Liebel-Flarshiem Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ……………………..6

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)(en banc), *affd*, 517 U.S.
370 (1996) ………………………………………………………….…………………………15, 16, 17

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001)……..………2

*Metter-Toledo, Inc. v. B–Tek Scales, Inc.,* 671 F.3d 1291, 1296 (Fed. Cir. 2012)………………14

*Micro Chem., Inc. v. Great Plains Chem. Co.,* 194 F.3d 1250, 1258 (Fed. Cir. 1999)………….12

*Nomos Corp. v. Brainlab USA, Inc.*, 357 F.3d 1364, 1368 (Fed. Cir. 2004)………………...14, 15

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F3d 1351, 1360 (Fed. Cir.
2008)……………………………………………………………………………..…1, 8, 21

*Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)………………..12, 13

*Outdoors, LLC v. Hunter's Mfg. Co.*, No. CIV 6:08-1916, 2010 WL 4642477, at *8 (W.D. La.
Nov. 8, 2010)…………………………………………………………………………………16

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)………………………...2, 5, 15, 18

*Seachange Int'l, Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005)………………..…6, 18

*Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 782 F.Supp.2d 317, 334 (S.D. Tex.
2011)..........................................................................................................................................1

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1288 (Fed. Cir.
2012)………………………………………………………………..……………..10, 16

*Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023, 4 USPQ2d 1283, 1288
(Fed.Cir.1987)……………………………………………………………………...…….18

*Texas Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002)……………………………2

*U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997)……………..…….1, 3

*White v. Dunbar*, 119 U.S. 47, 52, (1886)……………………………………………………...2, 5

## **SECONDARY SOURCES**

Merriam-Webster's 11th Collegiate Dictionary © 2003………………………………………...20

## **STATUES AND RULES**

35 U.S.C. § 112(f)………………………………………...……………………………...9, 19

28 U.S.C. § 1295(a)(1)…………………………………………………………………….5

**A.      Defendant Ignores Claim Construction's Proper Purpose.**

In addition to containing numerous factual and legal misstatements, Defendant's Responsive Claim Construction Brief fails to further the purpose of claim construction. Claim construction is meant to determine the meaning and scope of the asserted claims by applying the ordinary meaning, as understood by a person of ordinary skill in the art, to a patent's claim terms, without differing from the plain meaning of the claims. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F3d 1351, 1360 (Fed. Cir. 2008). Claim construction is a matter of resolution of fundamental disputes regarding the technical scope of claim terms, "to clarify and when necessary to explain what the patentee covered by the claims." *Id.* at 1362 (citing *U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997)). The purpose of claim construction is not to simply repeat or restate every word in the claims with a redundant construction or synonym. *Id.*; *see also Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 782 F.Supp.2d 317, 334 (S.D. Tex. 2011) (explaining that "a district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims").

Contrary to Total, Defendant asserts that the disputed claims of the '428 Patent require construction and has consistently insisted upon conducting this excessively protracted claim construction program. The claim terms identified by Defendant as requiring construction are only disputed by Total due to Defendant's insistent attempts to either read new limitations into the claims which are not present within the specification or misconstrue the recitation of the '428 Patent's specification in an attempt to further burden and confuse the Court in its role determining the meaning of the claims. The disputed claims have ordinary meanings and are not

1

used in any way that departs from that ordinary and customary meaning. They therefore do not require the Court's instruction as to their meanings. *See e.g., Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001) (affirming the District Court's refusal to construe "irrigating" and "frictional heat").

Many of the claim constructions proposed by Defendant fail to advance that purpose, in that they do not accord the terms the scope of their ordinary meanings and do not clarify or explain what the patentee covered by his claims. Because the claim terms, not the specification, define the patentee's invention and right to exclude, it would be "unjust to the public, as well as an evasion of the law" to construe them in the manner Defendant has proposed. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citing *White v. Dunbar,* 119 U.S. 47, 52 (1886)). The disputed claim terms must be read "not only in the context of the particular claim ..., but in the context of the entire patent, including the specification," and in light of the patent's prosecution history, taking care not to read particular embodiments into the claims. *Phillips*, 415 F.3d at 1313, 1317; *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 1998).

