# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **TOTAL REBUILD, INC.,** § | |
| § | **Civil Action No. 6:15-cv-01855-RFD-CBW** |
| **Plaintiff/Counterclaim-Defendant,** § | |
| § | **JUDGE DOHERTY** |
| **vs.** § | |
| § | **MAGISTRATE JUDGE WHITEHURST** |
| **PHC FLUID POWER, L.L.C.** § | |
| § | **JURY TRIAL DEMANDED** |
| **Defendant/Counterclaim-Plaintiff.** § | |

## DEFENDANT PHC FLUID POWER, L.L.C.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES FROM TOTAL REBUILD, INC.

# **TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1
II. RELEVANT FACTS .......................................................................................................1
III. ARGUMENT...................................................................................................................8
    A. Total Must Certify that It Has Produced All Quotes and Invoices for Its Systems Created Prior to August 7, 2007. ..........................................................8
    B. Total Must Supplement Its Response to Interrogatory No. 13. ...............................9
    C. Total Must Supplement Its Response to Interrogatory No. 15. ...............................9
    D. Total Must Correct Its Privilege Log. ...................................................................10
    E. Total Should Be Sanctioned for Its Discovery Conduct. ......................................10
IV. CONCLUSION..............................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Total Rebuild, Inc. v. Streamline Hose & Fittings, Inc.*,
    No. 6:15-cv-01172 (W.D.La.) ("*Streamline Action*") ............................................................. 4, 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(d)(1) ............................................................................................................... 11

Fed. R. Civ. P. 37(d)(1)(B) .......................................................................................................... 11

Local Rule 37.1 ............................................................................................................................ 11

In support of its Motion to Compel Discovery Responses from Total Rebuild, Inc. ("Motion"), Defendant/Counterclaim-Plaintiff PHC Fluid Power, L.L.C. ("PHC") hereby states as follows:

## I. INTRODUCTION

After this Court granted PHC's first motion to compel and ordered Plaintiff Total Rebuild, Inc. ("Total") to (1) submit its computer system for a forensic examination and (2) pay PHC's attorneys' fees incurred with the motion, Total continues to delay and provide improper and insufficient responses to PHC's discovery requests. Total fails to identify even a single plausible theory of infringement for any PHC product; provides evasive discovery responses; and conceals relevant information, including information related to PHC's counterclaim for inequitable conduct, which likely will render unenforceable the patent-at-issue. As demonstrated below, Total is simply indifferent to its obligations under the Federal Rules of Civil Procedure and the Local Rules of this Court. Accordingly, this motion to compel should be granted with additional attorney fees awarded and levied upon Total to be paid by a date certain.

## II. RELEVANT FACTS

PHC filed its first motion to compel discovery responses from Total ("First Discovery Motion") on February 14, 2017. (Dkt. 85.) The First Discovery Motion sought, among other things, documents relating to PHC's claim for inequitable conduct, which could render unenforceable the entire '428 Patent. The First Discovery Motion was filed after PHC obtained evidence from non-party Cory Polk comprising Total's own invalidating sales.

This Court ruled on the First Discovery Motion on March 10, 2017 and ordered Total to (1) submit its computer systems for a forensic examination to test, among other contentions, that Total had deleted all electronically stored information for prior years under its purported document retention plan; (2) certify that there is no additional or supplemental information

1

available at this time with respect to PHC's Interrogatory No. 4; and (3) pay a portion of PHC's attorneys' fees incurred in preparing and submitting the First Discovery Motion. (Dkt. 97.) Following the First Discovery Motion, PHC believed Total would be more cooperative with regard to discovery. However, Total has doubled down on its evasive strategies.

Since the Court's ruling, PHC's counsel has contacted Total's counsel on numerous occasions regarding a significant number of deficiencies. Total has largely failed to provide the requested privilege logs, documents, and information.

