**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **TOTAL REBUILD, INC.** | ) | |
| | ) | |
| **Plaintiff/Counterclaim-Defendant,** | ) | **Civil Action No: 6:15-cv-01855-RFD-CBW** |
| | ) | |
| **v.** | ) | **JUDGE DOHERTY** |
| | ) | |
| **PHC FLUID POWER, L.L.C.,** | ) | **MAGISTRATE JUDGE WHITEHURST** |
| | ) | |
| **Defendant/Counterclaim-Plaintiff.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |

**DEFENDANT PHC FLUID POWER, L.L.C.'S SUPPLEMENTAL CERTIFICATION FOR ITS MOTION TO COMPEL**

Defendant/Counterclaim-Plaintiff PHC Fluid Power, L.L.C. ("PHC") filed a second Motion to Show Cause and Request for Certification ("Motion to Show Cause") (Doc. 114) and a Motion to Compel Discovery Responses from Total Rebuild, Inc. ("Motion to Compel") (Doc. 115) on May 12, 2017. In the Motion to Compel, PHC requested the Court order Plaintiff Total Rebuild, Inc. ("Total") to supplement several of its deficient discovery responses. *Id*. In its May 18, 2017 Notice and Order, the Court ordered the parties to meet and confer in regards to the Motion to Compel. (Doc. 122.). The Court also requested PHC "file into the record in this matter a supplemental certification for each pending motion …." *Id*. This is PHC's supplemental certification for its Motion to Compel.

PHC believed all issues in its Motion to Compel had been resolved by the conference. However, after the conference, Total indicated that it had not agreed to any deadlines for certain

of PHC's requests during the conference, which was and remains false.[1] Total's retraction of its agreement to certain deadlines leaves issues raised in the pending Motion to Compel unresolved. Accordingly, PHC does not withdraw its pending Motion to Compel.

The Court's May 18 Order provides that the supplemental certification shall include the following information: "(1) how the conference required by this Notice and Order was scheduled and agreed upon, (2) who participated in the conference, (3) when the conference took place, (4) whether the conference was conducted by phone or in person, (5) the duration of the conference, (6) the specific, itemized topics that were addressed at the conference, and (7) whether any issues were resolved by the parties, and, if so, the terms of the resolution." *Id*.

**A. How the Conference Was Scheduled and Agreed Upon.**

On April 26, 2017, PHC sent Total a request for a discovery conference. (Doc. 115-11.) On May 1, 2017, Total sent PHC a notice of alleged deficiencies in PHC's discovery responses. (Doc. 123-2.) On May 3, 2017, after not receiving a response from Total, PHC sent a follow-up email again requesting Total's availability for a discovery conference. (Doc. 115-12.) On May 5, 2017, Total responded asserting that "[w]e are in the process of reviewing and formulating a response to your April 26, 2017 letter. We do not believe a telephone conference will be necessary." *Id*. Total also indicated that it would "provide certain supplemental answers to the interrogatories inquired about in your April 26 letter next week." *Id*. PHC's counsel responded later that day, stating "[l]et's set up a date and time next week for the discovery conference. We can always cancel it should one not be necessary. I am unavailable on Tuesday. Does Wednesday at 10:00 am work for you?" *Id*. On May 12, 2017, the end of the "next week," after

[1] As a direct result of Total's counsel's issues with recalling what was actually said, PHC intends to have a court reporter or audio recording of any future conferences for aid of the parties and the Court. This is an unfortunate expense for which PHC intends to ask the Court at a later time to assess against Total and its counsel.

not having received any response from Total, and after Total failed to provide any supplemental discovery responses, PHC filed the Motion to Show Cause and the Motion to Compel.

On May 16, 2017, Total requested a discovery conference to address the alleged deficiencies it identified in its May 1, 2017 letter. (Doc. 123-4.) On May 17, 2017, PHC indicated that it was "available from 9-11 am on May 23, 2017" for a conference. *Id.* On May 18, 2017, the Court issued its order requiring the parties to meet and confer regarding the Motion to Show Cause and the Motion to Compel. (Doc. 122.)

The parties then exchanged several emails as to which party's discovery conference should come first and whether all of the issues could be addressed in one conference. The parties eventually held a telephone conference on the morning of May 24, 2017.

