IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| TOTAL REBUILD, INC. | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | Civil Action No. 6:15-cv-01855-BAJ-CBW |
| | ) | |
| v. | ) | JUDGE BRIAN A. JACKSON |
| | ) | |
| PHC FLUID POWER, L.L.C., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |
| | ) | |

**DEFENDANT PHC FLUID POWER, L.L.C.'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE REGARDING SYSTEMS WITH TESTING EQUIPMENT OUTSIDE OF HOUSING**

In support of its Motion in Limine regarding systems with testing equipment outside of housing, Defendant/Counterclaim-Plaintiff PHC Fluid Power, L.L.C ("PHC"), states:

**I.      INTRODUCTION**

PHC moves to exclude and preclude Plaintiff from offering evidence, by introduction, reference, declaration, or testimony, of any allegation or assertion that PHC has directly or indirectly infringed claims 3, 4, 5, 11, 12, 13, 14, 15, 18, and/or 19 United States Patent Number 8,146,428 ("'428 Patent") by making, using, selling, offering for sale, and/or importing a safety system for testing high-pressure devices in which the high-pressure testing equipment is located outside an explosion proof housing.  By the clear language of the claims, the high-pressure testing equipment must be located "within" an explosion-proof safety housing or placed in an explosion-proof safety housing. Except as evidence of prior art for invalidity, inequitable conduct, or other affirmative defenses raised by PHC, safety systems in which the high-pressure testing equipment

1

is located outside the housing is not relevant under Rule 401 of the Federal Rules of Evidence and should be excluded as inadmissible under Rule 402 of the Federal Rules of Evidence.

Such evidence also should be excluded under Rule 403 of the Federal Rules of Evidence because it would be confusing to jurors, mislead the jury, cause undue delay, and waste time because the jury would need to review system, listen to days of testimony, and review exhibits that cannot result in liability. There is no reason to require the jurors or the Court to listen to and go through such unnecessary evidence. Although PHC asserts that there are not infringing systems, the only reason to include systems that cannot in any circumstance infringe would be to give the false appearance that PHC has a large number of infringing systems or to encourage the jury to apply a "split-the-baby" approach to liability and damages.

## II. ARGUMENT

### A. All Claims of the '428 Patent Require the Testing Equipment to be Within (Inside) the Housing.

Total filed the original Complaint on June 11, 2015. (Dkt. 1). Total filed an Amended and Restated Complaint on September 11, 2015. (Dkt. 22, exhibits therein refer to exhibits in original Complaint). Total asserts against PHC a claim for infringement of one or more claims of the '428 Patent, which is the sole patent at issue in this case. (*Id*.) The '428 Patent is directed to systems and methods for safely testing devices and components under high-pressure. (Dkt. 1-4). PHC does not deny that it builds pressure testing systems but does deny that any of its systems infringe the '428 Patent.

Each of the independent claims of the '428 Patent (whose elements are necessarily included in the dependent claims) require the pressure testing equipment to be located within the explosion-proof safety housing. Independent claim 1 contains the required element of "a high-pressure pneumatics testing equipment located within said housing." (Dkt. 1-4 at 6:30-31.) "Said housing"

refers to the element of "an explosion-proof safety housing." (*Id*. at 6:29.) Independent claim 11 requires the element of "high-pressure pneumatics testing equipment located within said housing" with "said housing" being "an explosion-proof safety housing." (*Id*. at 7:19-21.) Independent claim 16 requires the elements of "Placing a low-pressure pump, an intermediate-pressure pump, and a high-pressure pump within said housing to provided to sequential increase in the pressure to said testing high-pressure devices" and "coupling said control panel to the testing equipment inside said housing" with "said housing" being "an explosion-proof safety housing." (*Id*. at 8:14-18, 23-24.)

### B. Systems In Which the Testing Equipment is Located Outside the Housing Is Not Relevant to Prove Infringement.

Total has abandoned its assertion that PHC infringed all claims of the '428 Patent. In the Third Supplemental Contentions, Total asserts seven systems infringe claims 3-5, 11-15, and 18-19 of '428 Patent. A true and correct copy of the Third Supplemental Contentions is attached to the Motion as Exhibit 1. Each of the asserted claims are dependent on or include independent claims 1, 11, or 16.

Only safety systems in which the high-pressure testing equipment (e.g. the pumps) is located within or placed in an explosion-proof housing are relevant to support a claim for infringement of the '428 Patent. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *Baxter v. Anderson*, 277 F. Supp. 3d 860, 862 (M.D. La. 2017). "Irrelevant evidence is not admissible." *Id*. (citing Fed. R. Evid. 402).

