**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **TOTAL REBUILD, INC.** | ) | |
| | ) | |
| **Plaintiff/Counterclaim-Defendant,** | ) | **Civil Action No. 6:15-cv-01855-BAJ-CBW** |
| | ) | |
| **v.** | ) | **JUDGE BRIAN A. JACKSON** |
| | ) | |
| **PHC FLUID POWER, L.L.C.,** | ) | **MAGISTRATE JUDGE WHITEHURST** |
| | ) | |
| **Defendant/Counterclaim-Plaintiff.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |

**DEFENDANT PHC FLUID POWER, L.L.C.'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE TO PRECLUDE AND EXCLUDE ANY TESTIMONY OR
EVIDENCE RELATED TO TOTAL REBUILD'S PROFITS AND EXPENSES,
AND, IN THE ALTERNITIVE, MOTION TO SHOW CAUSE**

In support of its Motion in Limine to Preclude and Exclude any Testimony or Evidence Related to Total Rebuild's ("Total's") Profits and Expenses ("Motion"), Defendant PHC Fluid Power, L.L.C. ("PHC") states as follows:

**I.      INTRODUCTION**

PHC is once again before this Court seeking relief due to Total's failure to supplement its discovery responses. Not only has Total failed to supplement its answer to Interrogatory 15, which pertained to Total's profits and expenses related to the '428 Patent, but it has relied on the *same* information in the report of John W. Royston, Total's proffered damages expert. This utter disregard for the Rules and Order of this Court should not be allowed to continue. Accordingly, as discussed more fully below, Total should be precluded from offering testimony or evidence related to Total's profits and expenses for the '428 Patent.

1

## II.   FACTS

On August 5th, 2016, PHC served upon Total, Defendant's First Interrogatories And Requests For The Production Of Documents And Things ("First Set of Interrogatories"). (Exhibit 1, Total's Answers). In those Interrogatories, PHC asked:

> For any products identified in response to Interrogatory No. 11,[1] provide the revenues and profits generated from the sale of such products and all expenses used in the calculation of such profits.

(*Id*. at 11-12).

On September 2, 2016, Total served its Answers To Defendant's First Interrogatories And Responses To First Requests For The Production Of Documents And Things ("Total's Answers"), and in response to Interrogatory 15 stated:

> As such information includes highly sensitive business related information, including customer information, unit pricing, and other financial information which is competitive business information that PHC would not have access but for this litigation, such answer has been provided to Counsel for PHC under Protective Order [Doc. 39-2] as Exhibits A & C marked "Highly Confidential/Attorneys' Eyes Only";
>
> See also Total's documents produced on August 23, 2016, marked as Exhibit B to Total's Disclosure of Asserted Claims and Preliminary Infringement Contentions and Accompanying Document Production.

(*Id*. at 11-12). On May 23, 2017, Total supplemented its answers to Interrogatory 15 stating:

> Total objects to PHC's attempt in its April 26, 2017 correspondence to redefine the scope of Interrogatory No. 15 by attempting to amend its reference from Interrogatory No. 11 to now Interrogatory No. 13.[2] Nonetheless, in the interest of

---

[1] Interrogatory 11 sates: "Provide an accounting of all royalties, license fees, or other monies paid pursuant to licenses or sublicenses to the '428 Patent, and identify the sources of any such royalties, license fees, or other monies by name and address of the paying and receiving entities." (Exhibit 1 at 10, Total's Answers).

[2] Interrogatory 13 sates: "Identify (by product name, model number, or other indicia) each product ever made, sold, offered for sale, or licensed by Plaintiff or any prior assignee that embodies, practices, or uses any of the alleged inventions claimed in the '428 Patent and identify the specific claim(s) of the '428 Patent that are embodied, practiced, or used in or by such product or service,

cooperation, Total identifies Exhibits A, C, and I, previously produced and marked "Highly Confidential/Attorneys' Eyes Only" under Protective Order [Doc. 39-2], as responsive;

See also Total's documents produced on August 23, 2016, marked as Exhibit B to Total's Disclosure of Asserted Claims and Preliminary Infringement Contentions and Accompanying Document Production.

