**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **TOTAL REBUILD, INC.** | ) | |
| | ) | |
| **Plaintiff/Counterclaim-Defendant,** | ) | **Case No. 6:15-cv-01855-TAD-CBW** |
| | ) | |
| **v.** | ) | **JUDGE TERRY A. DOUGHTY** |
| | ) | |
| **PHC FLUID POWER, L.L.C.,** | ) | **MAGISTRATE JUDGE WHITEHURST** |
| | ) | |
| **Defendant/Counterclaim-Plaintiff.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |

---

**DEFENDANT PHC FLUID POWER, L.L.C.'S
PRETRIAL MEMORANDUM ON CONTESTED ISSUES OF LAW**

---

Contents

I.   INEQUITABLE CONDUCT ................................................................................. 1

 A.   Inequitable Conduct Based on Mr. Lavergne's Knowing and Intentional Non-Disclosure of Material Prior Art to the Patent Office. ................................................. 1

 B.   Inequitable Conduct for Mr. Lavergne's Failure to Name a Co-Inventor. .......................... 6

 C.   The Court May Infer an Intent to Deceive from Total's Litigation Misconduct and/or as a Discovery Sanction. ........................................................................ 7

II.   INVALIDITY UNDER 35 U.S.C. §§ 102 AND 103 ...................................................... 8

 A.   References and Activities that Qualify as "Prior Art" ................................................. 9

  i.   35 U.S.C. § 102(a). ................................................................................... 9

  ii.   35 U.S.C. § 102(b). .................................................................................. 13

 B.   Obviousness ..................................................................................... 18

III.   DAMAGES AND ATTORNEY FEES, EXPENSES, AND COSTS ............................... 20

 A.   Damages Generally .............................................................................. 20

 B.   Lack of Standing ................................................................................. 22

 C.   Willfulness ...................................................................................... 24

 D.   Exceptional Case for Attorney Fees, Expenses and Costs ............................................ 24

 E.   Attorney Fees, Expenses and Costs Under 28 U.S.C. § 1927 .......................................... 25

## Table of Authorities

### Cases

*Abbott GmbH & Co., KG v. Centocor Ortho Biotech, Inc.*, 870 F. Supp. 2d 206 (D. Mass. 2012) ...........10

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817 (Fed. Cir. 2010) .....................6

*American Calcar, Inc. v. American Honda Motor Co., Inc.*, 768 F.3d 1185 (Fed. Cir. 2014) ....................4

*ATEN Int'l Co., Ltd. v. Uniclass Tech. Co., Ltd.*, 2019 WL 3558562 (Fed. Cir. Aug. 6, 2019)..................9

*Briggs & Stratton Corp. v. Chonqing RATO Power Co., Ltd.*, Civ. No. 5:13-cv-01316, 2015 WL
 4603553, (N.D.N.Y. July 30, 2015)..................................................................................................16

*CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196 (E.D.N.Y. 2009)...........................................................11

*Cali v. Eastern Airlines, Inc.*, 442 F.2d 65 (2d Cir. 1971).........................................................................13

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331 (Fed. Cir. 2005) ................................................6

*Chrimar Sys., Inc. v. Cisco Sys., Inc.*, 318 F. Supp. 2d 476 (E.D. Mich. 2004) ........................................11

*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 892
 (1988)......................................................................................................................................... 11, 16

*Delano Farms Co. v. California Table Grape Comm'n*, 940 F. Supp. 2d 1229 (E.D. Cal. 2013)...............14

*Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361 (Fed. Cir. 2000) ...............................12

*Egbert v. Lippmann*, 104 U.S. 333 (1881)..................................................................................................14

*Electric Storage Battery Co. v. Shimadzu*, 307 U.S. 5 (1939) ...................................................................15

*Electromotive Division of General Motors Corp. v. Transportation Sys. Division of General Electric Co.*,
 417 F.3d 1203 (Fed. Cir. 2005)....................................................................................................16

*Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291 (Fed. Cir. 2018)..............................3, 16

*Eolas Technologies Inc. v. Microsoft Corp.*, 399 F.3d 1325 (Fed. Cir. 2005)............................................14

*In re Caveney*, 761 F.2d 671 (Fed. Cir. 1985) ...........................................................................................15

*In re Chudik*, 851 F.3d 1365 (Fed. Cir. 2017) ............................................................................................8

*In re Epstein*, 32 F.3d 1559 (Fed. Cir. 1994) .............................................................................................9

*In re Hall*, 781 F.2d 897 (Fed. Cir. 1986)................................................................................................16

*In re Kollar*, 286 F.3d 1326 (Fed. Cir. 2002).............................................................................................16

*In re VerHoef*, 888 F.3d 1362 (Fed. Cir. 2018) ..........................................................................................6

*Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374 (Fed. Cir. 2005)...................................................13

*Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 2008 WL 7842052 (E.D.
 Tex. Aug. 27, 2008) ......................................................................................................................12

*J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577 (Fed. Cir. 1986) ...........................................15

*Jazz Pharma., Inc. v. Amneal Pharma., LLC*, 895 F.3d 1347 (Fed. Cir. 2018) ........................................16

*Junker v. Medical Components, Inc.*, No. 13-4606, 2016 WL 7427767 (E.D. Pa. Dec. 21, 2016) ............6

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342 (Fed. Cir. 2012) .....................................9

*KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398 (2007)................................................................................9

*Lockwood v. American Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997) ......................................................11

*Luma Corp. v. Stryker Corp.*, 2006 WL 2076780 (S.D.W. Va. July 24, 2016) .........................................15

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572 (Fed. Cir. 1996).....................................................................10

*Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363 (Fed. Cir. 2016)................................................................15

*Medtronic, Inc. v. Barry*, 891 F.3d 1368 (Fed. Cir. 2018).........................................................................16

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002)............................................12

*Morris & Associates, Inc. v. Cooling & Applied Tech., Inc.*, 2011 WL 2580668 (E.D.N.C. Jun. 29, 2011) ................................................................................................................................................. 10

*Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376 (Fed. Cir. 2007) ......................................... 14

*Netscape Comms. Corp. v. Konrad*, 295 F.3d 1315 (Fed. Cir. 2002) ................................................. 13, 14

*Novo Nordisk Pharma., Inc. v. Bio-Tech. General Corp.*, 424 F.3d 1347 (Fed. Cir. 2005) ...................... 12

*Old Town Canoe Co. v. Confluence Hold. Corp.*, 448 F.3d 1309 (Fed. Cir. 2006) ...................................... 3

