**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **TOTAL REBUILD, INC.** | ) | |
| | ) | |
| **Plaintiff/Counterclaim-Defendant,** | ) | **Case No. 6:15-cv-01855-TAD-CBW** |
| | ) | |
| **v.** | ) | **JUDGE TERRY A. DOUGHTY** |
| | ) | |
| **PHC FLUID POWER, L.L.C.,** | ) | **MAGISTRATE JUDGE WHITEHURST** |
| | ) | |
| **Defendant/Counterclaim-Plaintiff.** | ) | **JURY TRIAL DEMAND** |
| | ) | |

**PRETRIAL ORDER**

Following pretrial proceedings in this cause pursuant to the procedure of this Court, **IT IS ORDERED:**

A.

This case involves Plaintiff Total Rebuild, Inc.'s ("Plaintiff's" or "Total's") claim of infringement of claims 3-5, 11-15, and 18-19 of US Patent No. 8,146,428 (the "'428 Patent") against Defendant PHC Fluid Power, L.L.C. ("Defendant" or "PHC") and PHC's counterclaims for invalidity, unenforceability, and non-infringement of the '428 Patent.

Total contends that claims 3-5, 11-15, and 18-19 of the '428 Patent have been literally infringed directly or indirectly by PHC under all applicable provisions of Title 35, United States Code §§ 1, *et seq*. Additionally, Total contends PHC was given notice of the '428 Patent, but continued to make, use, rent, sell, and/or offer to sell systems which infringe the '428 Patent. Total seeks damages, injunctive relief and attorney fees, expenses, and costs under 35 U.S.C. §§ 284, 285 against PHC and trebling of such damages as a result of willful, deliberate, wanton and reckless infringement by PHC as provided by 35 U.S.C. § 284.

1

PHC asserts that none of its systems infringe any asserted claim of the '428 Patent; the '428 Patent is invalid and/or unenforceable in its entirety through inequitable conduct, anticipation, obviousness, and otherwise; and Total's lawsuit and conduct before the USPTO and during litigation warrants an award of attorney fees, expenses and costs against Total under 35 U.S.C. § 285 and against the law firm of Durio, McGoffin, Stagg, Ackerman, PC and attorneys Chase A. Manuel, Steven G. Durio, William W. Stagg, and Tyler Rush under 28 U.S.C. § 1927.

### B.

Total is a corporation organized and existing under the laws of the State of Louisiana. PHC is a limited liability corporation organized and existing under the laws of the State of Louisiana. Total and PHC both have business locations within this District.

### C.

This is an action arising under the United States Patent Act, 35 U.S.C. § 100, *et seq*., and the declaratory judgment provisions of 28 U.S.C. §§ 2201, 2002. This Court has subject matter jurisdiction over this controversy under 28 U.S.C. §§ 1331, 1338(a)-(b), 2201, 2202. Neither party contests subject matter jurisdiction.

Venue is proper in this District under 28 U.S.C. §§ 1400, 1391(b)-(c) because both companies operate businesses within this District. Neither party contests personal jurisdiction.

PHC denies that Total has standing to assert infringement by the systems identified as PHC-TB-23-W-ATV4-HSF202-RV-RC  (a/k/a  PHC-PS-23-W-ATV4-HSF202-RV-RC);  PHC-TB-30-W-ASF100-HSF302-RC; PHC-TB-15-W-ATV4-GSF100-AGT62-152-RC; PHC-TB-23-W-ATV4-HSF202-4RC (a/k/a PHC-PS-23-W-ATV4-HSF202-RC); and any other systems that were offered for sale, sold, installed, or used by PHC prior to March 26, 2015.

### D.

The following facts are stipulated by the parties and require no proof:

1.      Total Rebuild, Inc. ("Total") is a corporation organized and existing under the laws of the State of Louisiana. Total is located in Lafayette, Louisiana.

2.      PHC Fluid Power L.L.C. ("PHC") is a limited liability corporation organized and existing under the laws of the State of Louisiana. PHC is located in Broussard, Louisiana. The members (owners) of PHC live near Lafayette, Louisiana.

3.      Registered Patent Attorney Thomas N. Phung filed United States provisional patent application No. 61/188,435 on August 8, 2008 on behalf of Terry J. Lavergne.

4.      Registered Patent Attorney Thomas N. Phung filed United States non-provisional patent application No. 12/462,752 which claims priority to provisional application No. 61/188,435, on August 7, 2009, on behalf of Terry J. Lavergne.

5.      Application No. 12/462,752 (the "Application") issued as United States Patent No. 8,146,428 (the "'428 Patent") on April 3, 2012 and listed Terry J. Lavergne as inventor.

6.      Total sold a test system that it called the Millennium Test System.

7.      William W. Stagg, counsel of record in this case, sent to PHC a letter dated February 25, 2015 ("February Letter") in which Mr. Stagg asserted PHC may be infringing the '428 Patent.

8.      The February Letter indicated that "[Mr. Stagg's] firm represents Terry Lavergne, the owner of U.S. Patent 8,146,428 B2."

9.      Terry J. Lavergne assigned certain rights in the '428 Patent to Total Rebuild, Inc. via written assignment dated March 26, 2015 (the "'428 Assignment").

10.     In the '428 Assignment, Terry J. Lavergne assigned to Total "the full and exclusive worldwide right, title and interest in and to said Invention and said Patent, and in and to any

continuation, division, renewal, substitute, or reissue thereof, for the full term or terms for which the same may be granted" of the '428 Patent.

11.     On June 11, 2015, Total filed this lawsuit.

12.     On December 14, 2016, Terry J. Lavergne signed an Amended and Supplemental Patent Assignment in which he assigned additional rights related to the '428 Patent including but not limited to "all rights of action and damages for past infringement and the right to sue for past infringement" of the '428 Patent.

## E.

The contested facts are:

1.     Plaintiff contends infringement of the '428 Patent pursuant to Title 35, United States Code §§ 1 et. seq

2.     Plaintiff contends PHC is and/or has been infringing claims 3-5, 11-15, 18, and 19 of the '428 Patent under 35 U.S.C. §§ 271 (a),(b) and/ or (c), directly or indirectly, by making, using, selling or offering for sale, products and/or services claimed in the ''428 Patent or by inducing or contributing to the making, using, selling or offering to sell by others of products and/or services claimed in the 428 Patent.

3.     Plaintiff contends PHC has infringed Claim 3 of the '428 Patent by including with the safety system described in Claim 1, a sensor for sensing that said access opening is closed, said sensor coupled to said bleed valve to activate said bleed valve to prevent pressure buildup in the high-pressure testing equipment if the access opening is not closed.

4.     Plaintiff contends PHC has infringed Claim 4 of the '428 Patent by locating the sensor described in Claim 3 at the access opening described in claim 1.

5.      Plaintiff contends PHC has infringed Claim 5 of the '428 Patent by including with the safety system described in Claim 3 a spring maintaining the bleed valve described in Claim 1 in an opened condition to prevent pressure build-up in the high-pressure pneumatics testing equipment described in Claim 1 and by employing air to operate that bleed valve to a closed condition to allow pressure build-up in the high-pressure pneumatics testing equipment.

6.      Plaintiff contends PHC has infringed Claim 11 of the '428 Patent by making, using, selling or offering for sale, directly or indirectly, a safety system for testing high-pressure devices comprising an explosion-proof safety housing, high-pressure pneumatics testing equipment located within said housing, a closeable access opening in said housing for inserting a high-pressure device for testing within said housing, means within said housing for coupling said high-pressure pneumatics testing equipment to said high-pressure device for testing, a control panel located remote from said housing, a bleed valve coupled to said high-pressure testing equipment, a sensor for sensing access opening is closed, said sensor coupled to said bleed valve to activate said bleed valve to prevent pressure buildup in the high-pressure testing equipment if the access opening is not closed, and means linking said high-pressure pneumatics testing equipment to said control panel for operating said high-pressure pneumatics testing equipment within said safety housing from said control panel.

7.      Plaintiff contends PHC has infringed Claim 12 of the '428 Patent by including with the safety system described in Claim 11 means for monitoring and recording of the operation of said high-pressure pneumatics testing equipment.

