UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| TOTAL REBUILD, INC. | CASE NO. 6:15-CV-1855 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| PHC FLUID POWER, L.L.C. | MAG. JUDGE CAROL B. WHITEHURST |

RULING

This is a patent infringement case in which Plaintiff Total Rebuild ("Plaintiff") contends systems and/or methods utilized by or through Defendant PHC ("Defendant") infringe claims of United States Patent No. 8,146,428 ("the '428 Patent"). The '428 Patent is directed to systems and methods for safely testing devices and components under high-pressure.

Pending before the Court is Defendant's "Motion *in Limine* Regarding Accused Systems" [Doc. No. 290]. Plaintiff responded to the motion. [Doc. No. 319].

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

I.      PERTINENT FACTS AND PROCEDURAL HISTORY

On December 10, 2018, over three and a half years after this case began, Plaintiff served its Third Supplemental Infringement Contentions on Defendant. [Doc. No. 232-2].[1]  On February 28, 2019, Defendant moved to strike Plaintiff's Third Supplemental Infringement Contentions ("Motion to Strike"). [Dkt. No. 243].  Defendant argued in the Motion to Strike that Plaintiff was attempting to vastly expand its infringement theories, and that the Third Infringement Contentions were untimely because they were served over 2 years after the deadline, and after fact discovery had closed. *Id.* at 1.

---

[1] Citations to the parties' filings are to the filing's number in the docket [Doc. No.] and pin cites are to the page numbers assigned through ECF.

On March 28, 2019, the Court granted the Motion to Strike and found that Plaintiff was improperly trying to expand its infringement contention by taking the new position that "using pumps or pump systems *outside* an explosion-safety housing can infringe its patent." [Doc. No. 263 at 2] (emphasis in original).  The Court noted that Plaintiff "does not dispute that its latest contentions 'vastly expand' its claims or that it failed to serve the contentions until December 2018." *Id.*  Instead, Plaintiff argued that its supplementation was timely because the Court has not adopted the proposed scheduling order (Doc. No. 162-1) and local rules allow it to amend its contentions as late as 30 days after a claim-construction ruling. *Id.*

The Court found that "[b]ecause the Court has not made a claim-construction ruling, Local Patent Rule 3-6(a) does not apply." *Id.* at 3.  The Court further found that the factors courts consider when evaluating motions to strike all weighed in favor of striking the contentions. *Id.* at 4-5.  The Court then granted Defendant's Motion to Strike Infringement Contentions (Doc. 243), and further ordered that Plaintiff "is PRECLUDED from proceeding on any infringement theory not identified with sufficient specificity in its original infringement contentions, first supplemental infringement contentions, or second supplemental infringement contentions. A boilerplate allegation of infringement under a doctrine-of-equivalents theory is insufficient." *Id.* at 6.

On January 8, 2019, Defendant filed a "Motion in Limine Regarding Systems with Testing Equipment Outside of Housing" [Doc. No. 207].  Defendant moved to preclude Plaintiff from offering evidence that Defendant has directly or indirectly infringed claims 3, 4, 5, 11, 12, 13, 14, 15, 18, and/or 19 of the '428 Patent by making, using, selling, offering for sale, and/or importing a safety system in which the high-pressure testing equipment is located outside an explosion proof housing. [Doc. No. 208 at 1].  Defendant's motion was closely related to the issue presented in Defendant's Motion to Strike Infringement Contentions (Doc. 243), discussed above.  In resolving

the motion *in limine*, the Court indicated that its "analysis proceeds and is informed by the Court's

'RULING AND ORDER granting 243 Motion to Strike 242.'" [Doc. No. 282 at 3](citing Doc.

No. 263). Accordingly, the Court granted Defendant's motion to the extent that the evidence is

based on an infringement theory not identified with sufficient specificity in Plaintiff's original

infringement contentions, first supplemental infringement contentions, or second supplemental

infringement contentions. (282 at 5). The Court further stated the following:

> Finally, as stated in the Court's Claim Construction Order, the plumbing and
> hoses that couple the high-pressure pneumatics testing equipment to the high-
> pressure device for testing are not the recited "high-pressure pneumatics testing
> equipment." The "high-pressure pneumatics testing equipment" is a separately
> claimed element from the structure for "coupling said high-pressure pneumatics
> testing equipment to said high-pressure device." The plain language of the claims
> require both the "high-pressure pneumatics testing equipment" and the "means .
> . . for coupling" to be "within said housing."

[Doc. No. 282 at 5].

Turning to the parties' arguments, Defendant contends that this Court unambiguously held

that Plaintiff is precluded from pursuing a theory of infringement whereby the pumps or pump

systems are located outside the explosion proof housing because this infringement theory was not

timely disclosed. [Doc. No. 290-4 at 4]. Defendant argues that Plaintiff's theory of infringement

for six of the systems identified by Plaintiff is directly contrary to this order. *Id.*[2] Defendant further

argues that the plain language of the claims requires the high-pressure pneumatics testing

equipment to be located within the explosion proof housing. *Id.* According to Defendant, the six

systems identified by Plaintiff have the high-pressure testing pneumatics testing equipment located

outside of the safety housing, and therefore cannot infringe. *Id.*[3] Defendant argues that this means

---

[2] The six accused systems are listed on page 7 of Defendant's memorandum in support of its motion. [Doc. No. 290-4 at 7].