There is a heavy presumption that claim terms mean what they say, and unless otherwise compelled, the Court is required to give full effect to the ordinary meaning of those terms. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999); *Texas Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002). Commonplace terms such as "coupled," "linking", "closeable," and, regarding Defendant's attempt at reading additional limitations into the '428 Patent specification regarding the construction of "housing", "enter" do not require detailed analysis to determine their ordinary and customary meanings. *See e.g., C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004) (forgoing "detailed dictionary analyses"

2

of "comfortable" and "pliable"). "Indeed, in such instances, attempting to construe the terms in question would merely paraphrase one set of words with another and risk creating additional ambiguity, rather than clarity." *Baxter Int'l, Inc. v. Fresenius Med. Care Holdings, Inc.*, No. 12C6890, 2015 WL 74049 at *3 (N.D. Ill. Jan 5, 2015) (citing *U.S. Surgical Corp.,* 103 F.3d at 1568 (Fed. Cir. 1997)). In view of these requirements, Defendant's advocated claim constructions should be rejected by the Court.

Although Defendant gives lip service to the statutes and jurisprudence of patent claim construction in its introduction, it has largely ignored it in proposing constructions, choosing instead to propose overly broad, and sometimes oddly specific, unsupported constructions in a transparent attempt to sweep in as much of the prior art as possible. Additionally, Defendant alludes to an allegation that a claim containing the disputed means-plus-function term is indefinite, and therefore, invalid. *See* Doc. 68 at p. 23-24. However, § 112(f) purposefully allows a patentee to use "broad means-plus-function language, but provide[s] a standard to make the broad claim language more definite" by requiring that the specification point out some structure which performs the specified function and that the "means-plus-function" language of the claim be construed to cover those structures and their equivalents. *Biomedino, LLC v. Waters Tech. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007). The specification must only link the structure to the claimed means, which is "not a high bar: all one needs to do in order to obtain the benefit of [§ 112(f)] is to recite some structure corresponding to the means in the specification, as the statute states, so that one can readily ascertain what the claim means and comply with the particularity requirement of [§ 112(b)]." *Id.* (internal quotations omitted). The constructions proposed by Defendant do not give the patentee the benefit of the structures linked to the claimed functions in the specification and are thus improper.

**B.       Terms Must Be Given Their Ordinary Meanings**

Despite Total's continued assertion that claim construction is unnecessary, Defendant proposed the following terms for construction:

| List of Disputed Claims In The '428 Patent |
| --- |
| explosion-proof safety housing |
| closeable access opening in said housing |
| means within said housing for coupling said high-pressure pneumatics testing equipment to said high-pressure device for testing |
| means linking said high-pressure pneumatics testing equipment to said control panel OR coupling said control panel to the testing equipment inside said housing |
| means for monitoring and recording |
| stationary housing |

*a.  Explosion-Proof Safety Housing*

In its Opening Claim Construction Brief, Total set forth that the construction of the disputed term must include both the meaning of the term "housing" as well as that of "explosion proof" asserting that, "the term Housing, as a term well understood in the art, did not require considerable explanation to be understood as being what it is and must be given its ordinary meaning" (Doc. 70-2 at p. 17 (internal quotations omitted)) and further that the inclusion of the phrase "explosion-proof" further limits "that the housing must be capable of not only functioning as a case or enclosure for containing the device to be tested and high-pressure pneumatic testing equipment within, but also, withstand and contain such shock pressures, pressure blasts, flying fragments or debris, and the energy resulting from combustion." Doc. 70-2 at p. 19 (emphasis

4

added). Rather than addressing the term "explosion proof", Defendant dedicated the bulk of its argument to discussing the inclusion of the terms "bunker" and "chamber" without any discussion of the limitation "explosion proof". Doc. 76-2 at pp. 16-20.

Defendant's inexplicable reason for disregarding the limitation of "explosion proof" is clearly an attempt at gamesmanship on Defendant's part to dilute the meaning of the term and deprive Total of the full effect of the '428 Patent claims and define the claim limitation generally so that it may apply otherwise inapplicable prior art. Total stresses that the Court must presume that the terms in the claim mean what they say, and unless otherwise compelled, give full effect to the ordinary meaning of claim terms and that "[i]t is both unjust to the public and an evasion of the law to construe an invention in a manner different from the plain import of its terms." *Johnson Worldwide,* 175 F.3d at 989 (Fed. Cir. 1999); *Phillips,* 415 F.3d at 1312 (Fed. Cir. 2005)(quoting *White,* 119 U.S. at 52, (1886), internal quotations omitted). Thus, the correct construction of "explosion proof safety housing" must be construed to include the meaning of the limitation "explosion proof", of which Total's proposed construction, as the only construction proposed by the parties to define the housing as "explosion proof", is the proper construction.