In a March 24, 2017 Letter, PHC requested "that Total provide a privilege log to PHC" and that Total supplement its response to Request No. 10 to include "any design schematics, drawings, bills of material, or photographs for any of its systems." <u>Exhibit 2</u>[1]. As discussed below, PHC seeks Total's privilege log because it appears Mr. Lavergne, the inventor of the '428 Patent, transmitted prior art to the attorney that prosecuted the '428 Patent during prosecution of the application that resulted in the '428 Patent. This supports PHC's inequitable conduct claim because it shows Mr. Lavergne was aware of his duty to disclose material information to the USPTO. Similarly, the requested design documents support PHC's inequitable conduct claim because they demonstrate that the pre-August 7, 2007 systems Total offered for sale and sold were material to patentability. The design documents are also important because they clarify Total's theory of infringement of the '428 Patent by PHC. This is so because Total alleges that all post-August 7, 2007 systems practice the invention of the '428 Patent, and thus, these systems can be charted against the claim elements of the '428 Patent. Request No. 10 (served on August 5, 2016) requests Total:

> Produce all non-privileged documents, electronically stored information, and tangible things in your possession, custody, and/or control during any time

---

[1] All exhibits referenced herein are attached to the Motion.

between 2000 and the present that refer to or reference safety systems for testing high-pressure devices that include an explosion-proof safety housing.

(Dkt. 85-6.)

The March 24th letter also identified several deficiencies with Total's infringement contentions, including its identification of PHC systems that could never infringe the '428 Patent because required claim elements were missing and Total's baseless assertion of claims 13, 18, and 19 of the '428 Patent.  Exhibit 2.  This was an effort by PHC to streamline this case to only discovery that is related to plausible claims of infringement, not simply a wide-ranging fishing expedition.

On April 4, 2017, PHC's counsel followed-up on its March 24, 2017 letter asking when it could expect to receive Total's privilege log.  Exhibit 3.

On April 5, 2017, PHC's counsel sent Total's counsel an email ("April 5, 2017 Email") requesting any settlement agreement that had been reached in the related case, *Total Rebuild, Inc. v. Streamline Hose & Fittings, Inc.*, No. 6:15-cv-01172 (W.D.La.) ("*Streamline Action*"), now pending before this Court.  Exhibit 4.

On the afternoon of Friday, April 7, 2017, the day before the Court ordered forensic examination of its computer system, Total produced 71 quotes and invoices from prior to August 7, 2007, the critical date of the '428 Patent.  At least one of the invoices was for a "bunker system" that included an "Air op bleed valve" and a "Control center outside test bunker" wherein "All pressure to stay in bunker pumps, bleed valve, hose, ect."  Exhibit 5.  The invoice strongly supports PHC's claim of inequitable conduct and should have been produced long ago.  The invoices actually refute several statements Total made in opposition to the First Motion to Compel.  *See e.g.*, Dkt. 93-2, ("Total's document retention policy is to shred business documents for the oldest year every year and keep the previous seven years of records as instructed by

3

Total's certified public account."); Dkt. 93 at 6 ("All relevant responsive documents related to Total, the '428 Patent, Total's sales of products derived from the '428 Patent, communications regarding the '428 Patent, as well as its sales or offers for sale and communications regarding the present, and any such prior art known of or possess by Total which relate to the '428 Patent in any way has already been produced.")).

According to the statements made in Total's response to the First Discovery Motion and the statements of PHC's counsel at the telephonic hearing on that motion, *these 71 quotes and invoices should not exist*. *See, e.g.*, March 9, 2017 Transcript, p. 7 (Dkt. 109) (Mr. Manuel: "Yes, Your Honor. This is Chase Manuel. That is how they have been instructed by their CPA to kind of handle their documents, but they keep it all in physical format. So once they're done with invoice documents, those documents, they put them in -- save up for, in case they get audited. And then after that seven-year time period has passed [they are shredded].").

The documents produced by Total on April 7, 2017 included a 

On April 13, 2017, PHC's counsel sent to Total's counsel a letter requesting a discovery conference as Total had not produced a privilege log or supplemented its response to Request No. 10 ("April 13, 2017 Letter"). Exhibit 6.