During the conference, the parties believed that further discussion may be needed and agreed to continue the conference call at 2:30 pm the same day. <u>Exhibit 1</u>. However, after the call, Total's counsel proposed that the call be canceled as all the substantive issues had been addressed. *Id.* Total's counsel also indicated that they would "put together and distribute a synopsis of what was discussed today." *Id.* PHC's counsel responded as followed: "We agree that the call set for 2:30 pm can be canceled. Please ensure that your synopsis includes Total's agreement to produce its relevant profits and expenses, and the documents used to calculate those profits and expenses. We reserve the right to modify and/or add to your synopsis." *Id.*

Total's counsel provided a summary of the call later that day ("Total's Initial Summary"). *Id.* Total's Initial Summary did not mention any discussion of the Motion to Show Cause (which was the very first item discussed the initial minutes of the conference), *id.*, which both parties now agree was discussed. Total's Initial Summary did provide that "Total will provide PHC with such documents within Total's custody and control relevant to determination and

calculation of Total's profits and expenses," but did not provide a deadline for the production as was agreed during the conference. *Id*. Total's Initial Summary also provided that:

> PHC's counsel further indicated that Total will have access to such documents regarding the specific PHC devices listed in section I.A.2. titled "P.R. 3-1(b)" of Total's Supplemental Disclosure of Asserted Claims And Preliminary Infringement Contention And Accompanying Document Production delivered to PHC's counsel January 23, 2017. Such devices being, "PHC's High Pressure Hydrostatic Testing Systems, Automated High Pressure Testing Systems, Custom Hydrostatic Pressure Test Systems, Hydrostatic Test Packs, High/Low Hydraulic Test Skid, Multiple Valve Test Cabinet, Portable Offshore Test Cart, Portable Dual Pump Rack, Remote Gas/Liquid Test System, Remote Control Pump Skid, Remote Control Bunker System, Complete Turn Key Valve Test Package, and/or such systems including PHC's Portable Offshore Test Cart, Portable Dual Pump Pack, Remote Gas/Liquid Test System, Remote Control Pump Skid, Remote Control Bunker System, Complete Turn Key Valve Test Package, and/or such systems including PHC's Portable Pressure Test Carts, PHC Data Acquisition System, and Hydraulic Control Panel.

*Id*.

PHC's counsel responded with a redline of Total's Initial Summary ("PHC Summary"). Exhibit 2. The PHC Summary indicated that Total responded "I don't know" to PHC's question as to when payment of the discovery sanction would be made. *Id*. The PHC Summary indicated that "Total agreed to produce [documents relating to profits and expenses] within 10 days of the meeting." *Id*. The PHC Summary also indicated that the documents that would be made available for inspection in Houston were the design documents for the systems identified in the invoices that PHC has already produced.[2] *Id*. This last point was repeated at least four times by PHC's counsel during the conference using the exact phrase "the documents that would be made available for inspection in Houston were the design documents for the systems identified in the invoices that PHC has already produced."

[2] PHC produced over 500 invoices at Bates Number PHC0001223-PHC0001821. The invoices are for most, if not all, systems that PHC sold after the '428 Patent issued. PHC is not withholding any invoice from after the date of issue of the '428 Patent.

Total responded with a redline of PHC's Summary ("Total's Second Summary"). Exhibit 3. Total's Second Summary alleged that "[i]n response to PHC's question to Total's counsel regarding a date certain when the discovery sanction would be paid, Total's counsel responded that the Court has yet to set a date for payment to be due." *Id*. This is a complete fabrication of what occurred at the conference. That "the Court did not set a deadline" was not mentioned, stated, or discussed in any manner. Total's Second Summary also denied that the parties had discussed a deadline for Total to produce documents relating to profits and expenses. *Id*. This is also a fabrication. Total did agree to a 10-day deadline. Total's Second Summary again alleged that PHC had agreed to allow inspection of the systems identified in Section I.A.2. titled "P.R. 3-1(b)" of Total's Supplemental Disclosure of Asserted Claims And Preliminary Infringement Contentions and Accompanying Document Production ("Supp. Infringement Contentions"). *Id*. This, again, is a fabrication. PHC agreed to allow inspection of the design documents relating to the 500 plus invoices it has already produced.

**B. The Parties to the May 24, 2017 Conference.**

The parties to the May 24, 2017 conference for PHC were Warner J. Delaune, Samuel F. Miller, and Nicholas R. Valenti. The parties to the May 24, 2017 conference for Total were William W. Stagg and Chase A. Manuel.