Systems in which the high-pressure testing equipment is located outside of any housing are wholly irrelevant to Total's claims. They are therefore inadmissible to show infringement because they cannot directly or indirectly infringe claims 3-5, 11-15, and 18-19 of the '428 Patent.

3

### 1. Systems without Testing Equipment in the Housing Cannot Directly Infringe the '428 Patent.

To show direct infringement, a patent owner must prove either literal infringement or infringement by the doctrine of equivalents. A product literally infringes a patent if each element of the patent claim is contained in the accused product. *Rain Bird Sprinkler Mfg. Corp. v. Toro Co.*, 26 F.3d 141, 2 (Fed. Cir. 1994); *North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1574 (Fed.Cir.1993). The test for infringement under the doctrine of equivalents determines "whether [the accused product] performs the function in substantially the same way to achieve substantially the same result." *Minks v. Polaris Indus., Inc.,* 546 F.3d 1364, 1378 (Fed. Cir. 2008). Under either standard, systems without testing equipment in the housing cannot directly infringe.

There can be no literal infringement due to systems that do not have the testing equipment within (i.e. inside) the housing. This is an explicitly required element of the claims of the '428 Patent. Independent claim 1 contains the required element of "a high-pressure pneumatics testing equipment located *within said housing*." (Dkt. 1-4 at 6:30-31 (emphasis added).) Independent claim 11 requires the element of "high-pressure pneumatics testing equipment located *within said housing*." (*Id*. at 7:19-21 (emphasis added).) Independent claim 16 requires the elements of "Placing a low-pressure pump, an intermediate-pressure pump, and a high-pressure pump *within said housing* to provided to sequential increase in the pressure to said testing high-pressure devices" and "coupling said control panel to *the testing equipment inside said housing*" with "said housing" being "an explosion-proof safety housing." (*Id*. at 8:14-18, 23-24 (emphasis added).)

The requirement that the testing equipment must be within/inside the housing permeates the patent. The abstract of the '428 Patent describes the invention to include "a high-pressure pneumatic testing equipment located within the housing." In the "Background of the Invention,"

the '428 Patent states the reason the testing equipment is within the housing is to minimize the exposure of operators to "flying fragments and debris hazard" caused by failure of the testing equipment (namely, explosion of the testing equipment). (Dkt. 1-4 at 1:46-60.)

The summary of the invention in the specification of the '428 Patent further describes the testing equipment within both the stationary and portable embodiments of the claimed inventions. Figure 1 of the patent (as show below) identifies the testing equipment as inside a stationary housing:



The '428 Patent states in pertinent part, "Located entirely within chamber **12** is at least one high-pressure pneumatics testing equipment…It should be noted that the number of high-pressure equipment testing equipment supported in chamber **12** may varying from as few of one to a plurality of devices and types of high-pressure equipment testing equipments [sic] may all be the same, all different or a combination thereof." (Dkt. 1-4 at 3:1-2, 7-12.) The '428 Patent further describes that the control panel is located "outside" of the housing and connected to the high-pressure testing equipment "within the bunker housing" so that the equipment may be operated

from outside the housing. (*Id.* at 3:26-31.) Similarly, the '428 Patent identifies that the testing equipment is located "within" the housing of the portable embodiment of the claimed inventions as shown in Figure 5 of the '428 Patent:



(*Id.* at 5:30-39.)

Neither Total nor PHC have identified or raised an issue with the construction of the phrase "within said housing" or "inside said housing." These terms must be given their plain and ordinary meaning. "Within" and "inside" are common synonyms for the position of one thing situated in something else.

That Total has not raised an issue with the meaning of "within" or "inside" is because Mr. Lavergne, the purported inventor, intended for the invention to claim only systems or methods in which the testing equipment is within the housing. As shown in PHC's certified response to Interrogatory No. 4 of the First Set of Interrogatories, the inventive concept behind the '428 Patent was "placing the testing systems inside a bunker along with the tools to be tested, wherein the testing systems may be operated from the outside of the bunker." True and correct copies of Total's

Responses to the First Set of Interrogatories with certification are attached to the motion as collective <u>Exhibit 2</u>. Mr. Lavergne also sent an email to a third parties in which he stated that any system where the testing equipment is within the "bunker" (i.e. the housing) infringes "his patent." A true and correct copy of the email is attached to the motion as <u>Exhibit 3</u>. Mr. Lavergne specifically stated, "Any system where the pumps are in the bunker will infringe on my patent." *Id*.