(Exhibit 2 at 5-6, Supplemental Answers to Interrogatories). A review of Total's production Exhibits A, B, C, and I, shows that none of the documents include any "expenses used in the calculation of [Total's] profits" related to the '428 Patent.[3]

This information was also included in PHC's Request for Production:

Request No. 42: Produce complete unaudited financial data (including but not limited to revenue, profits, losses, and expenses) for Plaintiff for August 8, 2000 to the present.

Response to Request No. 42[:] Subject to the Court's Protective Order in this matter and any applicable privileges, all responsive documents are available for Defendant's inspection, in mutually-agreeable circumstances, as they are kept in the usual course of business.

(Exhibit 2 at 34, Total's Answers).

Interrogatory 15 was subject to PHC's Motion to Compel filed on May 12, 2017. (Dkt. 115). In that Motion, PHC noted "Total has provided information related to only revenues, not profits or expenses" and requested "Total be ordered to supplement its response to Interrogatory No. 15 to provide the expenses and profits generated from the sale of all systems that Total alleges embody, practice, or use asserted claims of the '428 Patent." (Dkts. 115, 115-1). The Court ruled

---

and identify whether said products were marked with the '428 Patent pursuant to 35 U.S.C. § 287." (Exhibit 1 at 10-11, Total's Answers).
[3] Total's production Exhibits A, B, C, and I consist of 308 pages, some of which include documents labeled Attorney's Eyes Only. PHC is happy to supplement its filing with those documents at the Court's request.

on July 11, 2017 that "Total Rebuild is to supplement their responses once information becomes available." (Dkt. 136 at 2).

Terry Lavergne, Total's 100% owner, was deposed on July 12, 2017. (Exhibit 3, Lavergne Dep. 15:7-16:4, July 12, 2017). In his deposition, Mr. Lavergne testified neither he nor Total's general office manager would know what the expenses were for each job noting that those numbers are kept in their heads. (*Id*. at 249:13-250:12, 254:6-22). Therefore, he could only "approximately" know "about" the profit margin on each system sold. (*Id*. at 250:13-252:16, 310:23-31:2). Mr. Lavergne further testified that "[Total does not] keep up with profit margins." (*Id*. at 311:11-19).

During his deposition, Mr. Lavergne oscillated between stating Total had the requested documents and claiming Total did not have the documents. (*Compare Id*. at 248:13-249:12, 251:17-23 (Mr. Lavergne testified that, despite not previously producing them or including them in his interrogatory responses, he indeed had vendor receipts, invoices, P&As.), *with Id*. at 251:5-16, 252:17-253:2 ("Again, we didn't have a server. I don't have all of this stuff." "It all got washed away in the flood.")). Mr. Lavergne further oscillated between stating that putting together the requested information would take "a couple of days" to calculate the expenses to build a machine and claiming that he would have to "bring a CPA in" to calculate expenses and profits. (*Compare Id*. at 252:17-253:7, July 12, 2017, *with Id*. at 307:8-309:4). Regardless, Mr. Lavergne and Total neither calculated the expenses nor brought in a CPA. Total never further supplemented its responses to Interrogatory 15.

Over a year later, Total proffered the expert report of John W. Royston, EA ("Royston Report") to evaluate the alleged damages suffered by Total. (Exhibit 4, Royston Report). The Royston Report included a "cost per unit" of three Total machines and, using that cost per unit, calculated a profit margin. Mr. Royston's damages calculations are directly based on the cost per

4

unit and profit numbers. No documentation was served in support of the Royston Report that would indicate how Mr. Royston determined what each unit cost. It is clear Mr. Lavergne either was untruthful regarding his knowledge of Total's expenses and profits or Total provided to Mr. Royston financial information that was knowingly withheld from PHC (and remains withheld).