*Ormoco Corp. v. Align Technology, Inc.*, 463 F.3d 1299 (Fed. Cir. 2006) ............................................... 10

*Panduit Corp. v. Dennison Mfg.*, 810 F.3d 1561 (Fed. Cir. 1987) ............................................................. 9

*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000) ......................... 6

*Pfaff v. Wells Elec., Inc.*, 525 U.S. 55 (1998) ......................................................................................... 15

*Regeneron Pharma., Inc. v. Merus N.V.*, 864 F.3d 1343 (Fed. Cir. 2017) ................................................. 7

*Research Equip. Solutions v. Gary W. Clem, Inc.*, 2012 WL 6650873 (D. Kan. Dec. 20, 2012) .............. 15

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) ........................................................... 13

*Schlumberger Tech. Corp. v. BICO Drilling Tools, Inc.*, 2019 WL 2450948 (S.D. Tex. June 12, 2019) .. 13

*Therasense, Inc. v. Becton Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) ............................... 1, 2, 3

*Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 443 F. Supp. 2d 836 (S.D. Tex. 2006) .................................................................................................................................................. 17

*TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333 (Fed. Cir. 2010) ................................................................. 9

*TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151 (Fed. Cir. 2004) ....................................... 9

*UCB, Inc. v. Watson Laboratories, Inc.*, 927 F.3d 1272 (Fed. Cir. 2019) ........................................... 10, 11

*Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352 (Fed. Cir. 2011) ......................................................... 9

## Statutes

35 U.S.C. § 102 ......................................................................................................................... 9, 10, 11, 13

35 U.S.C. § 103 ................................................................................................................................... 8, 9

35 U.S.C. § 285 ....................................................................................................................................... 3

37 CFR § 1.56 .................................................................................................................................. 1, 2, 3

## Treatises

1-3 Chisum on Patents § 3.08 ................................................................................................................ 10

2-6 Chisum § 6.02 ................................................................................................................................ 15

For its memorandum on contested issues of law, PHC Fluid Power, L.L.C. ("PHC") states:

I.     **INEQUITABLE CONDUCT**

   A.     **Inequitable Conduct Based on Mr. Lavergne's Knowing and Intentional
           Non-Disclosure of Material Prior Art to the Patent Office.**

Plaintiff Total Rebuild, Inc.'s ("Plaintiff's") infringement claims are barred by the affirmative defense of inequitable conduct. "Inequitable conduct is an equitable defense to patent infringement that, if proven, bars enforcement of a patent." *Therasense, Inc. v. Becton Dickinson and Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). To prevail on a claim of inequitable conduct based on nondisclosure of prior art to the PTO, the accused infringer must show the prior art was "material" and the patentee withheld the prior art with the specific intent to deceive the Patent and Trademark Office ("PTO"). *Id.* at 1290-91. An exception to these requirements applies "in cases of affirmative egregious misconduct." *Id.* at 1292. An example of affirmative egregious misconduct is "the filing of an unmistakably false affidavit." *Id.* The evidence will show the prior art withheld by Mr. Lavergne, the inventor identified on the face of U.S. Patent No. 8,146,428 (the "'428 Patent"), was material to the validity and patentability of the claims in the application, and Mr. Lavergne withheld the prior art with the intent to deceive the PTO.

The element of materiality is determined by the standard applied by the PTO. An applicant has a duty to disclose material prior art to the PTO during the prosecution of a patent application. *See* 37 CFR § 1.56 ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. . .. However, no patent will be granted on an application in connection with which

1

fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct."). Under 37 CFR § 1.56, the standard applied by the PTO, information is "material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability." As summarized by the Federal Circuit in *Therasense*, "as a general matter, the materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." 649 F.3d at 1291. "Often the patentability of a claim will be congruent with the validity determination—if a claim is properly invalidated in district court based on the deliberately withheld reference, then that reference is necessarily material because a finding of invalidity in a district court requires clear and convincing evidence, a higher evidentiary burden than that used in prosecution at the PTO." *Id*. at 1292. "However, even if a district court does not invalidate a claim based on a deliberately withheld reference, the reference may be material if it would have blocked issuance under the PTO's different evidentiary standards." *Id*. Thus, in determining whether the reference is material, "the court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction."[1] *Id*. at 1291-92; *see*

---

[1] Plaintiff incorrectly asserts that materiality must be proven by clear and convincing evidence. The law is clear: the preponderance of the evidence standard applies. *American Calcar*, 768 F.3d at 1189 ("This means that to assess materiality, the court must look to the standard used by the PTO to allow claims during examination. To wit: The court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction."). Under either standard, the undisclosed prior art was material.

*also* 37 CFR § 1.56(b) ("A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification...").

Generally, "the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Id*. However, "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Id*. The clear and convincing standard is met when "the specific intent to deceive [is] the single most reasonable inference able to be drawn from the evidence." *Id*.

Importantly, "<u>the remedy for inequitable conduct is the 'atomic bomb' of patent law</u>. Unlike validity defenses, which are claim specific, <u>inequitable conduct regarding a single claim renders the entire patent unenforceable</u>." *Id*. at 1288 (emphasis added). "Further, prevailing on a claim of inequitable conduct often makes a case 'exceptional,' leading potentially to an award of attorneys' fees under 35 U.S.C. § 285." *Id*. at 1289. "Inequitable conduct is a matter for the court to decide." *Old Town Canoe Co. v. Confluence Hold. Corp.*, 448 F.3d 1309, 1322 (Fed. Cir. 2006).

Two exemplary cases applying inequitable conduct are *Energy Heating* and *American Calcar*. *Energy Heating* involved a failure to disclose sales and public disclosures more than one year before the application, a remarkably similar fact pattern to the present case. In *Energy Heating* the patent related "to a method and apparatus for the continuous preparation of heated water flow for use in hydraulic fracturing, also known as 'fracing.'" *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1297-98 (Fed. Cir. 2018). In affirming the district court's holding of

patent invalidity for inequitable conduct, the Federal Circuit held:

> In its finding of facts, the district court found that the critical date for the on-sale bar and public-use bars of § 102(b) was September 18, 2008, one year prior to the earliest provisional application—U.S. Patent App. No. 61/276,950. The district court further found clear and convincing evidence of substantial on-sale and public uses of the claimed invention as early as October 2006, well before the critical date. Specifically, the court found that Mr. Hefley admitted at trial that he and his companies used water-heating systems containing all the elements of claim 1 on at least 61 frac jobs before the critical date. The court further found that invoices reflected that Mr. Hefley's companies collected over $1.8 million for those pre-critical date heat-on-the-fly services.
>
> The court also found that Mr. Hefley could not claim ignorance of either the significance of the "critical date" as it related to his patent, or the one-year grace period for filing a patent application on his claimed invention. The court found that Mr. Hefley himself testified at trial that his business partner had discussed with him the fact that the patent process required filing the application within one year after the invention was offered for sale.