8.      Plaintiff contends PHC has infringed Claim 13 of the '428 Patent by providing with the safety system described in Claim 11, as the high-pressure equipment testing device described in Claim 11, a low-pressure pump, an intermediate- pressure pump, and a high-pressure pump to

provide sequential increase in the pressure to the high-pressure devices being tested as described in Claim 11.

9.      Plaintiff contends PHC has infringed Claim 14 of the '428 Patent by providing as the explosion-proof safety housing described in Claim 11 a portable housing.

10.      Plaintiff contends PHC has infringed Claim 15 of the '428 Patent by including with the safety system described in Claim 11 a spring maintaining the bleed valve described in Claim 11 in an opened condition to prevent pressure build-up in the high-pressure pneumatics testing equipment described in Claim 11 and by employing air in opposition to said spring to actuate said bleed valve to a closed condition to allow pressure build-up in said high-pressure pneumatics testing equipment.

11.      Plaintiff contends PHC has infringed Claim 18 of the '428 Patent by practicing the method described in Claim 16 and adding the steps of providing a bleed valve coupled to the high-pressure testing equipment described in Claim 16 and providing a sensor for sensing that said access opening is closed, said sensor coupled to said bleed valve to activate said bleed valve to prevent pressure buildup in the high-pressure testing equipment if the access opening is not closed.

12.      Plaintiff contends PHC has infringed Claim 19 of the '428 Patent by practicing the method described in Claim 18 wherein the bleed valve described in Claim 18 includes a spring maintaining said bleed valve in an opened condition to prevent pressure build-up in the high-pressure pneumatics testing equipment described in Claim 18 and is air operated to actuate said bleed valve to a closed condition to allow pressure build-up in said high-pressure pneumatics testing equipment.

13.      PHC contends it does not and has not infringed claims 3-5, 11-15, 18, and 19 of the '428 Patent under 35 U.S.C. §§ 271 (a),(b) and/or (c), directly or indirectly, by making, using,

selling or offering for sale products and/or services claimed in the '428 Patent or by inducing or contributing to the making, using, selling or offering to sell by others of products and/or services claimed in the '428 Patent.

14.     PHC contends it has not infringed claim 3 of the '428 Patent by including with the safety systems described in claim 1, a sensor for sensing that said access opening is closed, said sensor coupled to said bleed valve to activate said bleed valve to prevent pressure buildup in the high-pressure testing equipment if the access opening is not closed.

15.     PHC contends it has not infringed claim 4 of the '428 Patent by locating the sensor described in claim 3 at the access opening described in claim 1.

16.     PHC contends it has not infringed claim 5 of the '428 Patent by including with the safety system described in claim 3 a spring maintaining the bleed valve described in claim 1 in an opened condition to prevent pressure build-up in the high-pressure pneumatics testing equipment described in claim 1 and by employing air to operate that bleed valve to a closed condition to allow pressure build-up in the high-pressure pneumatics testing equipment.

17.     PHC contends it has not infringed claim 11 of the '428 Patent by making, using, selling or offering for sale, directly or indirectly, a safety system for testing high-pressure devices comprising an explosion-proof safety housing, high-pressure pneumatics testing equipment located within said housing, a closable access opening in said housing for inserting a high-pressure device for testing within said housing, means within said housing for coupling said high-pressure pneumatics testing equipment to said high-pressure device for testing, a control panel located remote from said housing, a bleed valve coupled to said high-pressure testing equipment, a sensor for sensing access opening is closed, said sensor coupled to said bleed valve to activate said bleed valve to prevent pressure buildup in the high-pressure testing equipment if the access opening is

not closed, and means linking said high-pressure pneumatics testing equipment to said control panel for operating said high-pressure pneumatics testing equipment within said safety housing from said control panel.

18.     PHC contends it has not infringed claim 12 of the '428 Patent by including with the safety system described in claim 11 means for monitoring and recording of the operation of said high-pressure pneumatics testing equipment.

19.     PHC contends it has not infringed claim 13 of the '428 Patent by providing with the safety system described in claim 11, as the high-pressure equipment testing device described in claim 11, a low-pressure pump, an intermediate-pressure pump, and a high-pressure pump to provide sequential increase in the pressure to the high-pressure devices being tested as described in claim 11.

20.     PHC contends it has not infringed claim 14 of the '428 Patent by providing as the explosion-proof safety housing described in claim 11 a portable housing.

21.     PHC contends it has not infringed claim 15 of the '428 Patent by including with the safety system described in claim 11 a spring maintaining the bleed valve described in claim 11 in an opened condition to prevent pressure build-up in the high-pressure pneumatics testing equipment described in claim 11 and by employing air in opposition to said spring to actuate said bleed valve to a closed condition to allow pressure build-up in said high-pressure pneumatics testing equipment.

22.     PHC contends it has not infringed claim 18 of the '428 Patent by practicing the method described in claim 16 and adding the steps of providing a bleed valve coupled to the high-pressure testing equipment described in claim 16 and providing a sensor for sensing that said

access opening is closed, said sensor couple to said bleed valve to activate said bleed valve to prevent pressure buildup in the high-pressure testing equipment if the access opening is not closed.

23.     PHC contends it has not infringed claim 19 of the '428 Patent by practicing the method described in claim 18 wherein the bleed valve described in claim 18 includes a spring maintaining said bleed valve in an opened condition to prevent pressure build-up in the high-pressure pneumatics testing equipment described in claim 18 and is air operated to actuate said bleed valve to a closed condition to allow pressure build-up in said high-pressure pneumatics testing equipment.

24.     Plaintiff contends the systems referenced by PHC in paragraphs 42 through 82, including but not limited to the Cameron Quote, Odessa MTS, Broussard MTS, Farmington MTS, Oklahoma MTS, Longview MTS, Rock Springs 1 MTS, Rock Springs 2 MTS, Corpus Christie MTS, Bakersfield MTS, Casper MTS, Grand Junction MTS, Laurel MTS, Vernal MTS, Hobbs MTS, Halliburton MTS, and Baker Super System are not prior art to those claims of the '428 Patent that Plaintiff alleges PHC has and is infringing.

25.     Plaintiff contends those references described in paragraphs 108 through 148, including but not limited to Haskel 1996, Haskel 2004, Exrpo, Proserv, Halliburton 2005, Schlumberger 2003, Total Rebuild website, Millennium 2006,Cameron Quote, Haskel 1990, Haskel Ad 55680, Haskel Model 55680, Offshore 2006, Haytec, Baker Super, PHC Cart, Baker Oklahoma, U.S. Patent No. 2,527,814, U.S. Patent No. 4,712,576, U.S. Patent No. 7,155,896, U.S. Patent No. 4,417,465, U.S. Patent No. 4,567,917, U.S. Patent No.4,273,160, and U.S. Patent No. 2,748,805 are not prior art to those claims of the '428 Patent that Plaintiff alleges PHC has and is infringing.

26.     Plaintiff contends those references referred to by PHC as Haskel 2004, Schlumberger 2003, Haskel Model 55680, Proserve, Offshore 2006, and Baker Super (as well as certain of those materials included within certain of such references) are not subject to any disclosure, sale, or other bar which would permit their consideration as prior art to the claims of the '428 Patent that Plaintiff alleges PHC has and is infringing.

27.     Plaintiff contends Total was the original owner of the '428 Patent.

28.     Plaintiff contends Terry Lavergne was the Alter Ego of Total when applying for the '428 Patent.

29.     Total became aware that PHC was infringing the '428 Patent in January 2015 while viewing a system installed by PHC at Tripoint, L.L.C., located in Broussard, Louisiana.

30.     Plaintiff contends PHC products and services identified as PHC Bunker Test Systems, also identified as "Test Bench," "Test Bunker," "High/Low Pump System," and denoted with the model no. prefix "**PHC-TB**" are accused systems that infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent.

31.     Plaintiff contends PHC's products and services identified as Remote Control, Multiple Outlet Test System, also identified as "High/Low Pump Skid" and denoted with the model no. prefix "**PHC-PS**," are accused systems that infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent.

32.     Plaintiff contends PHC's installation of accused system PHC-TB-23-W-ATV4-HSF202-RV-RC and accused system PHC-PS-23-W-ATV4-HSF202-RV-RC at a Cameron facility infringe the '428 Patent.