[3] Defendant contends that "[t]he parties do not dispute the pumps of the six systems are outside the bunker." [Doc. No. 290-4 at 8; *see also* Doc. No. 290-4 at 11-12, 14].

the six identified systems are not relevant to any claim or defense, and would be confusing, unduly prejudicial, and a needless waste of time if presented to the jury. *Id.*  Defendant contends that allowing Plaintiff to maintain theories of infringement that are not supported by the claim language would be manifestly unjust. *Id.* at 14.

Plaintiff argues that its infringement contentions do not require that the "high-pressure pneumatics testing equipment" be located entirely within the claimed explosion-proof safety housing.[4] [Doc. No. 319 at 3].  Plaintiff further argues that its infringement contentions do not limit "high-pressure pneumatics testing equipment" to "pumps or pump systems," as Defendant contends. *Id.*  According to Plaintiff, the Court "has implicitly but clearly rejected the idea that *only* 'pumps and pump systems' can compose 'high-pressure pneumatics testing equipment' – because 'plumbing and hoses' are the separately-recited 'means for coupling.'" *Id.* at 5 (citing Doc. No. 282 at 5).  Plaintiff argues that any system in which any "high-pneumatics testing equipment" is disposed within an "explosion-proof safety housing" is "fair game." *Id.*  In other words, Plaintiff contends that it makes no difference if the "pumps or pump systems" are located outside of the explosion-proof safety housing, as long as there is some "high-pneumatics testing equipment" disposed within the "explosion-proof safety housing."

## II.    ANALYSIS

As discussed above, the plain language of the claims require the "high-pressure pneumatics testing equipment" to be located within the housing.  Plaintiff previously attempted to expand its infringement theory to encompass systems that include pumps (*i.e.*, the recited "high-pressure pneumatics testing equipment") located outside the recited "explosion-proof safety housing."  The Court denied Plaintiff's attempt to "vastly expand" it infringement theories then, and consistent

---

[4] Plaintiff argues that the specification identifies the "high-pressure pneumatics testing equipment" as a "plurality of devices and types." [Doc. No. 319 at 3; *see also* Doc. No. 319 at 4 n. 6].

with the Court's previous orders, denies Plaintiff's attempt again.

Plaintiff argues that the term "high-pressure pneumatics testing equipment" was never limited to "pumps" or "pump systems." [Doc. No. 319 at 4]. The Court agrees that the term "high-pressure pneumatics testing equipment" is not limited to pumps. However, this does not mean that the term "high-pressure pneumatics testing equipment" is not required to include at least one pump. Indeed, the intrinsic evidence indicates that term "high-pressure pneumatics testing equipment" must include at least one pump. For example, dependent claim 6 recites that "the high-pressure equipment testing device includes a low-pressure pump, an intermediate-pressure pump, and a high-pressure pump to provide sequential increase in the pressure to said high-pressure devices being tested." Likewise, the specification states that by requiring "the high-pressure equipment testing equipment(s) to be entirely located within chamber 12, *a majority if not all associated pumps, plumbing, hoses, and bleed valves are to also be located entirely within chamber 12*. The high pressure pneumatics testing equipment(s) however are operable outside or remote from chamber 12 and controlled by the control panel 16." '428 Patent at 3:35–41 (emphasis added).

This indicates that the term "high-pressure pneumatics testing equipment" is not limited to "pumps" or "pump systems," but at the same time, it also indicates that the "high-pressure pneumatics testing equipment" must include at least one pump located within the housing. This is the safety feature of the disclosed invention because it allows for "the creation of a barrier that will not only stop the fragments in case the high-pressure testing equipment happens to fail but will also include safety features to help minimize the exposure of operator(s) to the high-pressure testing equipment during the testing stage." *Id.* at 1:56–60.

Contrary to Plaintiff's contention, the Court did not indicate that "systems in which *any* 'high-pneumatics testing equipment' . . . is disposed within an 'explosion-proof safety housing,' .

. . are fair game." [Doc. No. 319 at 5] (emphasis in original).  This would be contrary to the Court's previous Orders, which precluded Plaintiff from taking the position that "using pumps or pump systems *outside* an explosion-safety housing can infringe its patent." [Doc. No. 263 at 2] (emphasis in original).  To find otherwise would allow Plaintiff to do indirectly what the Court ordered it could not do directly.  Accordingly, the Court GRANTS Defendant's motion to the extent that the pump or pumps of the accused system are located outside the recited "explosion-proof safety housing."[5]  The Court DENIES Defendant's motion to the extent that the pump or pumps of the accused system are located inside the recited "explosion-proof safety housing."

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion *in Limine* [Doc. No. 290] is DENIED IN PART and GRANTED IN PART.

Monroe, Louisiana, this 29th day of August, 2019.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

---

[5] The Court assumes that this includes the six systems identified in Defendant's motion because Plaintiff did not dispute that "the pumps of the six systems are outside the bunker." [Doc. No. 290-4 at 8; *see also* Doc. No. 290-4 at 11-12, 14].