Further, misconstruing the well-established Doctrine of Claim Differentiation established by the U.S. Court of Appeals for the Federal Circuit,[1] discussed in considerable depth in Total's Opening Claim Construction Brief (Doc. 65 at pp. 17-18), Defendant carried on with its attempt to shoehorn the limitations of "stationary" and "portable" into the construction of "housing" in Claim 1 of the '428 Patent (Doc. 68 at pp. 17-18). The doctrine of claim differentiation is a presumption "that separate claims do not have the same scope." *Karlin Tech. Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968, 971-72 (Fed. Cir. 1999). Though claim differentiation is only a

---

[1] The Court of Appeals for the Federal Circuit (the Federal Circuit) is unique among the circuit courts of appeals because it has nationwide jurisdiction over certain subject matter, including patents under 28 U.S.C. § 1295(a)(1).

presumption and is not "a hard and fast rule of construction" (*Seachange Int'l, Inc. v. C-Cor Inc.,* 413 F.3d 1361, 1369(Fed. Cir. 2005)(quoting *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000))), the presumption is at its strongest, as in this case, when a limitation from a dependent claim is sought to be read into an independent claim. *Seachange*, 413 F.3d at 1369 (citing *Liebel-Flarshiem Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)); *See also Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1375 (Fed. Cir. 2002). The limitation of "stationary" appears in Claim 7, a dependent claim of independent Claim 1, and the limitation of "portable" appears in Claims 8 and 14, dependent claims of independent Claims 1 and 11, respectively, in which the term "explosion-proof safety housing" appears. As Defendant's proposed construction attempts to read the limitations of dependent Claims 7, 8, and 14 into independent Claims 1 and 11, Defendant's construction should therefore be rejected. If read as suggested by Defendant that the housing Claims 1 and 11 be construed as "a stationary bunker or portable housing", Claim 7's limitation that the explosion proof safety housing be "stationary" and Claims 8 and 14's limitation that the explosion proof safety housing be "portable" would clearly be redundant as those limitations would already have been stated in the construction of independent Claims 1 and 11.

If Defendant is so adamant for the construction of "Explosion-Proof Safety Housing" to include the terms "bunker" and "chamber", as is apparent by such terms being the primary thrust of its claim construction argument (Doc. 68 at pp. 16-18), Total has no objection to the inclusion of such terms within its proposed construction and would agree to the construction reading:

> a case, enclosure, bunker, or chamber to cover and protect a structure or a mechanical device able to withstand and confine shock pressure, pressure blasts, flying fragments or debris, and energy resulting from combustion.

However, if there cannot be agreement between Total and Defendant upon such proposal, Total respectfully asks the Court to construe the term as set forth in its proposed claim construction as Total's construction is the only proposal which includes all the limitations, and specifically that of the "explosion proof" nature of the housing, recited and supported by the specification of the '428 Patent.

### b.  *Closeable Access Opening In Said Housing*

The "closeable access opening in said housing" claimed is set forth in the '428 Patent specification as door 19 in housing 11 for inserting a high-pressure device for testing. See The '428 Patent (Doc. 65-1) at Col. 2, Lines 1-3; Col. 3, Lines 4-7; Col. 5 Line 60 to Col. 6, Line 1; Fig. 1. The parties appear to agree that the "closeable access opening" is a door, each of their proposed constructions including the term "door", but Defendant's construction, along with again attempting to improperly limit the meaning of "housing", endeavors to limit the size of such door. Defendant's proposes the construction for the closeable access opening being "A closeable walk-in door" or "a small closeable door". In support of its construction, Defendant cites the recitation of the '428 Specification that door 19 is locked "so that no user/personnel can enter chamber 12." See The '428 Patent (Doc. 65-1) at Col. 3, Lines 55-57 (emphasis added). Yet, the Defendant fails to follow the very legal concepts it recited in its response (Doc. 68 at p. 31) that "claims are to be construed in the light of the specification[ ] and both are to be read with a view to ascertaining the invention" (*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995); *see also Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1349 (Fed. Cir. 2013)) and that "claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or

expressions of manifest exclusion or restriction". *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,* 381 F. 3d 111, 1117 (Fed. Cir. 2004)).