On April 14, 2017, PHC's counsel sent Total's counsel a letter noting further deficiencies with Total's infringement contentions. Exhibit 7. The Patent Rules adopted for this case provide that the Total's infringement contentions must provide "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality …." (Dkt. 51-1, p. 6.) The letter notes that Total's identification of the "sensor for sensing" limitation, which exists in each of the remaining asserted claims of the '428 Patent, in the alleging infringing devices cannot be correct. Total identifies that element as follows:

| Claim 3. The safety system for testing high-pressure devices as described in claim 1 further including: a sensor for sensing that said access opening is closed, said sensor coupled to said bleed valve to activate said bleed valve to prevent pressure buildup in the high-pressure testing equipment if the access opening is not closed. | PHC's Automated High Pressure Testing Systems describe use of a "safety interlock device" which must be activated to begin a test and "Proximity switches" integrated into the system to completely depressurize the system in the event personnel should enter the test area. [http://pneumaticandhydraulic.com/hydrostatic-testing-equipment/automated-high-pressure-testing-systems/#!]. <br><br> As Total's initial contentions are only based upon its preliminary understanding of the limited information currently available in PHC's web based advertisement and as Total has yet to be allowed to examine PHC's devices, Total reserves the right to supplement as discovery proceeds. |
|---|---|

*Id*. However, as the letter notes, Total's assertion that the "safety interlock system … must be activated to begin a test" misses the mark. The claim requires the "sensor coupled to said bleed valve to <u>activate said bleed valve</u> …." This deficiency also underscores PHC's need for documents responsive to Interrogatory No. 10, which as discussed above, requests the diagrams and schematics of Total's devices. The diagrams and schematics of Total's devices will clarify Total's theory of infringement because Total asserts that these devices practice, incorporate, or reflect all claims of the '428 Patent. (Dkt. 85-23, p. 2.) At this time, almost two years after the litigation was commenced, Total has not identified a plausible theory as to how a single asserted claim of the '428 Patent could be infringed by any PHC device.

5

On April 21, 2017, following up on its April 13, 0217 Letter, PHC's counsel again asked Total's counsel for its availability for a discovery conference. Exhibit 8. Total's counsel responded later that day indicating that they were available for a discovery conference on April 26, 2017. Exhibit 9. However, on April 26, 2017, just before the scheduled discovery conference, Total's counsel sent PHC's counsel a letter in which it asserted that "Total does not have any designs schematics or drawings for its systems in its custody and control," and that "there are no specific bill of materials which are responsive to the limitation 'that refer to or reference safety systems for testing high-pressure devices that include an explosion-proof safety housing.'" Exhibit 10. Total did, however, produce a deficient privilege log. *Id*. Total stated that, because there were no responsive documents and it had produced a privilege log, a discovery conference was not needed. *Id*.

PHC's counsel followed up later that day with another deficiency letter ("April 26, 2017 Deficiency Letter"). Exhibit 11. In the letter, PHC's counsel requested that Total supplement its response to Interrogatory No. 15, which requested Total to provide the revenues, profits, and all expenses associated with its system. *Id*. This request for supplementation was in direct response to Total's assertion that it did not have any responsive bills of material. PHC's counsel also requested that Total supplement its Response to Interrogatory No. 13, which requests Total to identify each product which "embodies, practices, or uses any of the alleged inventions claimed in the '428 Patent and identify the specific claim(s) of the '428 Patent that are embodied, practiced, or used in or by such product or service …." Total has withdrawn a substantial number of the claims of the '428 Patent it originally asserted against PHC but has not indicated which of its systems practice the remaining claims. Total's identification of systems that it alleges practice the remaining asserted claims of the '428 Patent is relevant to the amount of

6

Total's alleged damages. The identification will also clarify Total's theory of infringement because the identified systems can be charted against the remaining asserted claims of the '428 Patent.

Most importantly, the April 27th letter again requested Total supplement its privilege log. *Id*. As the letter noted, while most of the entries in the privilege log included dates, the privilege log included the following entry:

| Total Rebuild/PHC 557- Total Rebuild/PHC 578 | Oilfield industry articles transmitted by Terry Lavergne to Thomas Phung | Attorney-Client Privilege. |

*Id*. The entry is important to PHC's inequitable conduct claim because it may further evidence Mr. Lavergne's intent to deceive the USPTO during prosecution of the application that resulted in the '428 Patent. If Mr. Lavergne transmitted the "Oilfield industry articles" to Thomas Phung, the attorney the prosecuted the patent application during the pendency of the application, the entry would further evidence that Mr. Lavergne knew of his duty to disclose material information to the USPTO but failed to do so. Total must provide the date of the transmission and the articles transmitted. This information is not protected from disclosure, because they appear to be documents in the public domain.