**C. Date and Time of Conference.**

The conference began on May 24, 2017 at 10:00 am.

**D. Whether the Conference Was Conducted by Phone Or in Person.**

The conference was conducted by telephone.

**E. The Duration of the Conference.**

The conference lasted approximately 45 minutes in total. The initial approximately two minutes was dedicated to the Motion to Show Cause. Approximately 22 of the 45 minutes were dedicated to PHC's Motion to Compel. Approximately 21 minutes of the remainder of the time was spent discussing the alleged deficiencies with PHC's discovery responses and PHC's likely motion for a protective order.

**F. The Specific, Itemized Topics Addressed at the Conference.**

1. Motion to Show Cause.

As noted in PHC's Supplemental Certification for Motion to Show Cause (Doc. 123), PHC's Motion to Show Cause was discussed during the conference. PHC revisits this issue because Total now claims that it has not paid the discovery sanction because "the Court has yet to set a date for payment to be due." Exhibit 3. This is a complete fabrication of the reasoning that Total provided during the telephone conference. During the conference, Total simply stated that it did not know if or when the payment would be made. No reference was made to the fact that the Court did not set a deadline for compliance. If such a reference was made, PHC would have directed Total to the Motion to Show Cause, which cites several cases that hold that where the Court does not set a deadline compliance is required within a "reasonable time." (Doc. 114 ("'In the absence of a specific compliance deadline in a court order, parties must comply with the order within a reasonable time. *U.S. v. Petal*, 464 Fed.Appx. 342, 342 (5th Cir. 2012) (internal citations omitted); *see also Hadix v. Caruso*, 465 F.Supp.2d 776, 801 (W.D.Mich. 2006) ("An order absent a deadline is not meaningless. Rather, the best construction of such an order is that

it requires action within a 'reasonable time.'"))". Total's apparent new position, that this Court's March 23, 2017 order is meaningless because it does not include a deadline, is untenable. Indeed, it cannot be the case that Total can simply ignore this Court's Orders if there is not a set time for compliance. This would render the Orders meaningless.

The more important issue, however, is that Total has completely fabricated its position. PHC notes that Total did not at all mention the Motion to Show Cause in Total's Initial Summary. Only after PHC requested that this issue be included in the summary did Total allege that it has not complied with the Court order because the Court has not set a deadline. Total's fabrication of this issue should be addressed by the Court.

2. Total's Expenses and Profits.

During the conference, Total agreed to produce documents relating to its expenses and profits within 10 days of the conference. Total's position, that the parties resolved the issue without agreeing to a deadline, is another complete fabrication and makes little sense in light of PHC's repeated request for this information.

In a March 24, 2017 letter, PHC requested from Total "design schematics, drawings, and photographs that refer to safety systems for high-pressure devices that include an 'explosion-proof safety housing'" pursuant to PHC's Request No. 10. (Doc. 115-2.)[3] One of the purposes of requesting the bills of material was to determine Total's expenses and profits. Total again requested this information on April 13, 2017. (Doc. 115-6.) On April 26, 2017, just hours before a scheduled telephone conference, Total indicated that it did not believe a telephone

[3] Defendant's Supplemental Certification for Its Motion to Show Cause includes duplicates of exhibits that were attached to the Motion to Compel. (Doc. 114.) New exhibits were attached because it was believed that the Motion to Compel would be withdrawn. However, Total's Second Summary indicates that several issues remain unresolved. Accordingly, PHC does not withdraw the Motion to Compel.

conference was necessary in light of the attached documents. (Doc. 115-10.) The attached documents included a letter from Total which provided as follows:

> No supplementation is required for PHC's Request No. 10. Total does not have any design schematics or drawings for its systems in its custody and control. Schematics and designs are not necessary for installation purposes as Total is a small company and those involved in installation are also those who helped in the design of the patent product, thus know the system from memory. Further, Total has produced all of the photos of its patented safety test system and has no other photos regarding other test systems in its custody or control. PHC is directed to the photographs it took during the inspection of November 9, 2017 [sic] and those found on Total's advertisements on its webpage at http://totalrebuild.com/. Finally, <u>there are no specific bill of materials which are responsive to the limitation "that refer to or reference safety systems for testing high-pressure devices that include an explosion-proof safety housing." Total purchases materials on an as needed basis for all work which is conducted at Total's facility as supplies run low, not for each specific unit or job."</u>