There also can be no direct infringement by the doctrine of equivalents. The very structure claimed by Total is the location of the testing equipment within the housing. The location prevents harm to the system operator(s) due to the explosion of the testing equipment or device being tested. Placing the pumps outside of the housing would not solve the problem of protecting the operator(s). Instead, the testing equipment (e.g. the pumps) outside the housing is the very solution that Mr. Lavergne purported to resolve with the claimed inventions.

**2. Systems without Testing Equipment within the Housing Cannot Not Indirectly Infringed the '428 Patent.**

Systems that do not have the testing equipment within (i.e. inside) the housing also cannot be found to indirectly infringe claims 3-5, 11-15, and 18-19 of '428 Patent. Indirect infringement under 35 U.S.C. §271(b) (induced infringement) and 35 U.S.C. §271(c) (contributory infringement) requires there to be direct infringement by a third party. Here, neither is present.

Under §271(b), liability can only be found when a defendant who "actively" induces infringement. "[W]here there has been no direct infringement, there can be no inducement of infringement under § 271(b)." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 922 (2014). Similarly, under §271(c), liability can only be found when a defendant offers to sell or sells within the United States or imports a component or material for use for direct infringement. "It is settled that if there is no direct infringement of a patent there can be no contributory

7

infringement." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961); *cf. Limelight Networks*, 572 U.S. at 922 (citing *Aro Mfg.* for proposition that "Liability for inducement must be predicated on direct infringement.").

Systems that do not have the testing equipment within the housing cannot literally infringe and do not constitute infringement by any third party. There can be no indirect infringement by PHC related to such systems.

### C. Systems In Which the Testing Equipment is Located Outside the Housing Are Not Admissible Under Rule 403.

To the extent the Court finds the systems relevant, the evidence still must not enter because it is inadmissible under Rule 403 of the Federal Rules of Evidence. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, 1972 Advisory Committee Note. "In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." *Id*.

It is well established that, although relevant, a trial court may exclude evidence failing Rule 403 muster. *Baxter v. Anderson*, 277 F. Supp. 3d 860, 862 (M.D. La. 2017) (citing *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 882 (5th Cir. 2013)). Admitting evidence of systems with testing equipment not within (i.e. inside) housing would suggest the jury find indirect infringement where there is no direct infringement, namely claims 3-5, 11-15, and 18-19 of '428 Patent. This is highly prejudicial because such systems *cannot in any circumstance* infringe. *See Limelight Networks*, 572 U.S. at 922.

### III.  CONCLUSION

PHC respectfully requests the Court grant the Motion.

Dated: January 8th, 2019

                Respectfully submitted,

                MILLER LEGAL PARTNERS PLLC

                /s/ Samuel F. Miller
                Samuel F. Miller, TN Bar No. 22936
                Nicholas R. Valenti, TN Bar No. 35420
                A. Grace Van Dyke James TN Bar No. 35667
                Fifth Third Center – Suite 2000
                424 Church Street
                Nashville, Tennessee 37219
                Tel/Fax: (615) 988-9011
                Email: smiller@millerlegalpartners.com
                          nvalenti@millerlegalpartners.com
                          gjames@millerlegalpartners.com

                NEUNERPATE

                /s/ Cliff a. LaCour
                Brandon W. Letulier - #28657
                Cliff A. LaCour - #30581
                One Petroleum Center, Suite 200
                1001 West Pinhook Road
                Lafayette, Louisiana 70503
                Tel: (337) 237-7000
                Fax: (337) 233-9450
                Email: bletulier@neunerpate.com

                *Attorneys for PHC Fluid Power, L.L.C.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 8th day of January 2019, a copy of the foregoing was served on counsel of record listed below via the Court's ECF system:

William W. Stagg
Chase A. Manuel
Steven G. Durio
Durio, McGoffin, Stagg & Ackermann, PC
220 Heymann Boulevard (70503)
Post Office Box 51308 Lafayette, LA
70505-1308
Bill@dmsfirm.com
Chase@dmsfirm.com
Buzz@dmsfirm.com

Brandon W. Letulier
Cliff A. LaCour
NeunerPate
One Petroleum Center, Suite 200
1001 W. Pinhook Road
Lafayette, LA 70503
bletulier@neunerpate.com
clacour@neunerpate.com

                                              s/ Samuel F. Miller
                                              Samuel F. Miller