## III.   ARGUMENT

Total has failed to comply with the basic requirements of Federal Rule of Civil Procedure 26(a)(2)(B), (e) and the July 11, 2017 Order of this Court. Despite its obligations, Total has not fully answered Interrogatory 15 in the *almost two years* since the First Interrogators were served. Not only has Total withheld information related to the costs and expenses relating to its machines to the detriment of PHC, but Total has also relied upon the same un-produced and supposedly unavailable information in the Royston Report. Accordingly, any evidence or testimony pertaining to Total's alleged damages, including the Royston Report and the testimony of Mr. Royston, should be barred.

> **A.   Total's Failure to Supplement its Answer to Interrogatory 15 Violates Federal Rules of Civil Procedure Rule 26(a)(2)(b), 26(e) and the July 11, 2017 Order of this Court.**

Total has failed to meet its duty to supplement its disclosures pursuant to Federal Rule of Civil Procedure 26(e), which states:

> (e) Supplementing Disclosures and Responses.
> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission— must supplement or correct its disclosure or response:
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e). Notably, the Court has already addressed this issue, ordering that "Total Rebuild is to supplement their responses once information becomes available." (Dkt. 136 at 2).

Not only was Total required to supplement its answer to Interrogatory 15 in the regular course of litigation, but it had a duty to disclose its expenses and profits as part of its "cost per unit" calculation in the Royston Report.

Federal Rule of Civil Procedure 26(a)(2)(b) is clear about what must be disclosed with an expert report:

> (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report . . . . The report must contain:
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). The witness's "facts or data" extends to all material Mr. Royston "considered" in forming his opinions, "regardless of when those materials were received, generated, reviewed, or used." *Diaz v. Goodyear Tire & Rubber Co.*, No. CV 07-353-B-M2, 2009 WL 10679373, at *2 (M.D. La. Mar. 31, 2009) (citing *Estate of Manship v. U.S.*, 236 F.R.D. 291, 295 (M.D. La. 2006)).

Mr. Royston's Report lacks any explanation of the facts or data he considered in making his calculations of Total's costs and profits.[4] For example, Mr. Royston's report states, without

---

[4] The Royston Report and Mr. Royston's qualifications are deficient in a multitude of ways that are outside the scope of this Motion and are in addition to Total's failure to comply with Rule 26

any explanation or citation, that the "cost per unit" for the Two-Pump 20K Test System-HSF202-GW60 is $10,925.00. (Exhibit 4, Royston Report). There is no data, either in the Royston Report or Total's production, to support that sum. (*Id.*).

Mr. Royston then subtracted $10,925.00 from the sales price of $19,850 to reach a profit margin of $8,925, or 45%. Mr. Royston applied the profit margin of $8,925 to each of the seven alleged infringing sales of PHC units that Mr. Royston believed to be similar.[5] (*Id.*). Mr. Royston applied the same process to two other Total units, reaching a "total profit loss" of $96,953.00. (*Id.*).

Because of Total's flouting of the Rules, it is impossible to determine the veracity of Mr. Royston's calculations.

### B. Total Should Be Precluded From Offering Any Evidence of Profits or Expenses in Support of a Request for Damages.

Pursuant to Federal Rule of Civil Procedure 37(c)(1):

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
(B) may inform the jury of the party's failure; and
(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

The sanctions for Total's failure to supplement are the same for its violation of the Court's July 11, 2017 Order.

(b) Failure to Comply with a Court Order. . . .

---

and the Court's July 11, 2017 Order. PHC anticipates filing a *Daubert* motion regarding Mr. Royston if Total Rebuild intends to call him as a witness after the resolution of this Motion.
[5] Mr. Royston offers no explanation on how he determined the units were similar and appears to have no expertise in the relevant field.

(2) Sanctions Sought in the District Where the Action Is Pending.

(A) For Not Obeying a Discovery Order. If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2).