*Id*. at 1300 (emphasis added).

In *American Calcar*, the patent related to "a multimedia system for use in a car to access vehicle information and control vehicle functions." *American Calcar, Inc. v. American Honda Motor Co., Inc.*, 768 F.3d 1185, 1187 (Fed. Cir. 2014). The Federal Circuit affirmed the district court's materiality finding and held that while the prior art reference did not disclose each element of claim 1 of the patent-at-issue, claim 1 would have been obvious in view of the non-disclosed prior art because "it would have been obvious to a person of ordinary skill in the art to include different information in the [prior art system]." *Id*. at 1190. The Federal Circuit further confirmed the district court's finding of an intent to deceive and held that while the patentee disclosed the existence of the prior art system to the PTO, those "disclosures exclude material information about the [prior art] system," and "[p]artial disclosure of material information about the prior art to the PTO cannot absolve a patentee of intent if the disclosure is intentionally selective." *Id*. The Court acknowledged there was no direct evidence of deceptive intent but reaffirmed that "[b]ecause

direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence . . . ." *Id*. at 1190-91.

Here, PHC will show that Mr. Lavergne—who alleges to have "been the sole owner, sole director, and sole shareholders of Total for nearly twenty (20) years" (Dkt. 66-2, ¶ 3) and Total's "alter ego" (Dkt. 66 at 1, 12)—engaged in inequitable conduct by failing to disclose to the USPTO numerous public disclosures, offers for sale, sales, installations, and uses of Millennium Tests System by Total for over two years before the critical date. The public disclosures, offers for sale, sales, installations, and uses of the Millennium Tests Systems were material to the application that issued as the '428 Patent because at least claims 1 and 16 would not have issued had Mr. Lavergne disclosed them to the USPTO. In its Motion for Partial Summary Judgment on Inequitable Conduct, Total did not dispute the Millennium Test Systems were material. *See generally* Total's MISO Motion for Par. Sum. Judg. on Ineq. Con. (Dkt. 170-1).

Mr. Lavergne's intent to deceive the USPTO through the non-disclosure is readily apparent from record evidence alone, and certainly given further evidence to be presented. The evidence will show Mr. Lavergne was substantially involved with all aspects of the sales and installations of the invalidating Millennium Test Systems, and those sales and installations resulted in hundreds of thousands of dollars of income for Total. Mr. Lavergne admitted at his deposition he knew of his duty to disclose the Millennium Test System to the USPTO but alleges he failed to do so because he "had delegated Total's officer manager at the time, a Ms. Tara Benoit, to provide that disclosure to Mr. Phung [the patent attorney], however, Ms. Benoit failed to do so . . . ." Total's MISO Motion for Par. Sum. Judg. on Ineq. Con. at 4 (Dkt. 170-1). <u>The Court has already found this excuse "implausible."</u> Ruling and Order at 5 (Dkt. 252) ("That explanation is shaky when

considered on its own; it becomes implausible when paired with circumstantial evidence suggesting Lavergne intended to deceive the PTO.").

### B.   Inequitable Conduct for Mr. Lavergne's Failure to Name a Co-Inventor.

The '428 Patent also is unenforceable for inequitable conduct because the evidence will show Mr. Lavergne knowingly failed to name a co-inventor(s). Under 35 U.S.C. § 102(f), no patent shall issue if the applicant "did not himself invent the subject matter sought to be patented." "This provision 'makes the naming of the correct inventor or inventors a condition of patentability; failure to name them renders a patent invalid.'" *In re VerHoef*, 888 F.3d 1362, 1367-68 (Fed. Cir. 2018) (citations omitted). "[W]hen named inventors deliberately conceal a true inventor's involvement, the applicants have committed inequitable conduct and the patent is unenforceable." *Junker v. Medical Components, Inc.*, No. 13-4606, 2016 WL 7427767, at *7 (E.D. Pa. Dec. 21, 2016) (citing *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 828 (Fed. Cir. 2010)); *see also PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000). "Inventorship is a question of law with underlying factual issues." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005).

Mr. Lavergne concealed joint inventors for two features claimed in the '428 Patent (Mr. Lavergne is not even an inventor of the '428 Patent). The first claimed feature invented by someone other than Mr. Lavergne is the placement of the pumps in the bunker with the tools being tested (which is claimed in all claims of the '428 Patent). The evidence will show Mr. Lavernge copied this feature from a third-party system. T.Lavergne Dep. Tr. at 239:2-241:12 (Dkt. 182). Mr. Lavergne testified previously, and will have to testify, he obtained this feature from a Baker Hughes facility in 2003 and 2004. *Id*. Mr. Lavergne readily identified the system when shown images of it. *Id*. He admitted that it contained the claimed feature, and he admitted he worked on the system in 2003 or 2004. *Id*. In so doing he admitted he did not invent this feature but obtained

it elsewhere. Not only did Mr. Lavergne admit that he did not invent this feature, but he admitted that he invented no feature of claim 1 by testifying the system he worked on in 2003 and 2004 had all the features of claim 1. Not only did Mr. Lavergne admit he did not name a joint inventor of claim 1, but he admitted that he is not even an inventor (joint or otherwise) of claim 1.

The second feature is the interlock that bleeds pressure when the door is opened (which is claimed in claims 3-5, 11-15, 18-19). Mr. Polk's trial deposition testimony shows he and engineers at Cameron conceived of the idea and conveyed it to Mr. Lavergne. Polk Dep. Tr. at 24:20-28:10 (Dkt. 185). The evidence will show Mr. Lavergne did not invent the interlock feature and failed to name Mr. Polk or Cameron as joint inventors. Mr. Lavergne has been unable to identify in this litigation any other alleged novel feature claimed in the '428 Patent he did invent. Mr. Lavergne simply obtained a patent for systems and features he obtained from others. PHC will show the '428 Patent also is invalid for inequitable conduct because Mr. Lavergne failed to name joint inventors.