33.     Plaintiff contends PHC's installation of three accused systems identified as PHC-TB-30-W-ASF100-HSF302-RC at the Cameron Tanner Road facility infringe the '428 Patent.

34.     Plaintiff contends PHC's installation of accused system PHC-TB-23-W-ATV4-HSF202-4RC and accused system PHC-PS 23-W-ATV4-HSF202-RC at GE Oil & Gas Pressure Control infringe the '428 Patent.

35.     Plaintiff contends PHC's installation of accused system PHC-TB-15-W-ASFB22-HSF202-RC at the Cameron Tanner Road facility infringes the '428 Patent.

36.     Plaintiff contends PHC's installation of accused system PHC-TB-15-W-ATV4-GSF100-AGT62-152-RC at the Baker Hughes Emmott facility infringes the '428 Patent.

37.     Plaintiff contends PHC was given notice on February 25th, 2015, of the '428 Patent, but continued to make, use, rent, sell and/or offer to sell systems which infringe the '428 Patent.

38.     Plaintiff contends PHC's installation of accused system PHC-TB-15-W-ATV4-GSF100-ASF150-DL-1 and accused system PHC-TB-10-W-ATV4-GSF100-DL-1 at the Baker Hughes Oilfield Operations Oklahoma City Branch, after both the issuance of the patent and notice, infringe the '428 Patent.

39.     Plaintiff contends PHC's installation of accused system PHC-TB-20-W-ATV4-HSF202-RC at GE Oil & Gas Pressure Control, after both the issuance of the patent and notice, infringes the '428 Patent.

40.     Plaintiff contends PHC's installation of an additional infringing system at the Cameron North Dakota Facility infringes the '428 Patent.

41.     PHC contends the critical date of the '428 Patent is August 8, 2007. '428 Pat. (Dkt. 1-4).

42.     PHC contends prior to the critical date, Total sent a quote for a Millennium Test System to Cameron ("Cameron Quote"). 2005.11.03 J.Hoyer Email to C.Polk and T.Lavergne at Ex. 1, Cameron Quote (Dkt. 189-45); Polk Dep. Tr. 65:14-21.

43.     PHC contends Terry J. Lavergne was substantially involved with and had knowledge of the Cameron Quote prior to the issuance of the '428 Patent. Patent Declaration (Dkt. 189-29); Email Chain (Dkt. 189-54); Calendar Event (Dkt. 189-55); Calendar Event (Dkt. 189-56); Email Chain (Dkt. 189-59); Email Chain (Dkt. 189-60); Email Chain (Dkt. 189-61); Cameron Quote (Dkt. 189-45); Total further alleges that it and Mr. Lavergne are "alter egos." Total's Memo. in Opp. to PHC's Motion for Partial Summary Judgment at 1, 12 (Dkt. 66); Polk Dep. Tr. 27:2-28:2; T.Lavergne Affidavit, ¶3 (Dkt. 66-2).

44.     PHC contends Terry Lavergne had a duty to disclose to the United States Patent and Trademark Office ("USPTO") the Cameron Quote during prosecution of the application that issued as the '428 Patent. Patent Declaration (Dkt. 189-29).

45.     PHC contends during prosecution of the application that issued as the '428 Patent, Terry Lavergne knew he had a duty to disclose to the USPTO the Cameron Quote. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

46.     PHC contends the Cameron Quote was not disclosed to the USPTO during the prosecution of the application that issued as the '428 Patent. PHC's First Set of Requests for Admission with Exhibits A and B (Dkt. 71-3); Total's Responses to PHC's First Set of Requests for Admission (Dkt. 71-4).

47.     PHC contends the Cameron Quote was material prior art to the '428 Patent. Cameron Quote (Dkt. 189-45).

48.     PHC contends the Cameron Quote was material to at least claims 1 and 16 of the '428 Patent. Cameron Quote (Dkt. 189-45)

49.     PHC contends but for the non-disclosure of the Cameron Quote to the USPTO during the prosecution of the application that issued as the '428 Patent, the '428 Patent would not have issued. Cameron Quote (Dkt. 189-45); '428 Pat. at claim 1 and claim 16 (Dkt. 1-4).

50.     PHC contends Terry J. Lavergne failed to disclose the Cameron Quote to the USPTO with the intent to deceive the USPTO to obtain issuance of the '428 Patent. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

51.     PHC contends the '428 Patent is invalid and/or unenforceable under the doctrine of inequitable conduct because the Cameron Quote was material prior art to the '428 Patent and Terry Lavergne failed to disclose the Cameron Quote to the USPTO during prosecution of the application that issued as the '428 Patent with the intent to deceive the USPTO. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

52.     PHC contends prior to the critical date, Total offered for sale to, sold to, and installed for Cameron numerous Millennium Test Systems, including but not limited to Millennium Test Systems at Cameron facilities in Odessa, Texas ("Odessa MTS"); Broussard, Louisiana ("Broussard MTS"); Farmington, New Mexico ("Farmington MTS"); Oklahoma City, Oklahoma ("Oklahoma MTS"); Longview, Texas ("Longview MTS"); Rocks Springs, Wyoming ("Rock Springs 1 MTS" and "Rock Springs 2 MTS"); Corpus Christie, Texas ("Corpus Christie MTS"); Bakersfield, California ("Bakersfield MTS"); Casper, Wyoming ("Casper MTS"); Grand Junction, Colorado ("Grand Junction MTS"); Laurel, Mississippi ("Laurel MTS"); Vernal, Utah ("Vernal MTS"); and Hobbs, New Mexico ("Hobbs MTS") (collective "Cameron MTSs"). Odessa Invoice (Dkt. 189-31); Polk Dep. Tr. 44:5-45:13; Broussard Invoice (Dkt. 189-30); Polk Dep. Tr.

81:4-82:12; Email (Dkt. 189-54); Polk Dep. Tr. 85:9-86:24; Oklahoma Invoice (Dkt. 189-32); Polk Dep. Tr. 81:22-82:6, 111:14-21, 114:15-115:7; Polk Dep. Tr. 94:6-13; Rock Spring 1 Invoice (Dkt. 189-33); Polk Dep. Tr. 112:11-113:16. Rock Springs 2 Invoice (Dkt. 189-34); Polk Dep. Tr. 81:22-82:6, 111:14-21, 113:17-114:14; Corpus Christie Invoice (Dkt. 189-35); Polk Dep. Tr. 111:22-112:10; Bakersfield Invoice (Dkt. 189-36); Polk Dep. Tr. 81:22-82:6, 109:2-13, 111:14-21; Casper Invoice (Dkt. 189-37); Polk Dep. Tr. 111:4-21; Grand Junction Invoice (Dkt. 189-38); Polk Dep. Tr. 115:8-24l; Laurel Invoice (Dkt. 189-39); Polk Dep. Tr. 116:9-117:15; Vernal Invoice (Dkt. 189-40); Polk Dep. Tr. 81:22-82:6, 108:1-16, 109:24-110:14, 111:14-21; Hobbs Invoice (Dkt. 189-41); Polk Dep. Tr. 119:17-120:3.

53.     PHC contends Terry Lavergne was substantially involved with and had knowledge of the offers for sale, sales, installations, and uses of the Cameron MTSs prior to the issuance of the '428 Patent. Patent Declaration (Dkt. 189-29); Email Chain (Dkt. 189-54); Calendar Event (Dkt. 189-55); Calendar Event (Dkt. 189-56); Email Chain (Dkt. 189-59); Email Chain (Dkt. 189-60); Email Chain (Dkt. 189-61); Cameron Quote (Dkt. 189-45); Total further alleges that it and Mr. Lavergne are "alter egos." Total's Memo. in Opp. to PHC's Motion for Partial Summary Judgment at 1, 12 (Dkt. 66); Polk Dep. Tr. 27:2-28:2; T.Lavergne Affidavit, ¶3 (Dkt. 66-2).

54.     PHC contends Terry Lavergne had a duty to disclose to the USPTO during prosecution of the application that issued as the '428 Patent the offers for sale, sales, installations, and uses of the Cameron MTSs. Patent Declaration (Dkt. 189-29).