Rather, Defendant goes out of its way following a tenuous string of reasoning that use of the term, "enter", mandates that the "closeable access opening must be one that a user can walk through", and details that such a door would further allow for such other movement, in addition to as "crawling, etc." (Doc. 68 at 22), yet neglects that the "closable access" would allow access or entry of an operator by other means such as a reaching through the access or even driving a vehicle through. Entry is the inherent purpose of all doors whether they are a smaller cabinet door or a large garage door. Use of the word "enter" alone does not rise to the level of manifest exclusion or of restriction as to the size of the door 19. *Innova*, 381 F.3d at 1117. The '428 Patent specification makes no suggestion of the size of door 19, thus must be given its full meaning without the supplementation of additional limiting terms. *See e.g., O2 Micro*, 521 F.3d at 1360; *Johnson Worldwide*, 175 F.3d at 989 ("General descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone").

Furthermore, Defendant has provided no support at all for the limitation in its proposed construction that the closable access be limited to "small". As far as Total can determine by its thorough reading of the '428 Patent, the only reference within the '428 Patent specification regarding size refers to the portable safety system 40 stating that it "comprises a smaller portable enclosure". See The '428 Patent (Doc. 65-1) at Col. 5, Lines 45-46. An argument could be made that, in terms of Claims 8 and 14 which introduce the limitation of the "portable housing", the closable access would be inherently smaller, but such a limitation of "small" cannot apply to the construction of "closable access" in independent Claims 1 and 11 due to the doctrine of claim differentiation, as discussed above. Without a recitation of the "closable access" being "small",

8

or some other suggestion or motivation outside of the portable housing being itself small, Defendant's proposed construction has no support and utterly fails.

As there is no suggestion or reference in the '428 Patent specification to the limitations of size of door 19 as to restrict it to be "small" or only allow "walk-in" or "crawling" movement, the Defendant has clearly moved beyond a reading of the '428 Patent specification and into the realm of its own motive to read a narrower claim limitation than was recited in the '428 Patent specification in an obvious attempt to carve itself a niche in the Court's claim construction outside of the scope of the '428 Patent in order to base its non-infringement defense for its alleged infringing devices. The Court must construe "closeable access opening in said housing" in the light of the '428 Patent specification (*Bell Commc'ns*, 55 F.3d 615, 620 (Fed. Cir. 1995)) and cannot read limitations into the claims where there has not been a showing of "a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction". *Innova*, 381 F.3d at 1116. As the '428 Patent does not support Defendant's proposed limitations, Defendant's construction should therefore be rejected.

> c. *"Means Within Said Housing For Coupling Said High-Pressure Pneumatics Testing Equipment To Said High-Pressure Device For Testing"*

Defendant's assertion that "means within said housing for coupling said high-pressure pneumatics testing equipment to said high-pressure device for testing" lacks support in the specification, is unfounded. 35 U.S.C. § 112(f) "requires both identification of the claimed function and identification of the structure in the written description necessary to perform that function". *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318 (Fed. Cir. 1999). As set forth in Total's Original Claim Construction Brief, the function identified is that of coupling the high

pressure pneumatics testing equipment to the high-pressure device for testing.[2] Doc. 70-2 at p. 23; See also '428 Patent at Col. 3, Lines 2-4; Fig. 1. The next step of identification of the structure for such function was then identified in the '428 Patent specification as "means 12a" which is recited as "[l]ocated entirely within chamber 12" along with the high pressure testing equipment for "coupling the high-pressure pneumatics testing equipment to a high-pressure device for testing." *Id*.; see also the '428 Patent (Doc. 65-1) at Col. 3, Lines 1-4; Fig. 1. The '428 Patent further sets forth that the structures of "pumps, plumbing, hoses, and bleed valves" as being the articles "located entirely within chamber 12." The '428 Patent (Doc. 65-1) at Col. 3, Lines 36-38; Fig. 1. It is clear that such plumbing structures of hoses and pumps are recited in the '428 Patent specification for the purpose of functioning, among other things, as coupling the high pressure pneumatics testing equipment to the high-pressure device.

It has been well-established that a specification need not disclose what is well-known in the art and that a patent need not teach, and preferably omits, what is well known in the art. *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1288 (Fed. Cir. 2012); *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1384 (Fed. Cir. 1986). The Federal Circuit has further alluded that "while it is true that the patentee need not disclose details of structures well known in the art, the specification must nonetheless disclose some structure." *Biomedino,* 490 F.3d at 952 (Fed. Cir. 2007)(quoting, *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc. (d/b/a The Home Depot)*, 412 F.3d 1291, 1302 (Fed. Cir. 2005); *see also Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999) ("There must be structure in the specification" and the requirements of § 112, ¶ 6 will not be met when there is "a total omission of structure").