After receiving no response from Total, PHC's counsel sent to Total's counsel an email requesting its availability for a discovery conference on May 3, 2017. Exhibit 12. Total's counsel replied on May 5, 2017 by stating that "[w]e are in the process of reviewing and formulating a response to your April 26, 2017 letter. We do not believe a telephone conference will be necessary." *Id*. Notwithstanding Total's assertion that a discovery conference would not be needed, PHC's counsel replied later that day requesting a discovery conference be scheduled

7

anyway. *Id*. PHC's counsel indicated that the discovery conference would be canceled if it was not needed. *Id*. As of the filing of this motion, Total has neither supplemented its discovery responses nor provided a date for a discovery conference.

### III.     ARGUMENT

#### A.     Total Must Certify that It Has Produced All Quotes and Invoices for Its Systems Created Prior to August 7, 2007.

As discussed at length in PHC's First Discovery Motion, PHC obtained evidence from non-party Cory Polk of Total's own pre-August 7, 2007 offers for sale and sales of systems that invalidate the '428 Patent. (Dkt. 85.) These documents strongly support PHC's claim that the entire patent is unenforceable under the doctrine of inequitable conduct. Not only did Total fail to produce these documents, but Total provided PHC with misleading discovery responses in an attempt to conceal their existence.

The day before the court-ordered forensic examination of Total's computer system, Total produced 71 additional pre-August 7, 2007 quotes and invoices. At least one of the invoices was for a "bunker system" and strongly supports PHC's claim for inequitable conduct. Exhibit 5. Total indicated that the documents were discovered after they "again reviewed the documents and things of Total," *id.*, but offered no explanation as to why these documents were not produced earlier.

PHC served its first discovery requests on Total on August 5, 2016, over 9 months ago. Total has had more than enough time to produce its pre-August 7, 2007 quotes and invoices. This is especially true in light of Total's alleged 7-year document retention policy, under which no such documents should exist. Total's production of highly-relevant, responsive documents, including pre-August 7, 2007 quotes and invoices, only when PHC requests a discovery conference or on the eve of a court-ordered forensic examination is highly suspect and indicates

8

that its 7-year document retention policy is a farce. Moreover, given these documents and the significant amount of data collected by the independent computer expert, PHC posits that the 7-year document retention policy allegedly tied to *electronic* records will likely show that to be a farce as well. Accordingly, PHC requests this Court order Total to certify under oath that there are no other pre-August 7, 2007 quotes or invoices for any Total system in its possession, custody, or control.

### B. Total Must Supplement Its Response to Interrogatory No. 13.

Interrogatory No. 13 requests Total:

> Identify (by product name, model number, or other indicia) each product ever made, sold, offered for sale, or licensed by Plaintiff or any prior assignee that embodies, practices, or uses any of the alleged inventions claimed in the '428 Patent and identify the specific claim(s) of the '428 Patent that are embodied, practiced, or used in or by such product or service, and identify whether said products were marked with the '428 Patent pursuant to 35 U.S.C. § 287.

(Dkt. 85-6.) Total's original response referred to Interrogatory No. 3, which referred to a series of invoices. *Id*. Total has not, however, updated its response to indicate which systems (identified by invoice or other means) correspond to which claims of the '428 Patent. Again, Total has withdrawn several of the asserted claims of the '428 Patent in this lawsuit. This information is necessary for PHC to understand Total's theory of infringement, to the extent it has one, and further identify Total's alleged damages and PHC's potential exposure, if any, in this case. PHC requests that Total be ordered to update its responses to this discovery request.

### C. Total Must Supplement Its Response to Interrogatory No. 15.

Interrogatory No. 15 requests:

> For any products identified in response to Interrogatory No. 11, provide the revenues and profits generated from the sale of such products and all expenses used in the calculation of such profits.

9

*Id.* Total has provided information related to only revenues, not profits or expenses. PHC requests Total be ordered to update its response to this discovery response.