(Doc. 115-10.) (emphasis added). PHC responded by letter later that day requesting that Total update its response to Interrogatory No. 15, which requests the "revenues and profits generated from the sale of such products and all expense used in the calculation of such profits." (Doc. 115-11.) The letter noted that Interrogatory No. 15 incorrectly referred to Interrogatory No. 11 but should have referred to Interrogatory No. 13. *Id.* After a follow up letter by PHC requesting a telephone conference (Doc. 115-12), Total responded as follows:

> We are in the process of reviewing and formulating a response to your April 26, 2017 letter. We do not believe a telephone conference will be necessary. Total maintains its objections and responses to PHC's interrogatories. Nonetheless, without waiving any objections, and acting in the spirit of cooperation, we will provide certain supplemental answers to the interrogatories inquired about in your April 26th letter next week. Thank you.

*Id.* Thus, Total acknowledged that documents existed and that it agreed to the clarification of the scope of Interrogatory No. 15.

During the telephone conference, the parties discussed Total's failure to produce documents relating to its expenses and profits. PHC indicated that the documents should be

produced in response to Interrogatory No. 15, or in the alternative, Total's duty to supplement its initial disclosures. The Federal Rules provide that the initial disclosure shall include:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered ….

Fed. R. Civ. P. 26(a)(1)(A)(iii). Total then agreed to provide these documents within 10 days.

In the email that accompanied Total's Second Summary, Total alleges that "we did not constrain ourselves to a 10 day deadline as Total will have to determine whether or not it even has such documents to produce." Exhibit 3. This is a fabrication. First, this is contrary to Total's Initial Summary, which provided only that "Total will provide PHC with such documents within Total's custody and control relevant to determination and calculation of Total's profits and expenses." Exhibit 1. Second, in light of the efforts PHC has expended in trying to obtain this information, PHC would never have agreed to resolution of the issue without a deadline.[4] Total did not indicate in either summary, nor in a request from PHC (Exhibit 4), what Total alleges PHC's response was, or if PHC even requested a deadline. Total's assertion that the issue was concluded without a deadline makes little sense. Total's complete fabrication that it did not agree to a 10 day deadline should be addressed by this Court.

3. PHC's Probable Motion for A Protective Order.

During the conference, PHC indicated that it will likely move for a protective order based on Total's deficient Supp. Infringement Contentions. As PHC noted in its March 24, 2017 letter, while discovery may not always be limited to the specific systems identified in the infringement

[4] This would have been especially true if Total alleged that it did not have to comply with the Court's March 23, 2017 order because the Court did not set a deadline, which contrary to Total's assertions, did not happen during the conference.

contentions, the infringement contentions serve as the basis "so that the Court can make a principled decision on whether discovery will proceed" and are "designed to streamline the discovery process." (Doc. 115-2 (citing *Yama Capital LLC v. Canon Inc., et al.*, No. 12-cv-7159, 2013 WL 6588589, at *3 (S.D.N.Y. Dec. 13, 2013) and *Linex Techs., Inc. v. Belkin Intern., Inc.*, 628 F.Supp.2d 703, 713 (E.D.Tex. 2008)).[5] As discussed during the conference, Total's Supp. Infringement Contentions are not in compliance with the local patent rules, and provide no basis for the parties or this Court to determine the scope of discovery.

The Court ordered a modified version of the Patent Rules of the United States District Court for the Eastern District of Texas ("Patent Rules") be adopted for this case. (Doc. 51.) Section 3-1 of the Patent Rules provided that the infringement contentions shall contain the following information:

> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. The identification shall be as specific as possible….

(Doc. 51-1.) Total's Supp. Infringement Contentions are not in compliance with this rule.

The Supp. Infringement Contentions provide that Total accuses of infringement "<u>all</u> PHC products based upon the PHC Hydrostatic Testing Equipment made, used, rented, offered for sale, or sold in, or imported into, the United States <u>since the '428 patent issued</u> …." (Doc. 85-31.) (emphasis added) This statement does not comply with Patent Rule 3-1(b) because it does not identify any system with specificity. The Supp. Infringement Contentions also provide that:

> Such Accused Instrumentalities **<u>may</u>** further extend to PHC's High Pressure Hydrostatic Testing Systems, Automated High Pressure Testing Systems, Custom Hydrostatic Pressure Test Systems, Hydrostatic Test Packs, High/Low Hydraulic Test Skid, Multiple Valve Test Cabinet, Portable Offshore Test Cart, Portable

[5] The letter also demonstrates, among other deficiencies with the Supp. Infringement Contentions, that Total's assertion of claims 13, 18, and 19 is baseless.