When a party has breached its duty to supplement, as Total has done here, "the trial court has the discretion to exclude evidence, grant a continuance, or take any other action it may deem appropriate." *Lewis v. Darce Towing Co*., 94 F.R.D. 262, 266 (W.D. La. 1982) (citing *Murphy v. Magnolia Electric Power Ass'n*., 639 F.2d 232 (5th Cir. 1981)). When exercising its discretion on whether to exclude the evidence, the Court considers:

(1) the importance of the witnesses' testimony;

(2) the prejudice to the opposing party of allowing the witnesses to testify;

(3) the possibility of curing such prejudice by granting a continuance; and

(4) the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc*., 73 F.3d 546, 572 (5th Cir. 1996) (citing *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989)).

While it is hard to argue the unimportance of an expert witness's testimony on damages, any importance is far outweighed by the incurred prejudice to PHC, the inability to cure, and the lack of any justification that could excuse Total's failure to timely disclose. PHC has struggled, throughout this litigation, to obtain the very information on which Mr. Royston supposedly relied

in drafting his report and reaching his conclusions. Clearly, at some point this information became available to Total, yet it failed to comply with the Court's Order. (Dkt. 136).

The prejudice to PHC is undeniable: Without the underlying documentation or information to support Total's alleged expenses and revenue, PHC cannot make a competent rebuttal argument at trial. A continuance, at this stage, would do little to rectify Total's failure as it has showed, repeatedly, that it has no intent to produce such documents or information. Moreover, this action, initially filed in June 2015, is now more than four years old and any further delay will continue to harm and prejudice PHC and waste the resources not just of the parties, but those of the Court.

Due to Total's repeated failure to supplement, in direct disobedience of the Court's Order, the appropriate sanction is for this Court to prohibit Total from "supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

Accordingly, the Court should rule that Total is not allowed to present any testimony or evidence of its alleged expenses and profits, including the Royston Report at trial.

### C.      In the Alternative, the Court Should Require Total to Show Cause as to Why the Court Should Not Hold It in Contempt.

Total's refusal to supplement its answer to Interrogatory 15 extends beyond a failure to comply with its discovery obligations. It is in direct violation of the Court's July 11, 2017 Order. Because PHC is forced to, yet again, ask this Court for relief, the Court should require Total to show cause as to why the Court should not hold it in contempt and order Total pay PHC's expenses, including attorney's fees, and the cost of filing this Motion, caused by its failure.

## IV.      CONCLUSION

For the reasons discussed herein, PHC's Motion in Limine to Preclude and Exclude any Testimony or Evidence Related to Total's Profits and Expenses should be granted.

9

Dated: July 26, 2019

Respectfully submitted,

MILLER LEGAL PARTNERS PLLC

/s/      Samuel F. Miller
Samuel F. Miller, TN Bar No. 22936
Nicholas R. Valenti, TN Bar No. 35420
Sara R. Ellis, TN Bar 30760
Fifth Third Center – Suite 2000
424 Church Street
Nashville, Tennessee 37129
Tel/Fax: (615) 988-9011
Email: smiller@millerlegalpartners.com
          nvalenti@millerlegalpartners.com
          sellis@millerlegalpartners.com

NEUNERPATE

/s/ Cliff A. Lacour
Brandon W. Letulier - #28657
Cliff A. LaCour - #30581
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
Tel: (337) 237-7000
Fax: (337) 233-9450
Email: bletulier@neunerpate.com

*Attorneys for PHC Fluid Power, L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 26th day of July 2019, a copy of the foregoing was served on counsel of record listed below via the Court's ECF system:

William W. Stagg
Chase A. Manuel
Steven G. Durio
Durio, McGoffin, Stagg & Ackermann, PC
220 Heymann Boulevard (70503)
Post Office Box 51308 Lafayette, LA
70505-1308
Bill@dmsfirm.com
Chase@dmsfirm.com
Buzz@dmsfirm.com

Brandon W. Letulier
Cliff A. LaCour
NeunerPate
One Petroleum Center, Suite 200
1001 W. Pinhook Road
Lafayette, LA 70503
bletulier@neunerpate.com
clacour@neunerpate.com

s/       Samuel F. Miller
Samuel F. Miller