### C.       The Court May Infer an Intent to Deceive from Total's Litigation Misconduct and/or as a Discovery Sanction.

A court may draw an adverse inference of an intent to deceive where the patentee engages in misconduct during litigation and is accused of misconduct during prosecution. *Regeneron Pharma., Inc. v. Merus N.V.*, 864 F.3d 1343, 1364 (Fed. Cir. 2017). The evidence will show Total's litigation misconduct supports an adverse inference of the intent to deceive.

PHC will show Total deliberately concealed key documents and information during discovery in this case to conceal Mr. Lavergne's inequitable conduct in obtaining the '428 Patent. The basis for PHC's assertion is set out on pages 5-10 of its Response in Opposition to Total's Motion for Partial Summary Judgment ("Response"). Response (Dkt. 251). Discovery has shown and PHC will show Total withheld all invoices, documents, and information that disclosed its pre-critical date sales of its Millennium Test System. Total first asserted that all pre-critical date

documents had been destroyed in a flood, and later, that they had been destroyed under Total's document retention policy. Total also provided false and misleading information as to its pre-critical date activities (such as the features of the systems it was selling pre-critical date) to further conceal the inequitable conduct. After PHC obtained a court ordered forensic examination of Total's computer network, Total produced numerous invoices and documents identifying the sales. Total then withdrew its assertion that PHC infringes claims 1, 2, 6-10, 16, and 17 of the '428 Patent, acknowledging that the claims were invalid over the pre-critical date sales (but as of this filing still has not filed a notice of abandonment of those claims with the USPTO even though it and its attorneys know claims 1, 2, 6-10, 16, and 17 are invalid). Total then agreed to pay all costs for the forensic examination (an amount over $14,000) to avoid PHC's going back to the Court. Total knew of and concealed its pre-critical date sales of Millennium Test System until the court-ordered forensic examination. Total's conduct warrants an adverse inference of intent to deceive.

## II.     INVALIDITY UNDER 35 U.S.C. §§ 102 AND 103

"A patent claim is invalid for anticipation under 35 U.S.C. § 102[2] when a prior art reference describes each and every limitation and enables one of skill in the art to practice an embodiment of the claimed invention without undue experimentation." *In re Chudik*, 851 F.3d 1365, 1372 (Fed. Cir. 2017) (citations omitted). "Simply put, an anticipated invention is not new." *Id*.

A patent claim is invalid for being obvious under 35 U.S.C. § 103 if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Unlike anticipation, where a single reference must disclose all

---

[2] The American Invents Act ("AIA"), Pub. L. No. 112-29, took effect on September 16, 2012. Because the application that issued as the '428 Patent was filed before that date, the pre-AIA version of §§ 102 and 103 apply. *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 n.1 (Fed. Cir. 2014).

claims elements, a party asserting obviousness may rely on the prior art as a whole. *Panduit Corp. v. Dennison Mfg.*, 810 F.3d 1561, 1566 (Fed. Cir. 1987). Obviousness requires a showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention. *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011) (citing *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007)).

"Whether a reference is prior art is a question of law based on underlying factual considerations." *ATEN Int'l Co., Ltd. v. Uniclass Tech. Co., Ltd.*, 2019 WL 3558562, at *2 (Fed. Cir. Aug. 6, 2019) (citing *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004)); *see also In re Epstein*, 32 F.3d 1559, 1564 (Fed. Cir. 1994) ("Whether something is 'in public use or on sale' within the meaning of section 102(b), and thus properly considered prior art, is a question of law with subsidiary issues of fact."). PHC will demonstrate that offers for sale, sales, disclosures, and uses of systems before the invention of the '428 Patent and before the critical date of the '428 Patent constitute prior art that invalidates all claims of the '428 Patent under 35 U.S.C. §§ 102 and 103. Because "[w]hether a prior art reference anticipates a patent claim is a question of fact," anticipation is not addressed in this Memorandum. *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010). Because "[o]bviousness is a question of law based on underlying factual findings. . .," obviousness is addressed after a discussion of what constitutes the prior art. *Id.* (citing *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012)).

## A. References and Activities that Qualify as "Prior Art"

### i. 35 U.S.C. § 102(a).

Prior art may be established under 35 U.S.C. § 102(a), which states in pertinent part, "[a] person shall be entitled to a patent unless . . . (a) the invention was known or used by others in this

country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent . . . ." 35 U.S.C. § 102(a). "This is because if the invention was known to or used by others in this country before the date of the patentee's invention, the later invention has not contributed to the store of knowledge, and has no entitlement to a patent." *UCB, Inc. v. Watson Laboratories, Inc.*, 927 F.3d 1272, 1289 (Fed. Cir. 2019).

"Section 102(a) explicitly refers to invention dates not filing dates." *Abbott GmbH & Co., KG v. Centocor Ortho Biotech, Inc.*, 870 F. Supp. 2d 206 (D. Mass. 2012) (citation omitted). "An earlier date of invention may be established by showing that, prior to the filing date, the inventor either reduced the invention to practice or conceived of it and exercised reasonable diligence toward reducing it to practice at a later date." *Id*. However, "[g]enerally, a patented invention is presumed to have been invented on the date when the patent application was filed." *Abbott GmbH & Co., KG v. Centocor Ortho Biotech, Inc.*, 870 F.Supp.2d 206 (D. Mass. 2012) (citing 1-3 Chisum on Patents § 3.08) ("The date of invention of the applicant or patentee . . . is presumed to be the date he files a complete application."). "It is the patentee's burden to present evidence of an earlier invention." *UCB, Inc.*, 927 F.3d at 1289, n.14 (citing *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-78 (Fed. Cir. 1996)). In the present case, invalidating prior art takes many forms.

### 1. Public Use Prior Art

Public uses of a system or method may constitute prior art. "For prior art to anticipate because it has been 'used,' the use must be accessible to the public." *Id*. "[A]t most the publicity requirement in Section 102(a) means the absence of affirmative steps to conceal." *Ormoco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1305-06 (Fed. Cir. 2006); 1-3 Chisum on Patents § 3.05 (2006); *see also Morris & Associates, Inc. v. Cooling & Applied Tech., Inc.*, 2011 WL 2580668, at *6-7 (E.D.N.C. Jun. 29, 2011) (listing cases that support the proposition "[f]or a method or

system to be in 'public use' within the meaning of 35 U.S.C. § 102(a) or (b), the method or system must be used in the ordinary course of business without active efforts to conceal its operation."). "Prior knowledge and use by a single person is sufficient." *UCB, Inc.*, 927 F.3d at 1289 (citing *Coffin v. Ogden*, 85 U.S. 120, 124 (1873)).