55.     PHC contends during prosecution of the application that issued as the '428 Patent, Terry Lavergne knew he had a duty to disclose to the USPTO the offers for sale, sales, installations, and uses of the Cameron MTSs. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

56.     PHC contends the offers for sale, sales, installations, and uses of the Cameron MTSs were not disclosed to the USPTO during the prosecution of the application that issued as the '428 Patent. PHC's First Set of Requests for Admission with Exhibits A and B (Dkt. 71-3); Total's Responses to PHC's First Set of Requests for Admission (Dkt. 71-4).

57.     PHC contends the offer for sale, sale, installation, and use of each of the Cameron MTSs were material prior art to the '428 Patent. Odessa MTS-Polk Dep. Tr. 23:17-24:19, 28:11-16, 29:20-25, 32:17-40:8, 41:20-44:8, 45:5-15, 47:8-48:15, 50:17-51:22, 55:24-56:11, 88:1-5, 99:15-23; PowerPoint (Dkt. 189-42); Drawings (Dkt. 189-43); Pictures (Dkt. 189-44); Broussard MTS-Polk Dep. Tr. 41:20-44:8, 44:5-45:13, 99:16-23; Farmington MTS-Polk Dep. Tr. 86:19-24, 88:1-5, 99:16-23; Oklahoma MTS-Polk Dep. Tr. 88:1-5, 99:16-23; Longview MTS-Polk Dep. Tr. 94:6-16, 99:16-23; Rock Springs 1 MTS-Polk Dep. Tr. 96:20-98:3, 99:16-102:13; Rock Springs 2 MTS-Polk Dep. Tr. 96:20-98:3, 99:16-102:13; Corpus Christie MTS-Polk Dep. Tr. 23:17-24:19, 28:11-16, 29:20-25, 88:1-13, 99:16-23; Bakersfield MTS-Polk Dep. Tr. at 88:1-5, 99:16-23; Casper MTS-Polk Dep. Tr. 87:7-15, 88:1-5, 99:16-23; Grand Junction MTS-Polk Dep. Tr. 99:16-23, 115:25-116:3; Laurel MTS-Polk Dep. Tr. 99:16-23, 117:10-19; Vernal MTS-Polk Dep. Tr. 99:16-23, 108:1-109:1; Hobbs MTS-Polk Dep. Tr. 23:17-24:19, 28:11-16, 29:20-25, 88:1-13, 99:16-23.

58.     PHC contends the offer for sale, sale, installation, and use of each of the Cameron MTSs were material to at least claim 1 and claim 16 of the '428 Patent. Polk Dep. Tr. 23:17-24:19, 28:11-16, 29:20-25, 32:17-40:8, 41:20-44:8, 45:5-15, 47:8-48:15, 50:17-51:22, 55:24-56:11, 88:1-5, 99:15-23; PowerPoint (Dkt. 189-42); Drawings (Dkt. 189-43); Pictures (Dkt. 189-44); Polk Dep. Tr. 41:20-44:8, 44:5-45:13, 99:16-23; Polk Dep. Tr. 86:19-24, 88:1-5, 99:16-23; Polk Dep. Tr. 88:1-5, 99:16-23; Polk Dep. Tr. 94:6-16, 99:16-23; Polk Dep. Tr. 94:6-16, 99:16-23; Polk Dep.

Tr. 96:20-98:3, 99:16-102:13; Polk Dep. Tr. 96:20-98:3, 99:16-102:13; Polk Dep. Tr. 23:17-24:19, 28:11-16, 29:20-25, 88:1-13, 99:16-23; Polk Dep. Tr. at 88:1-5, 99:16-23; Polk Dep. Tr. 87:7-15, 88:1-5, 99:16-23; Polk Dep. Tr. 99:16-23, 115:25-116:3; Polk Dep. Tr. 99:16-23, 117:10-19; Polk Dep. Tr. 99:16-23, 108:1-109:1; Polk Dep. Tr. 23:17-24:19, 28:11-16, 29:20-25, 88:1-13, 99:16-23.

59.     PHC contends but for the non-disclosure of each of the offers for sale, sales, installations, and uses of the Cameron MTSs to the USPTO during the prosecution of the application that issued as the '428 Patent, the '428 Patent would not have issued. Polk Dep. Tr. 23:17-24:19, 28:11-16, 29:20-25, 32:17-40:8, 41:20-44:8, 45:5-15, 47:8-48:15, 50:17-51:22, 55:24-56:11, 88:1-5, 99:15-23; PowerPoint (Dkt. 189-42); Drawings (Dkt. 189-43); Pictures (Dkt. 189-44); '428 Patent at claim 1 and claim 16 (Dkt. 1-4); Polk Dep. Tr. 41:20-44:8, 44:5-45:13, 99:16-23; Polk Dep. Tr. 86:19-24, 88:1-5, 99:16-23; Polk Dep. Tr. 88:1-5, 99:16-23; Polk Dep. Tr. 94:6-16, 99:16-23; Polk Dep. Tr. 96:20-98:3, 99:16-102:13; Polk Dep. Tr. 96:20-98:3, 99:16-102:13; Polk Dep. Tr. 23:17-24:19, 28:11-16, 29:20-25, 88:1-13, 99:16-23; Polk Dep. Tr. at 88:1-5, 99:16-23; Polk Dep. Tr. 87:7-15, 88:1-5, 99:16-23; Polk Dep. Tr. 99:16-23, 115:25-116:3; Polk Dep. Tr. 99:16-23, 117:10-19; Polk Dep. Tr. 99:16-23, 108:1-109:1; Polk Dep. Tr. 23:17-24:19, 28:11-16, 29:20-25, 88:1-13, 99:16-23.

60.     PHC contends Terry Lavergne failed to disclose the offers for sale, sales, installations, and uses of the Cameron MTSs to the USPTO with the intent to deceive the USPTO to obtain issuance of the '428 Patent. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

61.     PHC contends the '428 Patent is invalid and/or unenforceable under the doctrine of inequitable conduct because each of the offers for sale, sales, installations and uses of the Cameron

MTSs were material prior art to the '428 Patent and Terry Lavergne failed to disclose each of the offers for sale, sales, installations, and uses of the Cameron MTSs to the USPTO during prosecution of the application that issued as the '428 Patent with the intent to deceive the USPTO. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

62.     PHC contends the sales of the Odessa MTS, Broussard MTS, Farmington MTS, Oklahoma MTS, Longview MTS, Rocks Springs 1 MTS, Rock Springs 2 MTS, Corpus Christie MTS, Bakersfield MTS, Casper MTS, Grand Junction MTS, Laurel MTS, Vernal MTS, and Hobbs MTS generated hundreds of thousands of dollars in sales for Total. Odessa Invoice (Dkt. 189-31); Broussard Invoice (Dkt. 189-30); Oklahoma MTS (Dkt. 189-32); Rock Springs 1 Invoice (Dkt. 189-33); Rock Springs 2 Invoice (Dkt. 189-34); Corpus Christie Invoice (Dkt. 189-35); Bakersfield Invoice (Dkt. 189-36); Casper Invoice (Dkt. 189-37); Grand Junction Invoice (Dkt. 189-38); Laurel Invoice (Dkt. 189-39); Vernal Invoice (Dkt. 189-40); Hobbs Invoice (Dkt. 189-41).

63.     PHC contends prior to the critical date, Total offered for sale, sold to, and installed for Halliburton a Millennium Test System ("Halliburton MTS"). Halliburton Quote (Dkt. 189-46); Lavergne Dep. Tr. 126:22-129:12, 131:25-132:4.

64.     PHC contends Terry Lavergne was substantially involved with and had knowledge of the offer for sale, sale, installation, and use of the Halliburton MTS prior to the issuance of the '428 Patent. Lavergne Dep. Tr. 126:22-129:124, 131:25-132:4.

65.     PHC contends Terry Lavergne had a duty to disclose to the USPTO during prosecution of the application that issued as the '428 Patent the offer for sale, sale, installation and use of the Halliburton MTS. Patent Declaration (Dkt. 189-29).