---

[2] A typographical error in Plaintiff's Original Claim Construction Brief left off the end to Plaintiff's statement, reading "Here, the means 12a functions for coupling the high pressure pneumatics testing equipment to the high-pressure device for" which should have been followed by the word "testing".

Structures for providing coupling to the high-pressure testing equipment are clearly present and disclosed within the '428 Patent specification. As such, Section 112(f) dictates that Total is entitled to have the phrase construed to encompass the structures disclosed in the '428 Patent specification, as well as any equivalents thereto that perform the claimed function. *Al-Site Corp.*, 174 F.3d at 1318.

Defendant does not propose any construction for "means within said housing for coupling said high-pressure pneumatics testing equipment to said high-pressure device for testing", but rather couches its argument purely upon an attempt to misconstrue the contents of the '428 Patent in hopes of invalidating the limitation as indefinite. As Total has identified the function and structure of the means-plus-function limitation, provided the Court with an accurate proposed construction based upon the structures disclosed in the '428 Patent specification and those equivalents known to those of ordinary skill in the relevant art, and Defendant has provided the Court with no proposed claim construction, Total therefore requests that the Court adopt its construction for "means within said housing for coupling said high-pressure pneumatics testing equipment to said high-pressure device for testing" and disregard any further attempt by Defendant to misconstrue the phrase.

   d. *"Means Linking Said High-Pressure Pneumatics Testing Equipment To Said Control Panel" or "Coupling Said Control Panel To The Testing Equipment Inside Said Housing" AND "Means For Monitoring And Recording"*

The constructions proposed by Defendant for the limitations of "means linking said high-pressure pneumatics testing equipment to said control panel", "coupling said control panel to the testing equipment inside said housing" and "means for monitoring and recording" fail under the same deficiency. Total will address Defendant's responses regarding them together to relieve the Court of the burden of Total having to repeat its arguments in separate sections.

11

The proposed constructions of Defendant remain objectionable due to their overly simplified interpretation as to the structural limitations of the "means linking", step of "coupling", and "means for monitoring and recording". Whereas, Total's originally proposed constructions are preferable because they are specific in the structures involved and appropriately differentiate the scope of the claims, fixing the construction of the phrases appropriately for the limitations recited in independent Claims 1, 11, and 16 and dependent Claims 2, 12, and 17 of the '428 Patent.

Total is entitled to have the phrases, means-plus-function claims under § 112, ¶ 6, construed to encompass any structures disclosed in the patent specification, as well as any equivalents thereto that perform the claimed function. *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). Defendant is correct that equivalence under § 112, ¶ 6 requires "functional identity" necessitating the establishment of the function of the substitute structure and a determination of whether the way the substitute structure performs the claimed function substantially different from the structure recited in the patent specification (Doc. 68 at p. 26, citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)), but such requirements clearly support Total's proposed constructions.

As limited by Claims 1, 11, and 16 of the '428 Patent, the "means linking" and step of "coupling" function to link or couple the high-pressure pneumatic testing equipment and the control panel functioning for "operating said high-pressure pneumatics testing equipment". The '428 Patent (Doc. 65-1) at Col. 6, Lines 40-43; Col. 7, Lines 35-38; Col. 8, Lines 23-26. Furthermore, as limited by Claims 2, 12, and 17 of the '428 Patent, the control panel is further defined as functioning to monitor and record the operation of the high-pressure testing equipment from the control panel. The '428 Patent (Doc. 65-1) at Col. 6, Lines 45-48; Col. 7,

Lines 40-43; Col. 8, Lines 29-31. Thus, the function of the "means linking" or step of "coupling" is to link and facilitate the function of the control panel, in view of Claims 1, 11, and 16, as to operate the high-pressure testing equipment and, in light of Claims 2, 12, and 17, to further function to facilitate the monitoring and recording of such operation.

The recited structures for the limitations of Claims 1, 11, and 16 are described as the control panel 16 having pump on/off switch 34 for sending pneumatic signals to turn the high-pressure testing equipment on or off, an adjustable resistor 39 to control or set the amount of fluid flow, and ball valve 37 for functioning to control the main pressure of the control panel 15. The '428 Patent (Doc. 65-1) at Col. 5, Lines 5-10; Fig. 4. Structural equivalence under § 112, ¶6 is met only if the differences are insubstantial, (*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc*., 145 F.3d 1303, 1308 (Fed. Cir. 1998)), or put another way, "if the assertedly equivalent structure performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification." *Odetics*, 185 F.3d at 1267 (citing § 112, ¶ 6). Whether the "control panel" has physical control switches, resistors, valves, etc. or their digital computational equivalent means of controlling the testing equipment, they perform the claimed function of operating the high-pressure testing equipment in substantially the same way of setting limits and sending signals from and to the high-pressure testing equipment through the cables, hoses, tubing, and other equivalent structural "means linking" or "coupling" means to achieve substantially the same result of facilitating the high-pressure test.