  D.  **Total Must Correct Its Privilege Log.**

Total's privilege log includes the following two entries:

| Total Rebuild/PHC 524 - Total Rebuild/PHC 525 | Correspondences from Thomas Phung to Terry Lavergne, dated January 21-22, 2014. | Attorney-Client Privilege. |
|---|---|---|
| Total Rebuild/PHC 557- Total Rebuild/PHC 578 | Oilfield industry articles transmitted by Terry Lavergne to Thomas Phung | Attorney-Client Privilege. |

Exhibit 10. The first entry is deficient because it does not include a description of the withheld correspondences. The second entry is deficient because it does not include a date. Further, the "Oilfield industry articles" referred to in the second entry are not themselves protected from disclosure, because they appear to be documents in the public domain. PHC requests Total be ordered to update these entries in its privilege log and immediately produce the "Oilfield industry articles" referenced in the privilege log to PHC.

  E.  **Total Should Be Sanctioned for Its Discovery Conduct.**

PHC requests that Total be sanctioned pursuant to Fed. R. Civ. P. 37(d)(1) because Total has failed to properly respond to PHC's discovery requests, as discussed above. PHC notes that, pursuant to Fed. R. Civ. P. 37(d)(1)(B), it has attempted to confer with Total in an effort to obtain the discovery responses, but Total has refused to provide a date when it is available for a conference.

PHC also requests that Total be sanctioned pursuant to Local Rule 37.1, which provides that "[i]f the court finds that opposing counsel has willfully refused to meet and confer … the court may impose such sanctions as it deems proper." On April 26, 2017, PHC requested a discovery conference with Total. Exhibit 11. A week later, after not receiving any response from Total, PHC again requested Total's availability for a discovery conference. Exhibit 12. Total then asserted that a discovery conference was not necessary as it planned to "provide certain supplemental answers to the interrogatories inquired about in [PHC's] April 26th letter next week." *Id*. However, in light of Total's evasive answers, also on May 5, 2017, PHC's counsel again requested that a discovery conference be scheduled. As of the filing of this motion, Total has neither supplemented its discovery responses nor provided a date and time for a discovery conference.

## IV. CONCLUSION

Total continues to play fast and loose in this litigation by providing vague and inconsistent discovery responses. Total's *modus operandi* throughout this litigation, apart from asserting dubious document retention policies, has been to delay and provide inadequate last-minute discovery responses when it can no longer delay. Total's conduct cannot be countenanced. This Motion should be granted.

Dated: May 12, 2017

    Respectfully submitted,

    BAKER, DONELSON, BEARMAN,
     CALDWELL & BERKOWITZ, P.C.

    s/Warner Joseph Delaune
    Warner Joseph Delaune (LA Bar No. 20780)
    450 Laurel Street, 20th Floor
    Baton Rouge, Louisiana 70801
    Telephone: (225) 381-7032
    Fax: (225) 382-0232

wdelaune@bakerdonelson.com

s/Samuel F. Miller
Samuel F. Miller (TN BPR No. 22936)
(*Admitted Pro Hac Vice*)
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone: (615) 726-5594
Fax: (615) 744-5594
smiller@bakerdonelson.com

Nicholas L. Vescovo (TN BPR No. 30387)
(*Admitted Pro Hac Vice*)
2000 First Tennessee Building
165 Madison Avenue
Memphis, TN 38103
Telephone: (901) 577-8103
Fax: (901) 577-0801
nvescovo@bakerdonelson.com

Nicholas R. Valenti (TN BPR No. 35420)
(*Admitted Pro Hac Vice*)
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone: (615) 726-7309
Fax: (615) 744-7309
nvalenti@bakerdonelson.com

*Attorneys for PHC Fluid Power, L.L.C.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this, the 12th day of May 2017, a copy of the foregoing was served on counsel of record listed below, via the Court's CM/ECF system:

> William W. Stagg
> Chase A. Manuel
> Steven G. Durio
> Durio, McGoffin, Stagg & Ackermann, PC
> 220 Heymann Boulevard
> Post Office Box 51308
> Lafayette, LA 70505-1308

s/Samuel F. Miller
Samuel F. Miller