> Dual Pump Pack, Remote Gas/Liquid Test System, Remote Control Pump Skid, Remote Control Bunker System, Complete Turn Key Valve Test Package, and/or such systems including PHC's Portable Pressure Test Carts, PHC Data Acquisition System, and Hydraulic Control Panel, yet, as PHC has only provided a generic description of the units on PHC's advertising webpage and as Total has not yet been permitted to examine the units, Total reserves the right to supplement the identifications and claim chart to include such units as discovery proceeds.

(Doc. 115-2.) (emphasis added) Apart from failing to actually accuse any system of infringement, this statement does not comply with Patent Rule 3-1(b) because the systems and components referred to therein (collectively "Other Systems") do not actually identify any specific system.

In Total's Second Summary, Total contends that the "Other Systems" are "specific PHC devices." Exhibit 1. This is incorrect. The Other Systems are actually overlapping categories of components and devices that encompass all or almost all systems that PHC produces. A Hydraulic Control Panel, Remote Control Pump Skid, High/Low Hydraulic Test Skid, Multiple Valve Test Cabinet, and Data Acquisition System appear to be components of Other Systems. "High Pressure Hydrostatic Testing Systems," "Automated High Pressure Testing Systems," and "Custom Hydrostatic Pressure Test Systems" are simply overlapping generic terms for a number of different products, some of which could never infringe the '428 Patent. Moreover, "Custom Hydrostatic Pressure Test Systems" cannot be "specific PHC devices."

As PHC explained again to Total during the conference, a number of the systems that are identified in the claim charts accompanying the Supp. Infringement Contentions could never infringe the '428 Patent. For example, Total alleges that the following system infringes:




Automated High Pressure Testing Systems

(Doc. 85-31.) However, as explained in the image, the pumps are located in the silver barrier and testing is performed in the brown barrier. During testing, there is a gap between these barriers. In other words, under no circumstances could the silver barrier and brown barrier constitute a single "housing," and therefore the pumps cannot reside in the "explosion-proof housing" where testing is performed, as required by all of the asserted claims. Similarly, the links included in the claim charts link to webpages that include a number of systems that could not infringe the '428 Patent. For example, the link http://pneumaticandhydraulic.com/hydrostatic-testing-equipment/pressure-test-carts/ (Doc. 85-31) includes the following images:



Filter Cart by Pneumatic and Hydraulic






Portable Pressure Test Cart with Reservoir by Pneumatic and Hydraulic






Portable Pressure Test Carts with Chart Recorder by Pneumatic and Hydraulic

1 | 2 | 3 | 4



High Pressure Testing Equipment Rentals Pneumatic-and-Hydraulic-Pressure-Test-Cart-Rental-25K-Dolly-System

1 | 2 | 3 | 4

The images clearly show that three of the systems do not include "a high-pressure pneumatics testing equipment located within [an explosion-proof] housing," as all the claims require. Yet, Total requests a plethora of documents relating to all four systems. PHC need not further respond to Total's discovery requests because Total has not identified which particular systems it accuses of infringement as required by Patent Rule 3-1(b).

During the conference, PHC also raised with Total the Supp. Infringement Contentions failure to comply with Patent Rule 3-1(c), which requires:

> (c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

(Doc. 51-1.)

All of the remaining asserted claims include the element "a sensor for sensing …." In the claim charts that are attached to the Supp. Infringement Contentions, Total includes the following analysis of this element for each remaining claims:

| | |
|---|---|
| **Claim 3.** The safety system for testing high-pressure devices as described in claim 1 further including: a sensor for sensing that said access opening is closed, said sensor coupled to said bleed valve to activate said bleed valve to prevent pressure buildup in the high-pressure testing equipment if the access opening is not closed. | PHC's Automated High Pressure Testing Systems describe use of a "safety interlock device" which must be activated to begin a test and "Proximity switches" integrated into the system to completely depressurize the system in the event personnel should enter the test area. [http://pneumaticandhydraulic.com/hydrostatic-testing-equipment/automated-high-pressure-testing-systems/#!]<br><br>As Total's initial contentions are only based upon its preliminary understanding of the limited information currently available in PHC's web based advertisement and as Total has yet to be allowed to examine PHC's devices, Total reserves the right to supplement as discovery proceeds. |