"Prior use under 35 U.S.C. § 102(a) only requires that all of the elements of the claimed invention be used by others accessible to the public." *Chrimar Sys., Inc. v. Cisco Sys., Inc.*, 318 F. Supp. 2d 476, 507 (E.D. Mich. 2004) (citing *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997)). "[T]he public need not have access to the 'inner workings' of a device for it to be considered 'in public use' or 'used by others' within the meaning of § 102." *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 304 (E.D.N.Y. 2009) (citing *Lockwood*, 780 F.3d at 1570); *see also Lockwood*, 780 F.3d at 1570 ("Lockwood attempts to preclude summary judgment by pointing to record testimony that one skilled in the art would not be able to build and practice the claimed invention without access to the secret aspects of SABRE. However, it is the claims that define a patented invention. . .. American's public use of the high-level aspects of the SABRE system was enough to place the *claimed* features of the '359 patent in the public's possession."). "Evidence of routine business practice can be sufficient to prove that a reference was made accessible before a critical date." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1569 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 892 (1988).

*UCB* is an exemplary case of invalidating "use" under § 102(a). In UCB, the Federal Circuit affirmed invalidity under § 102(a) based on the use of a medication by a single patient for a few days before the filing date of the patent. *UCB, Inc. v. Watson Laboratories Inc.*, 927 F.3d 1272, 1289-90 (Fed. Cir. 2019).

11

2. *Public Knowledge*

Public knowledge also may be prior art. "An invention is known under Section 102(a) when the knowledge in question is (a) publicly accessible and (b) sufficient to enable one of ordinary skill in the art to practice the invention." *Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 2008 WL 7842052, at *2 (E.D. Tex. Aug. 27, 2008) (citing *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002)). Public knowledge under § 102(a) can also be demonstrated by showing "the state of knowledge and use in [the United States]." *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1369 (Fed. Cir. 2000) ("A presentation indicative of the state of knowledge and use in this country therefore qualifies as prior art for anticipation purposes under § 102.").

The standard for enablement for Section 102 "is different from the standard under Section 112." *Iovate Health*, 2008 WL 7842052, at *5 (citing *Novo Nordisk Pharma., Inc. v. Bio-Tech. General Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005)). "The Section 102 standard is somewhat easier to meet, because it '<u>only requires that those suggestions [in the disclosure] be enabled to one of skill in the art</u>,' not that the suggestions must enable one skilled in the art to actually perform the invention." *Id*. (citing *Nova Nordisk*, 424 F.3d at 1355) (emphasis added). Conversely, "[u]nder Section 112, a patent specification must 'enable any person skilled in the art … to make and use' the invention described." *Id*. "Section 102, which does not use the word 'enable,' only requires that the person of skill in the art recognize that what is described in the prior art reference could be practiced." *Id*.

3. *Printed Publication*

Printed publications also may constitute invalidating prior art. Because the analysis is similar to the analysis as to what printed publications constitute prior art under § 102(b), what printed publications constitute "prior art" under § 102(a) is discuss in Section II(A)(ii)(3), *infra*.

12

ii.      35 U.S.C. § 102(b).

35 U.S.C. § 102(b) provides:

A person shall be entitled to a patent unless . . . (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

35 U.S.C. § 102(b). "An offer for sale, sale, or public use, if more than one year before the patent application was filed, will bar patenting of the product, even if the sale was not authorized by the patentee." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 866 (Fed. Cir. 2010). "Whether a patent is invalid for a public use or sale is question of law based on underlying facts." *Netscape Comms. Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002).

1.      *Public Use*

Public use also can invalidate a patent (and in this way, such public use is the equivalent to "prior art"). "Under the public use provision, a patent is invalid if the invention was 'in public use…in this country…more than one year prior to the date of the application for patent." *Schlumberger Tech. Corp. v. BICO Drilling Tools, Inc.*, 2019 WL 2450948, at *10 (S.D. Tex. June 12, 2019). "Public use includes 'any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor.'" *Id.* (citing *Petrolite Corp.*, 95 F.3d at 1425). "Public use by a third party, with or without the knowledge or consent of the patentee, will generally defeat the patent as readily as public use by the inventor himself." *Cali v. Eastern Airlines, Inc.*, 442 F.2d 65, 68 (2d Cir. 1971) (citations omitted). "For public use, the court must consider whether the purported use '(1) was accessible to the public; or (2) was commercially exploited." *Id.* (citing *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005)). "Cases in which courts find that a prior use was not a 'public use' within the meaning of 35 U.S.C. § 102 have found active concealment of the method or system by the

13

prior user, typically by contractual agreements to maintain secrecy." *Delano Farms Co. v. California Table Grape Comm'n*, 940 F. Supp. 2d 1229, 1244 (E.D. Cal. 2013).

### a.   Accessible to the Public.

The seminal case on accessibility to the public is *Egbert v. Lippmann*, 104 U.S. 333 (1881). In *Egbert*, the Court held that there was a public use when an inventor presented corset steels to a third-party for use, the inventor imposed no obligation of secrecy, nor any condition or restriction, and the third party used them for years for the purpose and in the manner designed by the inventor. *Egbert*, 104 U.S. at 337. The Court held "to constitute the public use of an invention it is not necessary that more than one of the patented articles should be publicly used," "whether the use of an invention is public or private does not necessarily depend upon the number of persons to whom its use was known," and "[a]n invention may consist of a lever or spring, hidden in the running gear of a watch, or of a rachet, shaft, or cog-wheel covered form view in the recesses of a machine for spinning of weaving. Nevertheless, if its inventor sells a machine of which his invention forms a part, and allows it to be used without restriction of any kind, the use is a public one." *Id*. at 336; *see Eolas Technologies Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1334 (Fed. Cir. 2005) (finding public use where third party demonstrated claimed invention to two engineers "who were under no confidentiality obligation."); *see also Netscape Commns. Corp. v. Konrad*, 295 F.3d 1315 (Fed. Cir. 2002) (finding disclosure to two University of California computing personnel was an invalidating public use because "they were under no obligation to keep disclosure confidential.").