17

66.     PHC contends during prosecution of the application that issued as the '428 Patent, Terry Lavergne knew he had a duty to disclose to the USPTO the offer for sale, sale, installation, and use of the Halliburton MTS. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

67.     PHC contends the offer for sale, sale, installation, and use of the Halliburton MTS were not disclosed to the USPTO during the prosecution of the application that issued as the '428 Patent. PHC's First Set of Requests for Admission with Exhibits A and B (Dkt. 71-3); Total's Responses to PHC's First Set of Requests for Admission (Dkt. 71-4).

68.     PHC contends the offer for sale, sale, installation, and use of the Halliburton MTS were material prior art to the '428 Patent. Lavergne Dep. Tr. 126:22-129:24.

69.     PHC contends the offer for sale, sale, installation, and use of the Halliburton MTS were material to at least claim 1 and claim 16 of the '428 Patent. Lavergne Dep. Tr. 126:22-129:24.

70.     PHC contends but for the non-disclosure of the offer for sale, sale, installation, and use of the Halliburton MTS to the USPTO during the prosecution of the application that issued as the '428 Patent, the '428 Patent would not have issued. Lavergne Dep. Tr. 126:22-129:24; '428 Patent at claim 1 and claim 16 (Dkt. 1-4).

71.     PHC contends Terry Lavergne failed to disclose the offer for sale, sale, installation, and use of the Halliburton MTS to the USPTO with the intent to deceive the USPTO to obtain issuance of the '428 Patent. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

72.     PHC contends the '428 Patent is invalid and/or unenforceable under the doctrine of inequitable conduct because the offer for sale, sale, installation, and use of the Halliburton MTS was material prior art to the '428 Patent and Terry Lavergne failed to disclose the offer for sale,

sale, installation, and use of the Halliburton MTS to the USPTO during prosecution of the application that issued as the '428 Patent with the intent to deceive the USPTO. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

73.     PHC contends Terry Lavergne's intent to deceive the USPTO through the nondisclosure of prior art during prosecution of the application that resulted in the '428 Patent can be inferred from his substantial involvement in the marketing, offering for sale, sales, and installations of numerous Millennium Test Systems that practiced one or more claims of the '428 Patent prior to the critical date, his admission that he understood his duty to disclose material prior art, and his explanations for his failure to do so.

74.     PHC contends prior to the critical date, Terry Lavergne observed a pressure testing system at a facility at Baker Hughes ("Baker Super System"). Lavergne Dep. Tr. at 238:18-241:12.

75.     PHC contends Terry Lavergne was substantially involved with and had knowledge of the Baker Super System prior to the issuance of the '428 Patent. Lavergne Dep. Tr. at 238:18-241:12.

76.     PHC contends Terry Lavergne had a duty to disclose to the USPTO the Baker Super System during prosecution of the application that issued as the '428 Patent. Patent Declaration (Dkt. 189-29).

77.     PHC contends during prosecution of the application that issued as the '428 Patent, Terry Lavergne knew he had a duty to disclose to the USPTO the Baker Super System. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

78.     PHC contends the Baker Super System was not disclosed to the USPTO during the prosecution of the application that issued as the '428 Patent. PHC's First Set of Requests for

Admission with Exhibits A and B (Dkt. 71-3); Total's Responses to PHC's First Set of Requests for Admission (Dkt. 71-4).

79.    PHC contends the Baker Super System was material prior art to the '428 Patent. Lavergne Dep. Tr. at 239:14-240:12.

80.    PHC contends but for the nondisclosure of the Baker Super System to the USPTO during the prosecution of the application that issued as the '428 Patent, the '428 Patent would not have issued. Lavergne Dep. Tr. at 239:14-240:12; '428 Pat. at claim 1 and claim 16 (Dkt. 1-4).

81.    PHC contends Terry Lavergne failed to disclose the Baker Super System to the USPTO with the intent to deceive the USPTO to obtain issuance of the '428 Patent. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

82.    PHC contends the '428 Patent is invalid and/or unenforceable under the doctrine of inequitable conduct because the Baker Super System was material prior art to the '428 Patent and Terry Lavergne failed to disclose the Baker Super System to the USPTO during prosecution of the application that issued as the '428 Patent with the intent to deceive the USPTO. Patent Declaration (Dkt. 189-29); Phung Dep. Tr. at 23:13-27:25, 28:22-31:11, Ex. 3 (Dkt. 189-53).

83.    PHC contends one or more claims of the '428 Patent include the element: "high-pressure pneumatics testing equipment located within said [explosion-proof safety housing]" ("Safety Housing Feature"). '428 Pat. at claim 1 and claim 11 (Dkt. 1-4).

84.    PHC contends Terry Lavergne obtained the concept of the Safety Housing Feature from observing the Baker Super System. Lavergne Dep. Tr. at 238:18-241:12.

85.    PHC contends Terry Lavergne signed a declaration under penalty of perjury that states: "I believe I am the original, first and sole inventor … of the subject matter which is claimed and for which a patent is sought on the invention entitled Improved Safety System," and submitted

the declaration to the USPTO during the prosecution of the application that resulted in the '428 Patent. Patent Declaration (Dkt. 189-29); PHC's First Set of Requests for Admission with Exhibits A and B (Dkt. 71-3); Total's Responses to PHC's First Set of Requests for Admission (Dkt. 71-4).

86.     PHC contends Terry Lavergne did not invent the Safety Housing Feature. Lavergne Dep. Tr. at 238:18-241:12.

87.     PHC contends Terry Lavergne knew when he signed the declaration that the statement that he was the original, first and sole inventor of the Safety Housing Feature was false. Lavergne Dep. Tr. at 238:18-241:12.

88.     PHC contends Terry Lavergne was not the original, first and sole inventor of the subject matter claimed in the '428 Patent because he did not invent the Safety Housing Feature. Lavergne Dep. Tr. at 238:18-241:12; '428 Pat. at claim 1 and claim 11 (Dkt. 1-4).

89.     PHC contends the '428 Patent is invalid and/or unenforceable under the doctrine of inequitable conduct because Terry Lavergne submitted a false declaration to the USPTO claiming he was the original, first and sole inventor of the subject matter claimed in the '428 Patent. Lavergne Dep. Tr. at 238:18-241:12; '428 Pat. at claim 1 and claim 11 (Dkt. 1-4).

90.     PHC contends one or more claims of the '428 Patent include the element: "a sensor for sensing that said access opening is closed, said sensor coupled to said bleed valve to activate said bleed valve to prevent pressure buildup in the high-pressure testing equipment if the access opening is not closed" ("Interlock Feature"). '428 Pat. at claim 3 and claim 11 (Dkt. 1-4).

91.     PHC contends Terry Lavergne obtained the concept of the Interlock Feature from Cory Polk and/or Cameron. Polk Dep. Tr. 24:20-28:10.

92.     PHC contends Terry Lavergne signed a declaration under penalty of perjury that states: "I believe I am the original, first and sole inventor … of the subject matter which is claimed and for which a patent is sought on the invention entitled Improved Safety System," and submitted the declaration to the USPTO during the prosecution of the application that resulted in the '428 Patent. Patent Declaration (Dkt. 189-29); PHC's First Set of Requests for Admission with Exhibits A and B (Dkt. 71-3); Total's Responses to PHC's First Set of Requests for Admission (Dkt. 71-4).

93.     PHC contends Terry Lavergne did not invent the Interlock Feature. Polk Dep. Tr. 24:20-28:10.

94.     PHC contends Terry Lavergne knew when he signed the declaration that the statement that he was the original, first and sole inventor of the Interlock Feature was false. Polk Dep. Tr. 24:20-28:10.

95.     PHC contends Terry Lavergne was not the original, first and sole inventor of the subject matter claimed in the '428 Patent because he did not invent the Interlock Feature. Polk Dep. Tr. 24:20-28:10.

96.     PHC contends the '428 Patent is invalid and/or unenforceable under the doctrine of inequitable conduct because Terry Lavergne submitted a false declaration to the USPTO claiming he was the original, first and sole inventor of the subject matter claimed in the '428 Patent. Polk Dep. Tr. 24:20-28:10; Lavergne Dep. Tr. at 238:18-241:12.

97.     PHC contends the '428 Patent is invalid and/or unenforceable under the doctrine of inequitable conduct because Terry Lavergne deliberately concealed a joint inventor of the '428 Patent from the USPTO.