The recited structures for the limitations of Claims 2, 12, and 17 are described as chart recorders and pressure gauges on the control panel to facilitate the monitoring and recording of the high-pressure test conducted. The '428 Patent (Doc. 65-1) at Col. 5, Lines 27-29. '428 Patent

13

at Col. 5, Lines 4-7, 17-29; Fig. 4. In determining structural equivalence, whether the "means for monitoring and recording" be an physical or analog pressure gauge, chart recorder, etc. or their digital and computational equivalents, they perform the claimed function of monitoring and recording the operation of the high-pressure testing equipment in substantially the same way of receiving data and signals from the testing equipment through the cables, hoses, tubing, and equivalent structural "means linking" or "coupling" means to achieve substantially the same result of allowing for the monitoring and recording of the test.

Unlike the cases of *Metter-Toledo, Inc. v. B–Tek Scales, Inc.,* 671 F.3d 1291, 1296 (Fed. Cir. 2012) and *Nomos Corp. v. Brainlab USA, Inc.*, 357 F.3d 1364, 1368 (Fed. Cir. 2004) which Defendant relies upon for the suggestion of a limitation of equivalents based on a single recited embodiment in a patent specification, the claims of a patent generally are not strictly limited to a device         described         in         the         specifications         or         depicted         in         a drawing. *Arnold PipeRentals Co. v. Engineering Enterprises, Inc*., 350 F.2d 885 (5th Cir. 1965); *Ziegler v. Phillips Petroleum Co*., 483 F.2d 858 (5th Cir. 1973). *Metter-Toledo* and *Nomos* are inapplicable as they are distinguishable from the present case. The patent involved in *Metter-Toledo* only recited one embodiment including the disputed limitation and the limitation was for a highly specific version of an "A/D converter." *Mettler-Toledo*, 671 F.3d at 1296.[3] Whereas, the present case involves the '428 Patent which recites multiple embodiments (e.g. a stationary embodiment, portable embodiment, etc.) which contain the disputed "means linking", step of "coupling", and "means for monitoring and recording" and, as well understood terms in the art, recites the structure in general terms. Regarding *Novo*, the Court ruled not upon a determination

---

[3] "The '547 patent discloses a single embodiment for the claimed invention that uses a multiple slope integrating A/D converter. In every instance where the specification refers to an "A/D converter", *see, e.g., '*547 patent col.5 l.14, it is referring to the preferred embodiment, which only includes the multiple slope integrating A/D converter 100."

of what structures are equivalent for means-plus-function limitations, which is the present dispute between Total and Defendant, but rather a determination of whether or not the Court's construction would include a single structure, an ultrasound probe, or the combination of two structures, the ultrasound probe and a fixation device.[4] *Nomos*, 357 F.3d at 1367-1368.

Further, the Affidavit of Mr. Lavergne, attached hereto as Exhibit B,[5] provides the Court with the state of the art at the time the '428 Patent was filed regarding common equivalents of the "means linking/coupling" and "means for monitoring and recording" as to a person of ordinary skill in the art. Yet, offhandedly placed within its introductory "Principles of Claim Construction" section of its response, Defendant did not apply such principles in opposition to Total's proposed constructions. Nonetheless, Defendant's recitation misconstrues the holding of the Federal Circuit in *Markman* and *Phillips* and is wholly inapplicable in the present situation.

> Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and <u>inventor testimony</u>, dictionaries, and learned treatises. This evidence may be helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history. Extrinsic evidence may <u>demonstrate the state of the prior art at the time of the invention</u>. It is useful "to show what was then old, to distinguish what was new, and to aid the court in the construction of the patent."

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)(quoting *Brown v. Piper,* 91 U.S. 37, 41, 23 L.Ed. 200 (1875)(internal quotations omitted)(emphasis added); see also *Phillips*, 415 F.3d at 1317 (Fed. Cir. 2005). Defendant's assertion that "the testimony of [an inventor] . . .on the proper construction of the claims is entitled to no deference" (Doc. 76-2 at p. 12 citing *Markman*, 52 F.3d at 983), is a wildly inaccurate representation of the Federal Circuit's holding in *Markman*.