(Doc. 115-2.) The claim charts do not comply with Patent Rule 3-1(c) because they do not identify "specifically where <u>each</u> element of <u>each</u> asserted claim is found within <u>each</u> Accused

Instrumentality." In fact, with regard to the "sensor for sensing" element, Total alleges that the element is met only by "PHC's Automated High Pressure Testing System." As each remaining asserted claim includes this element, Total alleges infringement with regard to this element for only PHC's Automated High Pressure Testing System.

PHC stated during the conference that design documents for the systems identified in the 500 plus invoices that were produced would be made available for inspection. However, PHC also made clear that it would not make available additional documents until Total clarifies its theories of infringement under the Patent Rules. Total is not entitled to discovery on every document relating to every system PHC has manufactured since 2007 simply because it alleges that every PHC product "may" infringe the '428 Patent.

4. Discovery Relating to Pre-Issuance Systems.

During the conference the parties discussed Total's requests for documents and information relating to all PHC systems sold since 2007 in response to its Interrogatory No. 4 and Requests for Production Nos. 14, 15, 16, and 27. (Doc. 123-2.) Total reasons that:

> PHC's pending motion for partial summary judgment does not affect the scope of this interrogatory or the scope of the response to the interrogatory in any way. PHC's motion is only directed to the recovery of damages prior to the Total assignment date. Total's claim for willful infringement remains and information regarding PHC's alleged infringing activities from the onset of PHC's use of the products prior to the assignment date of the '428 Patent to Total are discoverable. Please supplement to provide full and complete responses regarding such aforementioned PHC products for the entire period of PHC's use of the Accused Apparatuses, including but not limited to the period prior to and after the assignment of the '428 Patent to Total Rebuild.

(Doc. 123-2.)

As discussed during the conference, the application that resulted in the '428 Patent was published on February 18, 2010, and the '428 Patent issued on April 3, 2012. While there may be a limited number of documents from prior to February 18, 2010 that are relevant to this

litigation, PHC design documents, customer lists, and invoices from prior to that date are not relevant to this case. PHC could not have infringed the ’428 Patent prior to February 18, 2010.

Pursuant to 35 U.S.C. § 154(d), a reasonably royalty is available between the date of publication and the date of issuance of a patent but only if, among other requirements, the alleged infringer “had actual notice of the published patent application.” 35 U.S.C. § 154(d). Total alleges only that “PHC has been given notice of the ’428 Patent, attached hereto as **Exhibits 6 & 7**, and has continued to make, use, rent, sell and offer for sale ….”, and Exhibit 6 and 7 were sent to PHC by Total in 2015. First Amended and Restated Complaint, ¶ 32 (Dkt. 22), (Docs. 1-9, 1-10); *see also* Supp. Infringement Contentions (Doc. 85-31) (Total accuses of infringement “all PHC products based upon the PHC Hydrostatic Testing Equipment made, used, rented, offered for sale, or sold in, or imported into, the United States since the ’428 patent issued ….”) (emphasis added). Similarly, PHC has provided sworn discovery responses indicating it first became aware of the ’428 Patent when it received Total’s February 25, 2015 letter. Total alleges that PHC received notice of the ’428 Patent in 2015, and PHC has sworn that it did not receive notice of the ’428 Patent prior to 2015. Moreover, Total accuses of infringement only PHC products made “since the ’428 patent issued.” Accordingly, the vast majority of the documents PHC seeks from 2007 to issuance of the ’428 Patent are irrelevant to this case.

5. PHC’s Request for Dates for Privilege Log Entries.

Total’s privilege log includes the following entry:

| | | |
|---|---|---|
| Total Rebuild/PHC 557- Total Rebuild/PHC 578 | Oilfield industry articles transmitted by Terry Lavergne to Thomas Phung | Attorney-Client Privilege. |

(Doc. 115-11.) Prior to the conference call, Total produced the Oilfield industry articles at Bates Numbers Total Rebuild/PHC 557-578. During the conference, PHC raised the issue of the entry's missing date, which is also addressed in the Motion to Compel. The date is important because if Total transmitted these documents to its patent attorney during prosecution of the '428 Patent, the transmission shows Total provided certain prior art to its patent attorney but not the prior art that comprised its own offers for sale and sales that are the basis of PHC's inequitable conduct claim.