### b.   Commercially Exploited.

"[T]he ordinary use of a machine or the practice of a process in a factory in the usual course of producing articles for commercial purposes is a public use." *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1384 (Fed. Cir. 2007) (citing *Electric Storage Battery Co. v.*

14

*Shimadzu*, 307 U.S. 5 (1939)). "[I]t is generally acknowledged that 'a use is public even though it occurs in a factory or other area in which the general public is excluded.'" *See Research Equip. Solutions v. Gary W. Clem, Inc.*, 2012 WL 6650873, at *8 (D. Kan. Dec. 20, 2012) (citing 2-6 Chisum § 6.02(a)).

In *Electric Storage*, the Supreme Court held the patents-at-issue invalid for public use because (1) the accused infringer independently came upon both the method and the apparatus of the patents, and "continuously employed the alleged infringing machine and process for the production of lead oxide power used in the manufacture of plates for storage batteries which have been sold in quantity," and (2) "[t]here is no finding . . . to the effect that the machine, process, and product were not well known to the employees in the plant, or that efforts were made to conceal them from anyone who had a legitimate interest in understanding them." *Electric Storage*, 307 U.S. at 20.

### 2.  On-Sale Bar

"[Section] 102(b) renders invalid a patent directed to an invention placed on sale in the United States more than one year before filing of the patent application. That bar is not limited to sales by the inventor or one under his control, but may result from activities of a third party." *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *see also Luma Corp. v. Stryker Corp.*, 2006 WL 2076780, at *14 (S.D.W. Va. July 24, 2016) ("The On-Sale Bar applies to sales pre-dating the critical date by third parties as well as by the patentee.") (citing *In re Caveney*, 761 F.2d 671, 676 (Fed. Cir. 1985)). "[T]he on-sale bar under 35 U.S.C. §102(b) applies when, before the critical date, the claimed invention (1) was the subject of a commercial sale; and (2) was ready for patenting." *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1372 (Fed. Cir. 2016) (citing *Pfaff v. Wells Elec., Inc.*, 525 U.S. 55, 67-68 (1998)). "The 'public use' or 'on-sale' inquiry 'is not whether the sale, even a third party sale, 'discloses' the invention at the time of the sale, but

whether the sale relates to a device that embodies the invention." *Briggs & Stratton Corp. v. Chonqing RATO Power Co., Ltd.*, Civ. No. 5:13-cv-01316, 2015 WL 4603553, at *3 (N.D.N.Y. July 30, 2015) (citing *J.A. LaPorte, Inc.*, 787 F.2d at 1583). "A single sale is sufficient to bar patentability." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, Case No. 4:13-cv-10, 2016 WL 10837799, at *3 (D.N.D. Jan. 14, 2016) (citing *Electromotive Division of General Motors Corp. v. Transportation Sys. Division of General Electric Co.*, 417 F.3d 1203, 1209 (Fed. Cir. 2005)). "Whether an invention is 'on sale' within the meaning of § 102(b) is a question of law based on underlying factual findings." *In re Kollar*, 286 F.3d 1326, 1329 (Fed. Cir. 2002) (citations omitted).

### 3.     Printed Publication

"This court and its predecessor have interpreted the 'printed publication' provision of 35 U.S.C. § 102(b) [pre-AIA] in light of its purpose 'to prevent the withdrawal by an inventor . . . of that which was already in the possession of the public.'" *Jazz Pharma., Inc. v. Amneal Pharma., LLC*, 895 F.3d 1347, 1355 (Fed. Cir. 2018) (citing *Medtronic, Inc. v. Barry*, 891 F.3d 1368, 1380 (Fed. Cir. 2018)). "Because there are many ways in which a reference may be disseminated to the interested public, 'public accessibility' has been called the touchstone in determining whether a reference constitutes a 'printed publication' . . . ." *Id*. (citing *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986)). "A reference is considered publicly accessible 'upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it.'" *Id*. (citing *Wyer*, 655 F.2d at 226)). "If accessibility is proved, there is no requirement to show that particular members of the public actually received the information." *Id*. (citing *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1569 (Fed. Cir. 1988)); *see also Transocean*

*Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 443 F. Supp. 2d 836, 848 (S.D. Tex. 2006) (holding limited distributions of brochure for oil rig was "printed publication").

"The proper test of a publication as a § 102(b) bar is 'whether one skilled in the art to which the invention pertains could take the description of the invention in the printed publication and combine it with his own knowledge of the particular art and from this combination be put in possession of the invention on which a patent is sought.' In particular, one must be able to make the claimed invention without undue experimentation." *In re Elsner*, 381 F.3d 1125, 1128 (Fed. Cir. 2004) (citations omitted). District courts are to "presume the enablement of unclaimed (and claimed) material in a prior art patent defendant asserts against a plaintiff." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1344 (Fed. Cir. 2003). The presumption also applies to prior art publications a defendant asserts against a plaintiff. *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 565 (D. Del. 2014); *see also Amgen*, 314 F.3d at 1344 n.22; *In re Antor Media Corp.*, 689 F.3d 1282, 1288 (Fed. Cir. 2012).

An exemplary case of an invalidating "printed publication" under § 102 (b) is *In re Hall*, 781 F.2d 897, 897 (Fed. Cir. 1986). In *Hall*, the issue was whether a third-party dissertation submitted to the Department of Chemistry and Pharmacy at Freiburg University in the Federal Republic of Germany before the critical date was prior art under § 102(b). The Court held the dissertation was prior art, reasoning:

> Dr. Will's [who was the director and manager of the Loan Department of the Library of Freiburg University] affidavits give a rather general library procedure as to indexing, cataloging, and shelving of theses. Although no specific dates are cited (except that the thesis was received on November 4, 1977), Dr. Will's affidavits consistently maintain that inasmuch as the Foldi dissertation was received by the library in early November 1977, the dissertation "most probably was available for general use toward the beginning of the month of December, 1977." The only reasonable interpretation of the affidavits is that Dr. Will was relying on his library's general practice for indexing, cataloging, and shelving theses in estimating the time it would have taken to make the dissertation available to the interested

> public. Dr. Will's affidavits are competent evidence, and in these circumstances, persuasive evidence that the Foldi dissertation was accessible prior to the critical date. Reliance on an approximation found in the affidavits such as "toward the beginning of the month of December, 1977" works no injustice here because the critical date, February 27, 1978, is some two and one half months later. Moreover, it is undisputed that appellant proffered no rebuttal evidence.

*In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986).

Here, PHC will show several references to be prior art. For example, the Millennium Test Systems that Total offered for sale, sold, installed, and used before the critical date are prior art under 102(b). Similarly, the Cameron Quote was an offer for sale and printed publication by Total for Millennium Test Systems that is prior art under 102(b).