98.     PHC contends Total has attempted to conceal in this litigation its pre-critical date sales, offers for sale, and installations of Millennium Tests Systems that were material to the patentability of the '428 Patent.

99.     PHC contends Terry Lavergne assigned the '428 Patent to Total no earlier than March 26, 2015.

100.     PHC contends Terry Lavergne did not assign to Total prior to June 11, 2015, the date Total filed the Complaint in this action, any rights relating to past infringement or past damages for infringement of the '428 Patent occurring prior to December 14, 2016.

101.     PHC contends Total does not have standing to sue for infringement or past damages for infringement of the '428 Patent occurring prior to the '428 Patent's assignment to Total on March 26, 2015 because such rights were not conveyed by the assignment signed on March 26, 2015 and at the time of filing of this lawsuit on June 11, 2016, Total did not have standing to sue for any alleged infringement occurring prior to March 26, 2015 and by failing to timely file a suit for infringement the statute of limitation on damages under 35 U.S.C. § 286 bars recovery on some of the systems alleged to be infringing.

102.     PHC contends Total does not have standing to sue for infringement of the systems identified as PHC-TB-23-W-ATV4-HSF202-RV-RC (a/k/a PHC-PS-23-W-ATV4-HSF202-RV-RC); PHC-TB-30-W-ASF100-HSF302-RC; PHC-TB-15-W-ATV4-GSF100-AGT62-152-RC; PHC-TB-23-W-ATV4-HSF202-4RC (a/k/a PHC-PS-23-W-ATV4-HSF202-RC); and any other systems that were offered for sale, sold, installed, or used by PHC prior to March 26, 2015.

103.     PHC contends Terry Lavergne was not Total's alter ego prior to the filing of this lawsuit.

104.     PHC contends any assignment by Terry Lavergne to Total to sue for infringement or damages for infringement of the '428 Patent for activity occurring prior to March 26, 2015 does not cure Total's lack of standing to sue for infringement or damages for infringement occurring prior to March 26, 2015.

105.     PHC contends Total has sold Millennium Test Systems that embody one or more of the claimed inventions of the '428 Patent prior to issuance of the '428 Patent.

106.     PHC contends Total advertised, publicly disclosed, offered for sale and sold Millennium Test Systems that embody one or more of the claimed inventions of the '428 Patent more than one year prior to filing Mr. Lavergne's provisional patent that resulted in issuance of the '428 Patent.

107.     PHC contends PHC did not have notice of the '428 Patent prior to approximately February 25, 2015.

108.     PHC contends Haskel 1996 (identified at Bates Numbers PHC0000234-PHC0000235) is prior art to the '428 Patent. June 1996 World Pumps Magazine to be produced at trial.

109.     PHC contends Haskel 1996, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or render obvious all claims of the '428 Patent. Haskel 1996.

110.     PHC contends Haskel 2004 (identified at Bates Numbers PHC0003335 & PHC0000378-PHC0000382) is prior art to the '428 Patent. S.Quigley Dep. Tr. at 62:25-63:8.

111.     PHC contends Haskel 2004, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent. Haskel 2004.

112.    PHC contends Expro (identified at Bates Numbers PHC0000394-PHC000397, PHC0000402-PHC0000410, PHC0003685-PHC0003705) is prior art to the '428 Patent.

113.    PHC contends Expro, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

114.    PHC contends Proserv (identified at Bates Numbers PHC0000216-PHC0000220) is prior art to the '428 Patent.

115.    PHC contends Proserv, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

116.    PHC contends Halliburton 2005 is prior art to the '428 Patent.

117.    PHC contends Halliburton 2005, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

118.    PHC contends Schlumberger 2003 (identified at Bates Number PHC0003150) is prior art to the '428 Patent. L.Broha Dep. Tr. at 44:17-45:11.

119.    PHC contends Schlumberger 2003, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

120.    PHC contends Total Rebuild website (identified at Docket Numbers 71-9, 71-7, 189-47, 189-48, 189-49, and 189-50 and Bates Numbers PHC0003336-PHC0003398, PHC0003462-PHC0003466, and PHC0002239-PHC0002242) is prior art to the '428 Patent. C.Butler Dep. Tr. at Ex. 2, Ex. 3, and Ex. 4.

121.    PHC contends Total Rebuild website, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

122.    PHC contends Millennium 2006 (identified at PHC0001931-PHC0002021) is prior art to the '428 Patent.

123.    PHC contends Millennium 2006, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

124.    PHC contends Cameron Quote is prior art to the '428 Patent.

125.    PHC contends Cameron Quote, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

126.    PHC contends Haskel 1990 (identified at Bates Numbers PHC0003131-PHC0003132) is prior art to the '428 Patent.

127.    PHC contends Haskel 1990, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

128.    PHC contends Haskel Ad 55680 (identified at Bates Numbers PHC0000428-PHC0000429) is prior art to the '428 Patent.

129.    PHC contends Haskel Ad 55680, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

130.    PHC contends Haskel Model 55680 (identified at Bates Numbers PHC0003142) is prior art to the '428 Patent.

131.    PHC contends Haskel Model 55680, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

132.    PHC contends Offshore 2006 (identified at Bates Numbers PHC0003148) is prior art to the '428 Patent.

133.    PHC contends Offshore 2006, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

134.    PHC contends Haytec (identified at Bates Numbers PHC0003674-PHC0003684) is prior art to the '428 Patent.

135.    PHC contends Haytec, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

136.    PHC contends Baker Super (identified at Bates Numbers PHC0000724-PHC0000731) is prior art to the '428 Patent.

137.    PHC contends Baker Super, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

138.    PHC contends PHC Cart (identified at Bates Numbers PHC0003706 & PHC0003716) is prior art to the '428 Patent.

139.    PHC contends PHC Cart, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

140.    PHC contends Baker Oklahoma (identified at Bates numbers PHC0000466-PHC0000685) is prior art to the '428 Patent.

141.    PHC contends Baker Oklahoma, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions, anticipates or renders obvious all claims of the '428 Patent.

142.    PHC contends U.S. Patent No. 2,527,814 to Hanssen is prior art to the '428 Patent.

143.    PHC contends U.S. Patent No. 4,712,576 to Ariizumi is prior art to the '428 Patent.

144.    PHC contends U.S. Patent No. 7,155,896 to Jansen is prior art to the '428 Patent.

145.    PHC contends U.S. Patent No. 4,417,465 to Noe is prior art to the '428 Patent.

146.    PHC contends U.S. Patent No. 4,567,917 to Millard is prior art to the '428 Patent.

147.    PHC contends U.S. Patent No. 4,273,160 to Lowles is prior art to the '428 Patent.

148.    PHC contends U.S. Patent No. 2,748,805 to Winstead is prior art to the '428 Patent.

149.    PHC contends its products or services identified as PHC Bunker Test Systems, "Test Bench," "Test Bunker," "High/Low Pump System," or denoted with the model no. prefix "PHC-TB" do not infringe, directly or indirectly, claim 3-5, 11-15, 18, and 19 of the '428 Patent.

150.    PHC contends it did not infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent because it did not make, use, offer for sale, or sell any products or services identified as PHC Bunker Test Systems, "Test Bench," "Test Bunker," "High/Low Pump System," or denoted with the model no. prefix "PHC-TB" in an infringing manner, import any such infringing system into the United States, or indirectly infringe.

151.    PHC contends its products or services identified as Remote Control, Multiple Outlet Test System, "High/Low Pump Skid," or denoted with the model no. prefix "PHC-PS" do not infringe, directly or indirectly, claims 3-5, 11-15, 18, and 19 of the '428 Patent.

152.    PHC contends it did not infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent because it did not make, use, offer for sale, or sell any products or services identified as Remote Control, Multiple Outlet Test System, "High/Low Pump Skid," or denoted with the model no. prefix "PHC-PS" in an infringing manner, import any such infringing system into the United States, or indirectly infringe.

153.    PHC contends its products or services identified as PHC-TB-23-W-ATV4-HSF202-RV-RC and PHC-PS-23-W-ATV4-HSF202-RV-RC do not infringe, directly or indirectly, the '428 Patent.