---

[4] Wherein NOMOS contended that the corresponding structure was an ultrasound probe and nothing more and BrainLAB asserted that structure should also contain a "fixation device".

[5] Exhibits A, the '428 Patent, and Exhibit B, the Affidavit of Mr. Lavergne, were originally cited in Plaintiff's Original Claim Construction Brief but inexplicably was not attached. Exhibits A & B are attached hereto for the convenience of the Court.

The inventor testimony, and that of his attorney, in *Markman* was apportioned no deference due to both testifying how the patent should be construed "based on the text of the patent", which amounted to legal opinion, the process which the Court itself was to undertake. *Markman*, 52 F.3d at 983. Even then the Court was not absolutely barred from considering such inventor testimony, but rather "has complete discretion to adopt the expert legal opinion as its own, to find guidance from it, or to ignore it entirely, or even to exclude it." *Id.* (quoting *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 797, 17 USPQ2d 1097, 1100 (Fed.Cir.1990)).

Whereas in the present case, the inventor of the '428 Patent, Terry Lavergne, in Exhibit B, only recites the claim limitations in dispute, references the prosecution history of the '428 Patent, and directs attention in the '428 Patent specification as to the "means linking" or "coupling" and the "means for monitoring and recording" without any recommendation of opinion or analysis based on the text of the '428 Patent. Mr. Lavergne's only testimony regarded providing the Court with the present state of the art at the time the '428 Patent was filed. Extrinsic evidence supported by the holding in *Markman*. *Markman*, 52 F.3d at 980.

In such cases where the patent documents are unambiguous and can clearly guide the Court in the proper interpretation of the claim language, testimony of an inventor is unnecessary, has no effect, and, of course, should not be used to vary or contradict the claim language. *Barnett Outdoors, LLC v. Hunter's Mfg. Co.*, No. CIV 6:08-1916, 2010 WL 4642477, at *8 (W.D. La. Nov. 8, 2010). But, in a case such as this where the patent documents describe structures which are well known in the art and thus do not require further disclosure or explanation and are thus limited (*Streck, Inc.*, 665 F.3d 1269, 1288 (Fed. Cir. 2012); *Hybritech*, 802 F.2d 1367, 1384 (Fed. Cir. 1986)), the testimony of the inventor, as a person of ordinary skill in the art, is necessary to provide the Court with the knowledge and insight of the art at the time of filing the

16

invention. The Affidavit of Mr. Lavergne does not contradict the claim language, nor does it contradict the import of the specification. Rather, it merely provides the Court with the state of the art consistent with the disclosure and prosecution history of the '428 Patent. *Markman*, 52 F.3d at 980.

The Court should disregard Defendant's highly restrictive construction of the limitations of "means linking said high-pressure pneumatics testing equipment to said control panel", "coupling said control panel to the testing equipment inside said housing" and "means for monitoring and recording" as Total has provided the Court with the intrinsic and extrinsic evidence in support of its proposed construction and Defendant has failed to rebut Total's right to the structures disclosed in the specification and their equivalents.

      e.   *"Stationary Housing"*

The "stationary housing" claimed is set forth in the '428 Patent specification as "a stationary explosion-proof safety housing comprising a bunker housing 11 having a chamber 12 therein." The '428 Patent (Doc. 65-1) at Col. 2, Lines 49-51; Fig. 1. Defendant in its response, as discussed above regarding the construction of "housing", again endeavors to limit the construction to only "bunker", and, more specifically as to this disputed term, "a relatively non-movable bunker". Doc. 68 at p. 32. As set forth in its Original Claim Construction Brief (Doc. 65 at pp. 33-34) and as further discussed above, Total has no objection to the inclusion of "bunker" or "chamber" within the defining terms of "housing". However, Defendant attempts to frame Total's proposed construction as some nefarious plot to "eradicate any reference" to the term "bunker" and that Total's proposed construction does not conform to its proposed construction of "explosion-proof safety housing". Doc. 68 at p. 33. This is incorrect.