During the conference, Total asserted that it could not locate the email with which the documents were transmitted, and therefore, could not determine the date of transmission. PHC noted that one of the articles included a copyright notice from 2009, and thus, the document must have been transmitted after this date. PHC further noted that as this case was filed in June of 2015 and Total's alleged document retention policy extended back 7 years (Doc. 93-2, ¶ 2), the document should exist. Total responded that the document did not exist.[6]

**G. Whether Any Issues Were Resolved by the Parties.**

Total agreed to verify that Total has searched the physical and electronic records within its custody and control for quotes and invoices for Total systems offered for sale or sold prior to August 7, 2007. This resolves the first issue in the Motion to Compel.

Total has supplemented its discovery responses to Interrogatory No. 13 to identify by invoice or other means which of its products it alleges embody, practice, or use which claims of the '428 Patent. This resolved the second issue in the Motion to Compel.

[6] This is yet another example that shows that Total's document retention policy as stated in response to the prior motion to compel is simply a fabrication.

Total has not agreed to provided its expenses and profits from the sale of all systems that Total alleges embody, practice, or use asserted claims of the ’428 Patent by any particular date. Thus, the third issue in the Motion to Compel has not been resolved.

Total has provided PHC with the “Oilfield industry articles” but has not provided a date of transmission of the article. Total alleges that it no longer has the email with which the articles were transmitted. Although the email should exist according to Total’s alleged document retention policy, Total alleges that it is unable to find the email. This resolves the fourth issue in the Motion to Compel.

PHC continues to seek all fees and expenses relating to the Motion to Compel. Thus, the fifth issue in the Motion to Compel has not been resolved.

PHC continues to seek an admonishment against Total and counsel for Total for their misconduct in discovery. Thus, the sixth issue in the Motion to Compel has not been resolved.

**CONCLUSION**

PHC believed the parties May 24, 2017 conference resolved all of the issues in the pending Motion to Compel. However, subsequent to the conference, Total alleged that it did not agree to any particular deadline to turn over documents relating to expenses and profits. Because Total believes that it is not required to comply with its obligations absent an express deadline - even to Orders entered by this Court[7], PHC respectfully requests the Court consider this issue in the pending Motion to Compel and grant PHC the relief it has requested.

Dated: June 2, 2017

[7] PHC respectfully suggests the Court review the long history of missed deadlines by Total and its counsel in both this case and the parallel case of *Total Rebuild, Inc. v. Streamline, Inc. v. Streamline Hose & Fittings, Inc.*, Case No. 6:150cv001172 that was recently closed by this Court. There is a distinct pattern by Total and its counsel to miss or ignore deadlines.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

s/Warner Joseph Delaune
Warner Joseph Delaune (LA Bar No. 20780)
450 Laurel Street, 20th Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7032
Fax: (225) 382-0232
wdelaune@bakerdonelson.com

s/Samuel F. Miller
Samuel F. Miller (TN BPR No. 22936)
(Admitted Pro Hac Vice)
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone: (615) 726-5594
Fax: (615) 744-5594
smiller@bakerdonelson.com

Nicholas L. Vescovo (TN BPR No. 30387)
(Admitted Pro Hac Vice)
2000 First Tennessee Building
165 Madison Avenue
Memphis, TN 38103
Telephone: (901) 577-8103
Fax: (901) 577-0801
nvescovo@bakerdonelson.com

Nicholas R. Valenti (TN BPR No. 35420)
(Admitted Pro Hac Vice)
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone: (615) 726-7309
Fax: (615) 744-7309
nvalenti@bakerdonelson.com

*Attorneys for PHC Fluid Power, L.L.C.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this, the 2nd day of June 2017, a copy of the foregoing was served on counsel of record listed below, via electronic mail:

William W. Stagg
Chase A. Manuel
Steven G. Durio
Durio, McGoffin, Stagg & Ackermann, PC
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, LA 70505-1308
BILL@dmsfirm.com
Chase@dmsfirm.com
Buzz@dmsfirm.com

s/ Samuel F. Miller
Samuel F. Miller