PHC will show the Schlumberger 2003 and Offshore 2006 systems are prior art under 102(a) and 102(b). The evidence will prove the systems were offered for sale, sold, installed, commissioned, and "started-up" by employees of third-party Ruelco, Inc., who were not under any obligation to keep them confidential. The systems were also purchased, used, and commercially exploited by employees of third parties and third parties who were not under any obligation to keep them confidential.

PHC will show Haskel 1990 and Haskel Ad 55680 were brochures made and distributed by Haskel long before the critical date and, thus, are prior art printed publications under 102(a) and 102(b). Haskel 1996 was a published article in the June 1996 edition of World Pumps magazine and is a prior art printed publication under 102(a) and 102(b). Haskel Model 55680 was a pressure testing device sold by Haskel to at least three parties before the critical date and is prior art under 102(a) and 102(b). These systems are prior art that anticipate and/or render obvious the claims of the '428 Patent.

### B.    Obviousness

The '428 Patent also is invalid for obviousness under 35 U.S.C. § 103. "A patent is invalid

for obviousness 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *Circuit Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1334-35 (Fed. Cir 2015) (citing 35 U.S.C. § 103(a)). "Obviousness is a question of law based on underlying factual findings. . .." *Id*. (citing *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012)).

"The term 'prior art' as used in section 103 refers at least to the statutory material named in 35 U.S.C. § 102. *Riverwood Intern. Corp. v. R.A. Jones & Co., Inc.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1305 (Fed. Cir. 2006) ("'Prior art' in the obviousness context includes the material identified in section 102(a)") (citations omitted); *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1344 (Fed. Cir. 2007) ("Prior art under the § 102(b) on-sale bar is also prior art for the purposes of obviousness under § 103.") (citations omitted); *Novo Nordisk A/S v. Caraco Pharma. Labs., Ltd.*, 2010 WL 2403041, at *2 (E.D. Mich. Jun. 9, 2010) (listing cases). "Section 102(b) may create a bar to patentability either alone, if the device placed on sale is an anticipation of the later claimed invention or, in conjunction with 35 U.S.C. § 103 (1988), if the claimed invention would have been obvious from the on-sale device in conjunction with the prior art." *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1071 (Fed. Cir. 1992).

"A reference qualifies as prior art for an obvious determination under § 103 only when it is analogous to the claimed invention." *In re Klein*, 647 F.3d 1343, 1348 (Fed. Cir. 2011) (citing *Innovention Toys, LLC v. MGA Entertainment, Inc.*, 637 F.3d 1314, 1321 (Fed. Cir. 2011)). "Two separate tests define the scope of analogous prior art: (1) whether the art is from the same field of endeavor, regardless of the problem addressed and, (2) if the reference is not within the field of

the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *Id.* (citing *In re Bigio*, 381 F.3d 1320, at 1325 (Fed. Cir. 2004)). "Whether a prior art reference is 'analogous' is a question of fact." *Innovention Toys*, 637 F.3d at 1321 (citations omitted).

"A claim can be obvious even where all of the claimed features are not found in specific prior art references, where 'there is a showing of a suggestion or motivation to modify the teachings of [the prior art] to the claimed invention.'" *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1307 (Fed. Cir. 2006). "A 'motivation to combine may be found explicitly or implicitly in market forces; design incentives; the 'interrelated teachings of multiple patents;' 'any need or problem known in the field of endeavor at the time of invention and addressed by the patent'; and the background knowledge, creatively, and common sense of the person of ordinary skill.'" *ZUP, LLC v. Nash Manu., Inc.*, 896 F.3d 1365, 1371 (Fed. Cir. 2018). "When there is a design need or a market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).

PHC will show that the cited prior art renders all claims of the '428 Patent obvious through various combinations of prior art referenced in its exhibit list.

## III.   DAMAGES AND ATTORNEY FEES, EXPENSES, AND COSTS

### A.   Damages Generally

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. 284. "[T]he statutory measure of damages is 'the difference between the patent owner's pecuniary

condition after the infringement, and what his condition would have been if the infringement had not occurred.'" *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1283 (Fed. Cir. 2017). "Whether the lost profits at issue are legally compensable is a question of law . . .." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (*en banc*).

To obtain lost profits, the patentee must establish that "but for" the conduct of the infringer, the patentee would have made those profits. *Mentor Graphics*, 851 F.3d at 1284. "The burden of proving damages falls on the patentee." *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). "There is no particular required method to prove but for causation. One 'useful, but non-exclusive' method to establish the patentee's entitled to lost profits is the *Panduit* test first articulated by the Sixth Circuit. *Mentor Graphics*, 851 F.3d at 1284. Under the *Panduit* test, a patentee is entitled to lost profits damage if it can establish (1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made. *Id.* at 1285. Damages under *Panduit* are not easy to prove. *Id.* (citing string of publications and cases showing lost profits are not easy to prove).

"The first [*Panduit*] factor—demand for the patent product—considers demand for the product as a whole. The second factor—the absence of non-infringing alternatives—considers demand for particular limitations or features of the claimed invention." *Mentor Graphics*, 851 F.3d at 1285 (citation omitted). "The second factor, absence of acceptable non-infringing alternatives, often proves the most difficult for patent holders. Under this factor, if there is a non-infringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale." *Id.* at 1286.

PHC will show Total is not entitled its alleged lost profits at least because (1) PHC's

conduct was not the but-for cause of any lost sale; and (2) a plethora of non-infringing alternatives are acceptable to purchasers.

### B.    Lack of Standing

Total does not have standing to recover damages occurring prior to the March 26, 2015 executed assignment. "The general rule is that one seeking to recover money damages for infringement of a United States patent . . . must have held the **legal title** to the patent **during the time of the infringement**." *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) (emphasis in original) (citing *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40-41 (1923)). Whether a party has standing to sue for patent infringement is a question of law. *Israel Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1262 (Fed. Cir. 2007).

The right to sue for past damage for infringement is not transferred to an assignee "unless the assignment agreement manifests an intent to transfer this right." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996). "[I]t is a 'great mistake' to 'suppose' that the assignment of the patent carries with it the right to sue for past infringement." *Minco* at 1117 (citing *Moore v. March*, 74 U.S. 515, 522 (1868)). "Under the general rule, a bare reference to all right, title, and interest does not normally transfer the right to sue for past infringement." *Id.*; *see also* Ruling and Order at 3-4 (Dkt. 148) ("Courts have repeatedly held that absent explicit language conveying the right to sue for past infringement, the assignee lacks standing to sue for past infringement . . ..").