154.    PHC contends it did not infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent because it did not make, use, offer for sale, or sell any products or services identified as PHC-TB-23-W-ATV4-HSF202-RV-RC and PHC-PS-23-W-ATV4-HSF202-RV-RC in an infringing manner, import any such infringing system into the United States, or indirectly infringe.

155.    PHC contends its products or services identified as PHC-TB-30-W-ASF100-HSF302-RC do not infringe, directly or indirectly, the '428 Patent.

156.    PHC contends it did not infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent because it did not make, use, offer for sale, or sell any products or services identified as PHC-TB-30-W-ASF100-HSF302-RC in an infringing manner, import any such infringing system into the United States, or indirectly infringe.

157.   PHC contends its products or services identified as PHC-TB-23-W-ATV4-HSF202-4RC and PHC-PS-23-W-ATV4-HSF202-RC do not infringe, directly or indirectly, the '428 Patent.

158.   PHC contends it did not infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent because it did not make, use, offer for sale, or sell any products or services identified as PHC-TB-23-W-ATV4-HSF202-4RC and PHC-PS-23-W-ATV4-HSF202-RC in an infringing manner, import any such infringing system into the United States, or indirectly infringe.

159.   PHC contends its products or services identified as PHC-TB-15-W-ASFB22-HSF202-RC do not infringe, directly or indirectly, the '428 Patent.

160.   PHC contends it did not infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent because it did not make, use, offer for sale, or sell any products or services identified as PHC-TB-15-W-ASFB22-HSF202-RC in an infringing manner, import any such infringing system into the United States, or indirectly infringe.

161.   PHC contends its products or services identified as PHC-TB-15-W-ATV4-GSF100-AGT62-152-RC do not infringe, directly or indirectly, the '428 Patent.

162.   PHC contends it did not infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent because it did not make, use, offer for sale, or sell any products or services identified as PHC-TB-15-W-ATV4-GSF100-AGT62-152-RC in an infringing manner, import any such infringing system into the United States, or indirectly infringe.

163.   PHC contends its products or services identified as PHC-TB-15-W-ATV4-GSF100-ASF150-DL-1 and PHC-TB-10-W-ATV4-GSF100-DL-1 do not infringe, directly or indirectly, the '428 Patent.

164.    PHC contends it did not infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent because it did not make, use, offer for sale, or sell any products or services identified as PHC-TB-15-W-ATV4-GSF100-ASF150-DL-1 and PHC-TB-10-W-ATV4-GSF100-DL-1 in an infringing manner, import any such infringing system into the United States, or indirectly infringe.

165.    PHC contends its products or services identified as PHC-TB-20-W-ATV4-HSF202-RC do not infringe, directly or indirectly, the '428 Patent.

166.    PHC contends it did not infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent because it did not make, use, offer for sale, or sell any products or services identified as PHC-TB-20-W-ATV4-HSF202-RC in an infringing manner, import any such infringing system into the United States, or indirectly infringe.

167.    PHC contends its products or services identified as "an additional infringing system at the Cameron North Dakota Facility" do not infringe, directly or indirectly, the '428 Patent.

168.    PHC contends it did not infringe claims 3-5, 11-15, 18, and 19 of the '428 Patent because it did not make, use, offer for sale, or sell any products or services identified as "an additional infringing system at the Cameron North Dakota Facility" in an infringing manner, import any such infringing system into the United States, or indirectly infringe.

169.    PHC contends if it is found to have infringed the '428 Patent, Total has not suffered any damages from any infringement by PHC.

170.    PHC contends if it is found to have infringed the '428 Patent, Total has not shown any lost profits.

171.    PHC contends if it is found to have infringed the '428 Patent, Total has not shown its requested royalty is reasonable.

172. PHC contends if it is found to have infringed, Total is not entitled to the amount of damages it requests.

173. PHC contends if it is found to have infringed, PHC did not infringe willfully.

F.

The contested issues of law to be determined by the Court:

1. Plaintiff contends PHC was given notice of the '428 Patent on February 25th, 2015, but continued to make, use, rent, sell and offer to sell products and services which infringe one or more claims of the '428 Patent resulting in a willful, deliberate, wanton and reckless infringement by PHC as provided by 35 U.S.C. § 284.

2. PHC contends that inequitable conduct as to any claim of the '428 Patent renders all claims of the '428 Patent invalid and/or unenforceable.

3. PHC contends the '428 Patent is invalid and/or unenforceable under the doctrine of inequitable conduct because Terry Lavergne failed to disclose material prior art to the USPTO during prosecution of the application that issued as the '428 Patent with the intent to deceive the USPTO.

4. The following are material prior art in the context of PHC's inequitable conduct affirmative defense and counterclaim:

   a. PHC contends Odessa MTS was material prior art to the '428 Patent.

   b. PHC contends Broussard MTS was material prior art to the '428 Patent.

   c. PHC contends Farmington MTS was material prior art to the '428 Patent.

   d. PHC contends Oklahoma MTS was material prior art to the '428 Patent.

   e. PHC contends Longview MTS was material prior art to the '428 Patent.

   f. PHC contends Rock Springs 1 MTS was material prior art to the '428 Patent.

32

g.  PHC contends Rock Springs 2 MTS was material prior art to the '428 Patent.

h.  PHC contends Corpus Christie MTS was material prior art to the '428 Patent.

i.  PHC contends Bakersfield MTS was material prior art to the '428 Patent.

j.  PHC contends Casper MTS was material prior art to the '428 Patent.

k.  PHC contends Grand Junction MTS was material prior art to the '428 Patent.

l.  PHC contends Laurel MTS was material prior art to the '428 Patent.

m.  PHC contends Vernal MTS was material prior art to the '428 Patent.

n.  PHC contends Hobbs MTS was material prior art to the '428 Patent.

o.  PHC contends Baker Super System was material prior art to the '428 Patent.

5.     PHC contends that in determining whether prior art is material to the '428 Patent for purposes of inequitable conduct, the claims are construed under the broadest reasonable interpretation standard applied by the USPTO

6.     PHC contends that in determining whether prior art is material to the '428 Patent for purposes of inequitable conduct, the Court should apply the preponderance of the evidence standard employed by the USPTO. Total contends that PHC bears the burden of proof to demonstrate that but for Total's allegedly inequitable conduct the '428 Patent would not have issued, and must do so by clear and convincing evidence.

7.     PHC also contends the '428 Patent is invalid and/or unenforceable under the doctrine of inequitable conduct because Terry Lavergne knowingly signed and submitted to the USPTO during prosecution of the application that issued as the '428 Patent a declaration that falsely stated that he was the original, first and sole inventor of the subject matter claimed in the '428 Patent.

8.      PHC contends the '428 Patent is invalid and/or unenforceable under the doctrine of inequitable conduct because Terry Lavergne deliberately concealed a joint inventor of the '428 Patent from the USPTO.

9.      PHC contends Total's litigation misconduct during the course of this case can be used to show Total had an intent to deceive the USPTO for PHC's inequitable conduct claim.

10.     Haskel 1996 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b).

11.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being obvious over Haskel 1996, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

12.     Haskel 2004 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

13.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Haskel 2004, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

14.     Expro 2005 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

15.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Expro 2005, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not

limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

16.    Proserve 2004 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

17.    Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Proserve 2004, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

18.    Halliburton 2005 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

19.    Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Halliburton 2005, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

20.    Schlumberger 2003 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

21.    Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Schlumberger 2003, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

22.    Total Rebuild website is prior art under 35 U.S.C. §§ 102(a) and/or 102(b).

23.    Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being obvious over Total Rebuild website, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

24.    Millennium 2006 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

25.    Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Millennium 2006, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

26.    Cameron Quote is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

27.    Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Cameron Quote, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

28.    Haskel 1990 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

29.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Haskel 1990, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

30.     Haskel Ad 55680 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b).

31.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being obvious over Haskel Ad 55680, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

32.     Haskel Model 55680 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

33.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Haskel Model 55680, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

34.     Offshore 2006 is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

35.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Offshore 2006, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not

limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

36.     Haytec is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

37.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over Haytec, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

38.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being obvious over Baker Super, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

39.     PHC Cart is prior art under 35 U.S.C. §§ 102(a) and/or 102(b), including the on-sale bar of 102(b).

40.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being anticipated or obvious over PHC Cart, alone or in combination with the other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

41.     Although it is a mixed question of fact and law, PHC contends all claims of the '428 Patent are invalid as being obvious over Baker Oklahoma, alone or in combination with the

other prior art cited in all versions of PHC's invalidity contentions (including but not limited to U.S. Patent No. 2,527,814 to Hanssen; 4,712,576 to Ariizumi; 7,155,896 to Jansen; 4,417,465 to Noe; 4,567,917 to Millard; 4,273,160 to Lowles; and 2,748,805 to Winstead).