The limitation of "stationary housing" appears in Claim 7 of the '428 Patent, a dependent claim of Claim 1 wherein "explosion-proof safety housing" initially appears. Claim 7 fully reads, "The safety system for testing high-pressure devices as described in claim 1 wherein said explosion-proof safety housing comprises a stationary housing." Doc. 65 at p. 11. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers. 35 U.S.C. § 112. Thus, "housing", as already defined for the construction of "explosion-proof safety housing" in Claim 1 of the '428 Patent, is read into the meaning of "stationary housing" for Claim 7 and Total, in its proposed construction, reciting the term "housing" as just that focused its attention to the defining of the limiting term "stationary". If the Court sees fit that "housing" within Claim 7 be repetitively defined to include the definition of "explosion-proof safety housing", Total has no objection to such inclusion though opines that such definition would be cumbersome. In such a case, Total respectfully asks the Court to construe "stationary housing" as "a case or enclosure substantially fixed in place or position" or, if Defendant agrees to Total's proposed inclusion of "housing" to include the additional terms "bunker" and "chamber", "a case, enclosure, bunker, or chamber substantially fixed in place or position".

Total's opposition to Defendant's proposed construction is purely upon its insistence in reading a "walk-in" type limitation into the claims. As it did with "closeable access opening", Defendant's bases its proposed construction of "a relatively non-movable bunker intended for movement of personnel into and out of the bunker chamber" entirely upon the use of the term "enter" in the '428 Patent specification describing that "door 19 is locked…so that no user/personnel can enter chamber 12." The '428 Patent (Doc. 65-1) at Col. 3, Lines 55-57.

Defendant is so lacking in support for its contention that the "stationary housing" be limited in size such that personnel would be able to move into and out of the chamber that it resorts to citing the definition of a military "bunker" from Merriam-Webster's online dictionary. Doc. 68 at p. 32. Though Total in general would acknowledge Merriam-Webster's Dictionary as proper extrinsic evidence for defining general terms, Total must direct that application of a definition that a bunker is an embankment, dugout, or chamber below ground could just as easily be replaced by the equivalent definition of "bunker" as "a bin or compartment for storage" from the very same webpage (Merriam-Webster.com, http://www.merriam-webster.com/dictionary/bunker (last visited Apr. 15, 2016)).[6] Defendant's reliance upon such extrinsic evidence carries little if any weight for its proposition that the size of the bunker be intended for movement of personnel into and out of the bunker chamber.

As discussed above regarding Defendant's error in construing "closeable access opening", use of the word "enter" alone does not rise to the level of manifest exclusion or of restriction as to the size (*Innova*, 381 F.3d at 1117) and neglects that "entry" could be by other means of entry of operators or personnel into the housing. The stationary housing 11 is described in the '428 Patent specification as intended to "withstand and confine shock wave or shock pressure radiated by explosions" (The '428 Patent (Doc. 65-1) at Col. 3, Lines 57-58) and to allow "inserting a high-pressure device for testing within bunker housing 11" (The '428 Patent (Doc. 65-1) at Col. 4, Lines 4-7), but does not define a size limit for housing 11. As the '428 Patent specification makes no suggestion of the size the housing 11, "stationary housing" must be given its full meaning without the addition of restrictive and unsupported limiting terms. *See e.g., O2 Micro*, 521 F.3d at 1360; *Johnson Worldwide*, 175 F.3d at 989 ("General descriptive

---

[6] Such suggestion is merely used as example and is in no way proposed as limitation.

19

terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone").

The Court must construe "stationary housing" in the light of the '428 Patent specification (*Bell Commc'ns*, 55 F.3d 615, 620 (Fed. Cir. 1995)) and cannot read limitations into the claims where there has not been a showing of "a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction". *Innova*, 381 F.3d at 1116. As the '428 Patent does not support Defendant's proposed limitations, Defendant's construction should therefore be rejected.

**C.     Conclusion**

Total respectfully requests, consistent with the law on claim construction, that the Court decline to modify the plain meaning of any claims of the '428 Patent and adopt only those constructions necessary to a clear understanding of terms actually in dispute. Where the Court finds a construction is necessary for any particular terms, Total requests that the Court adopt its proposed constructions, as they are consistent with the context of the claims and the '428 Patent's specification.

Respectfully submitted,

/s/ Chase A. Manuel_____
Steven G. Durio (#05230)
William W. Stagg (#1613)
Chase A. Manuel (#35223)
**Durio, McGoffin, Stagg & Ackermann, PC**
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, Louisiana   70505-1308
Phone:  (337) 233-0300
Fax:     (337) 233-0694
**Attorneys for Plaintiffs Total Rebuild, Inc.**

20

**CERTIFICATE OF SERVICE**

I certify that I have, this 1st day of February 2017, provided all parties with a copy of the

foregoing pleading by means of the Western District's CM/ECF electronic filing system.


_____/s/  Chase A. Manuel_____
Chase A. Manuel