The determination of "whether the right to sue for prior infringement has been transferred turns on the proper construction of the assignment agreement." *Id*. This is a matter of state contract law. *Id*. Under Louisiana law, "[t]he words of a contract are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (internal citations

22

omitted); *see also* LA. CIV. CODE ANN. art. 2047. "When a contract's language is 'clear and explicit and leads to no absurd consequences, no further interpretation may be made in search of the parties' intent.'" *Guidry* at 181 (citing LA. CIV. CODE ANN. art. 2046); *see also UD Tech. Corp. v. Phenomenex, Inc.*, No. 05-842-GMS, 2007 WL 28295, at *4 (D. Del. Jan. 7, 2007) (holding that the relevant question is not the intent of the parties but whether the assignment agreement manifests an intent to transfer the right to sue for prior infringement).

Finally, a failure to timely assign the right to sue for past damage cannot be corrected after the lawsuit was filed. *Messagephone, Inc. v. SVI Sys., Inc.*, No. 99-1471, 2000 WL 1141046, at *5 (Fed. Cir. 2000), *as amended on denial of reh'g* (Dec. 13, 2000); *see also Permacel Kansas City, Inc. v. Soundwich, Inc.*, No. 03-0766, 2006 WL 1449979 (W.D. Mo. May 24, 2006); *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-468, 2009 WL 2460985, at *6 (E.D. Tex. Aug. 10, 2009); *IPXpharma, LLC v. Millennium Pharm., Inc.*, No. 3:14-1545, 2014 WL 6977662, at *6 (M.D. Tenn. Dec. 9, 2014).

In its Ruling and Order on PHC's Motion for Summary Judgment re Total's lack of standing to sue for past damages, this Court held that "[g]enerally speaking, rights to an invention belong to the inventor. But if the inventor is the alter ego of a company because he has a close and intertwined relationship with the company, then the company has total ownership over the invention." Ruling and Order at 4-5 (citing *Bd. of Trustees v. Roche Molecular Sys.*, 563 U.S. 776, 786 (2011); *LeFiell v. United States*, 162 Ct. Cl. 865, 869 (Ct. Cl. 1963)). The Court then denied PHC's Motion for Partial Summary Judgment holding there is "a genuine dispute of material fact as to whether Lavergne is the alter ego of Plaintiff, and whether Plaintiff has standing to sue for alleged infringement before Lavergne assigned the patent to Plaintiff." *Id*. at 5. "Whether or not such relationship exists is a question of fact to be decided upon all the circumstances of the

individual case." *LeFiell v. U.S.*, 162 Ct. Cl. 865, 869 (Ct. Cl. 1963). PHC will demonstrate Lavergne and Total were not alter egos.

### C.      Willfulness

"Section 284 of the Patent Act provides that, in a case of infringement, courts 'may increase the damages up to three times the amount found or assessed.'" *Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S.Ct. 1923, 1928 (2016) (citing 35 U.S.C. § 284). "[C]ourts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." *Id*. at 1933. Enhanced damages "should generally be reserved for egregious cases typified by willful misconduct," but need not "follow a finding of egregious conduct." *Id*. at 1933-34. There is no evidence of willfulness in this case.

### D.      Exceptional Case for Attorney Fees, Expenses and Costs

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "In 1952, when congress used the word ['exceptional'] in § 285 (and today, for that matter), 'exceptional' meant 'uncommon,' 'rare,' or 'no ordinary.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014) (citing Webster's New Int'l Dictionary 889 (2d ed. 1934)). "[A]n exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the government law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). PHC will show this is an exceptional case for which it is entitled to any award under 35 U.S.C. § 285 given the meritless claims, inequitable conduct, withholding of evidence, discovery conduct, and other factors.

### E.     Attorney Fees, Expenses and Costs Under 28 U.S.C. § 1927

Although not necessarily an issue for trial, PHC anticipates filing a post-trial motion for sanctions under 28 U.S.C. § 1927 against Total's counsel–both firm and attorneys. "Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "In order to award sanctions, the court must find evidence of 'bad faith, improper motive, or reckless disregard of the duty owed to the court." *Oliver v. City of Garland, TX*, 2008 WL 4444320, at *1 (E.D. Tex. Sept. 26, 2008) (citing *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002)).

Total's counsel's conduct warrants sanctions because it has been both unreasonable and vexatious. As will be explained in that motion, the attorney took several sanctionable actions including but not limited to maintaining "implausible" positions on failure to disclose; unsupportable and ever-changing theories of infringement; misrepresentations regarding the deleted status of documents showing prior sales; and other bad faith litigation.

Dated: August 19, 2019

                                        Respectfully submitted,

                                        **MILLER LEGAL PARTNERS PLLC**

                                        /s/ Nicholas R. Valenti
                                        Samuel F. Miller, TN Bar No. 22936
                                        Nicholas R. Valenti, TN Bar No. 35420
                                        Fifth Third Center–Suite 2000
                                        424 Church Street
                                        Nashville, Tennessee 37129
                                        Tel/Fax: (615) 988-9011
                                        Email: smiller@millerlegalpartners.com
                                        nvalenti@millerlegalpartners.com

                                        **NEUNERPATE**

/s/ Cliff A. Lacour
Brandon W. Letulier - #28657
Cliff A. LaCour - #30581
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
Tel: (337) 237-7000
Fax: (337) 233-9450
Email: bletulier@neunerpate.com
         clacour@neunerpate.com

*Attorneys for PHC Fluid Power, L.L.C.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this __ day of August 2019, a copy of the foregoing was served on counsel of record listed below via the Court's ECF system:

William W. Stagg
Chase A. Manuel
Steven G. Durio
Tyler Rush
Durio, McGoffin, Stagg & Ackermann, PC
220 Heymann Boulevard (70503)
Post Office Box 51308 Lafayette, LA 70505-1308
Bill@dmsfirm.com
Chase@dmsfirm.com
Buzz@dmsfirm.com
tyler@dmsfirm.com

Brandon W. Letulier
Cliff A. LaCour
NeunerPate
One Petroleum Center, Suite 200
1001 W. Pinhook Road
Lafayette, LA 70503
bletulier@neunerpate.com
clacour@neunerpate.com

s/ Nicholas R. Valenti
Nicholas R. Valenti