42.    PHC contends if it is found to infringe, Total is not entitled to any damages in the form of lost profits.

43.    PHC contends if it is found to infringe, it has not willfully infringed under 35 U.S.C. § 284.

44.    PHC contends Total did not have standing to assert infringement or obtain damages for any infringement of the '428 Patent occurring prior to March 25, 2016 and cannot correct its lack of standing after the filing of this lawsuit.

45.    PHC contends Total's lawsuit and conduct before the USPTO and during litigation warrants an award of attorney fees, expenses and costs against Total under 35 U.S.C. § 285.

46.    PHC contends Total's frivolous and bad faith lawsuit and conduct during the litigation, coupled with Total's lack of financial resources to pay any award against it, warrants an award of attorney fees, expenses and costs against the law firm of Durio, McGoffin, Stagg, Ackerman, PC and attorneys Chase A. Manuel, Steven G. Durio, William W. Stagg, and Tyler Rush under 28 U.S.C. § 1927.

G.

The following Admissions by PHC will be offered in evidence:

1.    "Request for Admission Fact No. 10: Please admit or deny that after March 26, 2015, PHC manufactured equipment for pressure testing other devices, tools, parts, apparatuses, equipment, and/or systems placed within a housing or bunker. Response: Subject to the General Objections, PHC admits this Request."

39

2.      "Request for Admission Fact No. 11: If Request No.10 above is admitted, please admit or deny that such housing or bunker has an access opening, a door, an aperture, or an orifice. Response: Subject to the General Objections, PHC admits this Request."

3.      "Request for Admission Fact No. 12: If Request No. 11 above is admitted, please admit or deny that such access opening, door, aperture or orifice may be opened and closed. Response: Subject to the General Objections, PHC admits this Request."

4.      "Request for Admission Fact No. 13: If Request No. 12 above is admitted, please admit or deny such equipment for pressure testing other devices, tools, parts, apparatuses, equipment, and/or systems includes a device to recognize when such access opening, door, aperture, or orifice is not closed. Response: Subject to the General Objections, PHC admits this Request."

5.      "Request for Admission Fact No. 14: If Request No. 13 above is admitted, please admit or deny that such equipment for pressure testing other devices, tools, parts, apparatuses, equipment, and/or systems includes a bleed valve to bleed off pressure in such equipment for pressure testing other devices, tools, parts, apparatuses, or equipment. Response: Subject to the General Objections, PHC admits this Request."

The following Admissions by Total will be offered in evidence:

1.      Total's "Answers to Defendant's First Requests for Admission" served on PHC November 8, 2016:

        a.      Answer to Request for Admission No. 1; and

        b.      Answer to Request for Admission No. 2.

2.      Total's "Answers to Defendant's First Interrogatories and Responses to First Requests for the Production of Documents and Things" served on PHC September 2, 2016:

     a.      Answer to Interrogatory No. 3;

     b.      Answer to Interrogatory No. 4;

     c.      Answer to Interrogatory No. 5;

     d.      Answer to Interrogatory No. 6;

     e.      Answer to Interrogatory No. 7;

     f.      Answer to Interrogatory No. 9;

     g.      Answer to Interrogatory No. 10;

     h.      Answer to Interrogatory No. 11;

     i.      Answer to Interrogatory No. 12;

     j.      Answer to Interrogatory No. 14;

     k.      Answer to Interrogatory No. 15;

     l.      Answer to Interrogatory No. 20; and

     m.      Answer to Interrogatory No. 21.

3.     Total's Supplemental Answer to Interrogatory No. 7 from Total's "Supplemental Answer to Defendant's First Interrogatory No. 7" served on PHC on December 16, 2016.

4.     Total's Supplemental Answer to Interrogatory No. 3 from Total's "Supplemental Answers to Defendant's First Interrogatories and Responses to First Requests for the Production of Documents and Things" served on PHC on December 23, 2016.

5.     Total's "Second Supplemental Answers to Defendant's First Interrogatories and Responses to First Requests for the Production of Documents and Things" served on PHC on January 24, 2017:

     a.      Answer to Interrogatory No. 3;

     b.      Answer to Interrogatory No. 6; and

       c.      Answer to Interrogatory No. 15.

6.      Total's Second "Supplemental Answer to Defendant's First Interrogatory No. 7" served on PHC on January 31, 2017.

7.      Total's "Certification for Answer/Response to Defendant's Interrogatory No. 4" dated March 29, 2017.

8.      Total's Supplemental "Answers to Defendant's First Interrogatories and Responses to First Requests for the Production of Documents and Things" served upon PHC on May 23, 2017:

       a.      Answer to Interrogatory No. 9; and

       b.      Answer to Interrogatory No. 15.

9.      Total's "Supplemental Answers to Defendant's First Interrogatories and Responses to First Requests for the Production of Documents and Things" served upon PHC on April 1, 2017.

       a.      Answer to Interrogatory No. 3.

10.      Total's "Supplemental Answers to Defendant's First Interrogatories and Responses to First Requests for the Production of Documents and Things" served upon PHC on October 27, 2016.

       a.      Answer to Interrogatory No. 4.

11.      Total's "Answers to Defendant's First Interrogatories and Responses to First Requests for the Production of Documents and Things" served upon PHC on November 30, 2018.

       a.      Answer to Interrogatory No. 3.


The following depositions will be offered into evidence:

1.      Cory Polk

2.      Thomas Phung

3.      Steven Quigley

4.      Leo Broha

5.      Blair Lucas

6.      Christopher Butler

7.      Charley Tompkins.

H.

I.   **All objections to exhibits are included on the attached objection list provided by each party.**

This is a jury trial estimated to last 5 days beginning September 16, 2019 at 9:00 a.m. The parties request trial by jury of all applicable claims, defenses, and issues that involve questions of material fact. The claims, defenses, and issues that are to be decided by the Court include: estoppel, inequitable conduct, undue delay ("prosecution laches"), prosecution history estoppel as applied to claim constructions, prosecution estoppel as applied to the doctrine of equivalence, standing, and limitation on damages.

J.

There remains a dispute on bifurcation. Total asserts that the issue of liability should be tried separately from that of quantum. PHC asserts no bifurcation is necessary given the facts of the case and the small amount of monetary damages, if any, asserted by Total.

K.

The undersigned hereby certify that this Pretrial Order has been formulated after a telephone conference in which trial counsel for all parties were included. Reasonable opportunity has been afforded to counsel for corrections or additions, prior to signing. Hereafter, this Order

shall control the course of the trial and may not be amended except by consent of the parties and

the Court, or by the order of the Court to prevent manifest injustice.

APPROVED AS TO FORM AND CONTENT:

| /s/ Tyler Rush | /s/ Samuel F. Miller |
|---|---|
| Signature of Attorney for Plaintiff | Signature of Attorney for Defendant |

| | | | | |
|---|---|---|---|---|
| Name: | Tyler Rush | Name: | Samuel F. Miller |
| Firm: | Durio, McGoffin, Stagg & Ackermann | Firm: | Miller Legal Partners, PLLC |
| Address: | 220 Heymann Blvd. | Address: | Fifth Third Center – Suite 2000 |
| | Lafayette, LA 70503 | | 424 Church St. Nashville, TN 37129 |
| Telephone: | 337-233-0300 | Telephone: | (615) 988-9011 |

**NEUNERPATE**

/s/Cliff A. LaCour
Brandon W. Letulier - #28657
Cliff A. LaCour - #30581
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
Tel: (337) 237-7000
Fax: (337) 233-9450
Email: bletulier@neunerpate.com
        clacour@neunerpate.com

*Attorneys for PHC Fluid Power, L.L.C.*