**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **TOTAL REBUILD, INC.** | ) | |
| | ) | |
| **Plaintiff/Counterclaim-Defendant,** | ) | **Civil Action No. 6:15-cv-01855** |
| | ) | |
| **v.** | ) | **JUDGE TERRY A. DOUGHTY** |
| | ) | |
| **PHC FLUID POWER, L.L.C.,** | ) | **MAGISTRATE JUDGE WHITEHURST** |
| | ) | |
| **Defendant/Counterclaim-Plaintiff.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |

---

**DEFENDANT PHC FLUID POWER, L.L.C.'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR RULE 11
SANCTIONS AND OTHER RELIEF**

---

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 3

II.  APPLICABLE FACTS ....................................................................................... 5

   A.  The Claims Require the Pumps (or at least One Pump) to be Within (Inside) the Housing. 5

   B.  The Five Systems and Sixth System Do Not Have Testing Equipment Within (Inside the Housing). ............................................................................................................... 6

      1.  PHC-TB-15-W-ATV4-GSF100-ASF150-DL-1 (Baker Hughes – Oklahoma City). ...... 6

      2.  PHC-TB-23-W-ATV4-HSF202-4RC (GE Oil). .......................................................... 7

      3.  PHC-TB-15-W-ATV4-GSF100-ASF150-AGT62-152-RC (Baker Hughes Emmott Road). ................................................................................................................... 7

      4.  PHC-TB-15-W-ASFB22-HSF202-RC (Cameron – Brown System from Brochure). ..... 8

      5.  PHC-TB-20-W-ATV4-HSF202-RC (GE Canton). ...................................................... 8

      6.  PHC-TB-10-W-ATV-GSF100-DL-1 (Baker Hughes Oklahoma). ................................ 9

III.  ARGUMENT ..................................................................................................... 9

   A.  Rule 11 Provides Sanctions for Bad Faith Litigation. ....................................... 9

   B.  No Reasonable Litigant Could Expect to Succeed on Total's Claims for Infringement by the Five Systems and Sixth System.................................................................... 12

      1.  PHC Has Not Directly Infringed the '428 Patent.................................................. 12

      2.  PHC Has Not Indirectly Infringed the '428 Patent. .............................................. 16

   C.  Total and Its Counsel's Refusal to Drop the Five Systems Is Egregious. .......................... 17

      1.  Since Receiving the January 3, 2019 Demand Letter and Draft Motion, Total and Its Counsel Asserted Infringement of a Sixth System where All Pumps Are Outside the Explosion-Proof Safety Housing. .......................................................................... 17

      2.  Attorney Ryan Goudelocke Should be Sanctioned as well as the Original Attorneys on the Case for Total. ............................................................................................... 18

   D.  This is an Exceptional Case for Attorney Fees, Expenses and Costs. ............................... 18

IV.  CONCLUSION .................................................................................................. 19

In support of its Motion for Rule 11 Sanctions and Other Relief, Defendant/Counterclaim-Plaintiff PHC Fluid Power, L.L.C ("PHC"), states:

## I.    INTRODUCTION

PHC acknowledges allegations of Rule 11 violations and vexatious litigation under 28 U.S.C. § 1927 are serious and not to be taken lightly. PHC also acknowledges the Court's October 17, 2018 Order (Dkt. 161) wherein the Court warned the parties against unfounded allegations of litigation misconduct.

Unfortunately, after years of warning Plaintiff Total Rebuild, Inc. ("Total") and its counsel that Total's claims of infringement are unfounded, Total and its counsel have asserted and continued to assert claims of infringement for systems that cannot under any interpretation and as a matter of law infringe United States Patent Number 8,146,428 ("'428 Patent"). PHC is left with no choice but to bring this motion to stop an unparalleled and needless waste of the Court's time and resources, the jurors time, and PHC's time and money.

From the first interaction following Total's filing the Complaint on June 11, 2015, PHC warned and has continued to warn Total and its counsel through this litigation that there is no good faith legal or factual basis for claiming patent infringement against PHC. On December 10, 2018, nearly three years later, Total and its counsel identified seven (7) systems that allegedly infringe. Although PHC disputes there is any basis for infringement against any system, there is not and can be no reasonable good faith basis for asserting that five (5) of the asserted systems (the "Five Systems") infringe the '428 Patent.[1] Total's Proposed Pretrial Order now identifies as infringing the Five Systems and a sixth system identified in July 2019. All claims of the '428 Patent require

---

[1] Out of an abundance of caution and respect for Court's time, PHC has not filed but reserves the right to submit a Motion for Rule 11 sanctions for any other systems.

that high-pressure pneumatics testing equipment be located "within" the explosion-proof housing where high-pressure testing takes place. It cannot be disputed that the Five Systems have the testing equipment located outside of the housing. The Five Systems cannot infringe directly or indirectly as a matter of law. Total and its counsel's conduct, therefore, violates Rule 11 of the Federal Rules of Civil Procedure.

Besides the years of warnings to Total and its counsel, PHC provided a copy of the motion and this memorandum to counsel for Total via email and hand delivery on January 3, 2019. Total and its counsel have not withdrawn the allegations of infringement based on the Five Systems. Sanctions, therefore, are appropriate, warranted, and necessary to limit the issues and deter continued wrongful conduct.

PHC requests an award to the full extent permitted by Rule 11 and 28 U.S.C. § 1927 including but not limited to dismissal with prejudice of all claims in the First Amended and Restated Complaint and entry of judgment in the full amount of PHC's attorneys' fees and expenses, jointly and severally, against Total; Terry Lavergne (who asserts he is the alter ego of Total); William W. Stagg; Chase A. Manuel; Steven G. Durio; and Durio, McGoffin, Stagg & Ackermann, PC.[2]

---

[2] Mr. Lavergne submitted a declaration in which he asserts he is the alter ego of Total. *See* Dkt. 66-2. He and his attorneys used that argument to persuade the Court not to grant PHC's Motion for Summary Judgment. Dkt. 66 ("PHC also disregards the federal holdings regarding a corporation's ownership interest in patents where the activities of the inventor are so tied to the business that the inventor, as Terry Lavergne here, is the alter ego of the business so that the business is the owner of the patent."); Dkt. No. 60 (Order Denying Motion for Partial Summary Judgment ("There is therefore a genuine dispute of material fact as to whether Lavergne is the alter ego of Plaintiff, and whether Plaintiff has standing to sue for alleged infringement before Lavergne assigned the patent to Plaintiff.")). He cannot now claim he is not the alter ego to avoid sanctions.

## II.    APPLICABLE FACTS

### A. THE CLAIMS REQUIRE THE PUMPS (OR AT LEAST ONE PUMP) TO BE WITHIN (INSIDE) THE HOUSING.

Total filed the original Complaint on June 11, 2015. (Dkt. 1). Total asserts against PHC a claim for infringement of United States Patent Number 8,146,428 ("'428 Patent"), which is the sole patent at issue in this case. Complaint (Dkt. 1). The '428 Patent is directed to systems and methods for safely testing devices and components under high-pressure. (Dkt. 1-4). PHC does not deny that it builds pressure testing systems (but does deny that any of its systems infringe the '428 Patent).

The Court has already reached determinations on the location of the pumps numerous times. Each of the independent claims of the '428 Patent (whose elements are necessarily included in the dependent claims) require the pressure testing equipment to be located within the explosion-proof safety housing where high-pressure testing takes place. Independent claim 1 contains the required element of "an explosion proof safety housing." (*Id.* at 6:29.) Claim 1 also requires that the system include "a high-pressure pneumatics testing equipment located within said housing." (*Id.* at 6:30-1.) Finally, claim 1 makes clear that the housing is the same housing where testing is conducted in the element "a closeable access opening in said housing for inserting a high-pressure device for testing within said housing." (*Id.* at 6:34-5.) Similarly, claim 11 recites "an explosion-proof safety housing" (*Id.* at 7:19), "high-pressure pneumatics testing equipment located within said housing" (*Id.* at 7:20-1), and "a closeable access opening in said housing for inserting a high-pressure device for testing within said housing" (*Id.* at 7:22-3). Claim 16 recites "providing an explosion-proof safety housing" (*Id.* at 8:14), "placing a low-pressure pump, an intermediate-pressure pump, and a high-pressure pump within said housing to provide sequential increase in the pressure to said

testing high-pressure devices" (*Id*. at 8:15-19), and "inserting a high-pressure device for testing within said housing through said access opening" (*Id*. at 8:20-1).

**B. THE FIVE SYSTEMS AND SIXTH SYSTEM DO NOT HAVE TESTING EQUIPMENT WITHIN (INSIDE THE HOUSING).**

On December 10, 2018, at 5:37 p.m. Total served its third supplemental infringement contentions ("Third Supplemental Contentions"). A true and correct copy of the pertinent pages of the Third Supplemental Contentions is attached hereto as <u>Exhibit A at Exhibit 1</u>. The Third Supplemental Contentions replaced the prior infringement contentions and identified the following seven systems accused of infringement (Five Systems at issue in this motion in bold font):

- **PHC-TB-15-W-ATV4-GSF100-ASF150-DL-1 sold to Baker Hughes Oilfield Operations, Inc.**;

- PHC-TB-23-W-ATV4-HSF202-RV-RC sold to Cameron, Inc.;

- **PHC-TB-23-W-ATV4-HSF202-4RC sold to GE Oil & Gas Pressure Control, LP**;

- **PHC-TB-15-W-ATV4-GSF100-AGT62-152-RC sold to Baker Hughes Oilfield Operations, Inc.**;

- **PHC-TB-15-W-ASFB22-HSF202-RC sold to Cameron, Inc.**;

- PHC-TB-30-W-ASF100-HSF302-RC sold to Cameron, Inc.;

- **PHC-TB-20-W-ATV4-HSF202-RC sold to GE Oil & Gas Pressure Control, LP**.

None of the Five Systems have the pressure testing equipment located inside the housing.

1. <u>PHC-TB-15-W-ATV4-GSF100-ASF150-DL-1 (Baker Hughes – Oklahoma City).</u>

Total identified this system as infringing in numbered paragraph 38 of the Proposed Pretrial Order. Dkt. 310 at 11.  Total and PHC inspected this system on December 10, 2018. Pictures from the inspection are attached hereto at Ex. 1B to the Declaration of Ron Hyziewicz (the Declaration of Ron Hyziewicz and the exhibits thereto are collectively attached to the motion at <u>Exhibit A at</u>

Exhibit 3). The pictures demonstrate that the testing equipment (namely the pumps) is outside of the housing. *Id*. After the inspection occurred, Total submitted its Third Supplemental Contentions, even though it confirmed during the inspection that the testing equipment was outside the housing. A true and correct copy of the cover email from Total's counsel showing the date and time of service of the Third Supplemental Contentions is attached to the motion as Exhibit A at Exhibit 2. Moreover, as shown in his declaration attached to the motion at Exhibit A at Exhibit 3, Ron Hyziewicz also will testify at trial that the testing equipment (namely, the pumps) are located outside of the housing.

    2.  PHC-TB-23-W-ATV4-HSF202-4RC (GE Oil).

Total identified this system as infringing in numbered paragraph 34 of the Proposed Pretrial Order. Dkt. 310 at 11.  True and correct copies of the GE Oil system (or an almost identical system) are attached at Ex. 2 to the Declaration of Ron Hyziewicz. Exhibit A at Exhibit 3, ¶¶6-10. The pictures show that the testing equipment (namely the pumps) was located outside the housing. *See,* Exhibit 3 at PHC0003730. Moreover, as shown in his declaration, Ron Hyziewicz will testify at trial that the testing equipment (namely, the pumps) was located outside of the housing. Exhibit A at Exhibit 3, ¶¶6-10.

    3.  PHC-TB-15-W-ATV4-GSF100-ASF150-AGT62-152-RC (Baker Hughes Emmott Road).

Total identified this system as infringing in numbered paragraph 36 of the Proposed Pretrial Order. Dkt. 310 at 11.  True and correct copies of pictures of some of the equipment of Baker Hughes Emmott Road are attached at Ex. 4 to the Declaration of Ron Hyziewicz. Exhibit A at Exhibit 3, ¶¶15-18. As shown in his declaration, Ron Hyziewicz will testify at trial that the testing equipment (namely, the pumps) was located outside of the housing. *Id*.

4. <u>PHC-TB-15-W-ASFB22-HSF202-RC (Cameron – Brown System from Brochure).</u>

Total identified this system as infringing in numbered paragraph 35 of the Proposed Pretrial Order. Dkt. 310 at 11. In a letter to Total's counsel dated March 24, 2017, PHC notified Total that PHC-TB-15-W-ASFB22-HSF202-RC did not include the testing equipment within the explosion-proof housing. As shown in the image below that was included in the letter, the location of the testing equipment (the location of the pumps) is outside of the testing chamber:



Automated High Pressure Testing Systems

Further, as shown in his declaration, Ron Hyziewicz will testify at trial that the testing equipment (namely, the pumps) was located outside of the housing. <u>Exhibit A at Exhibit 3</u>, ¶¶11-13.

5. <u>PHC-TB-20-W-ATV4-HSF202-RC (GE Canton).</u>

Total identified this system as infringing in numbered paragraph 39 of the Proposed Pretrial Order. Dkt. 310 at 11. True and correct copies of the GE Canton system (or an almost identical system) are attached at Ex. 2 to the Declaration of Ron Hyziewicz. <u>Exhibit A at Exhibit 3</u>, ¶¶6-10. The pictures show that the testing equipment (namely the pumps) was located outside the housing. *See, e.g.*, <u>Exhibit A at Exhibit 3</u> at PHC0003730. Moreover, as shown in his declaration, Ron

8

Hyziewicz will testify at trial that the testing equipment (namely, the pumps) was located outside of the housing. Exhibit A at Exhibit 3, ¶¶6-10.

      6.   PHC-TB-10-W-ATV-GSF100-DL-1 (Baker Hughes Oklahoma).

Total identified this system as infringing in numbered paragraph 38 of the Proposed Pretrial Order. Dkt. 310 at 11. This sixth system, PHC-TB-10-W-ATV-GSF100-DL-1 to Baker Hughes Oklahoma (hereinafter "Baker Ok Short"), also does not have pumps within the explosion-proof safety housing. *See* Memorandum in Support of Motion in Limine (Dkt. 290-4) at 11-12 and Ex. 3 (Declaration of Ron Hyziewicz (Dkt. 292)).

## III.    ARGUMENT

### A.  RULE 11 PROVIDES SANCTIONS FOR BAD FAITH LITIGATION.

The Federal Rules of Civil Procedure are given their plain and ordinary meaning. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540 (1991). Rule 11 provides in relevant part: "By presenting to the court a... written motion or other paper,... an attorney... certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*…the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law…[and] the factual contentions have evidentiary support." Fed.R.Civ.P. 11(b) (emphasis added). As articulated by the U.S. Supreme Court, "Rule 11 is aimed at curbing abuses of the judicial system." *Bus. Guides*, 498 U.S. at 542 (internal quotation marks omitted).

In the Fifth Circuit, when determining whether a party has violated Rule 11, "the standard under which an attorney is measured is an objective, not subjective standard of reasonableness under the circumstances." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 581 (5th Cir.2008). Where "no reasonable litigant could believe it would succeed" on the merits Rule 11 sanctions are warranted.

*Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) (applying 5th Circuit Rule 11 standard to appeal in patent infringement case in E.D. Tex.); *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011).

Section 1927 provides similar monetary relief and sanctions against attorneys for wrongful litigation conduct.  Under 28 U.S.C. § 1927, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

In patent infringement actions, a reasonable inquiry under Rule 11 requires that an attorney (1) perform a nonfrivolous claim construction analysis and (2) apply it as part of a reasonable infringement analysis. *Q–Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301– 02 (Fed.Cir.2004). Evidence of a nonfrivolous claim construction analysis consists of a claim interpretation that "comport[s] with the plain meaning of the claim language and do[es] not appear to be inconsistent with the patent's written description and prosecution history." *Id.* at 1301. "Reasonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous," claim construction positions are analyzed on a spectrum of reasonableness. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed.Cir.2012). At one end of that spectrum, a threshold exists where a claim construction position is so unreasonable that "no reasonable litigant could believe it would succeed." *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed.Cir.2011). Should a claim construction position meet this high threshold, the claim construction is frivolous, and Rule 11 mandates sanctions. *Id.*

Regarding a reasonable infringement analysis, an attorney need only show that "a good faith, informed comparison of the claims of a patent against the accused subject matter" took place.

*Q–Pharma*, 360 F.3d at 1302. "[T]he presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11." *Id.*

The Federal Circuit has held that "[o]nce a litigant moves based upon non-frivolous allegations for a Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007). The Federal Circuit has clearly explained the rationale for this burden-shifting:

> A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important. In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement. Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Moreover, the rationale for that rule is that "Rule 11, in the context of patent infringement actions, requires that an attorney interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement." *Antonious v. Spalding & Evenflo Cos., Inc.*, 274 F.3d 1066, 1072 (Fed. Cir. 2002).

A patent owner's (and its attorney's) Rule 11 obligations continue throughout the life of the case. Under Rule 11, "a litigant's obligations with respect to the contents [of his or her filings] are not measured solely as of the time they are filed with or submitted, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11 Advisory Committee's Note; *see also Kale v.*

*Combined Ins. Co. of Am.*, 861 F.2d 746, 758 (1st Cir. 1988); *Balerna v. Gilberti*, 281 F.R.D. 63, 66 (D. Mass. 2012). "[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." Fed. R. Civ. P. 11 advisory committee's note; *see also Soler v. Puerto Rico Telephone Co.*, 230 F. Supp. 2d 232, 238 (D.P.R. 2002).

**B.   NO REASONABLE LITIGANT COULD EXPECT TO SUCCEED ON TOTAL'S CLAIMS FOR INFRINGEMENT BY THE FIVE SYSTEMS AND SIXTH SYSTEM.**

In the Third Supplemental Contentions, Total asserts that the Five Systems infringe claims 3-5, 11-15, and 18-19 of '428 Patent. Each of the asserted claims are dependent on one of independent claims 1, 11, or 16. Thus, in order for the accused systems to infringe claims 1, 11, or 16, each accused system must include all elements of those claims.

As a matter of law, PHC cannot directly infringe claims 3-5, 11-15, and 18-19 of '428 Patent through the Five Systems. To show direct infringement, a patent owner must prove either literal infringement or infringement by the doctrine of equivalence. A product literally infringes a patent if each element of the patent claim is contained in the accused product. *Rain Bird Sprinkler Mfg. Corp. v. Toro Co*., 26 F.3d 141 (Fed. Cir. 1994); *North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1574 (Fed.Cir.1993). The test for infringement under the doctrine of equivalence determines "whether [the accused product] performs the function in substantially the same way to achieve substantially the same result." *Minks v. Polaris Indus., Inc.,* 546 F.3d 1364, 1378 (Fed. Cir. 2008). Under either standard, the Five Systems cannot directly infringe.

1. PHC Has Not Directly Infringed the '428 Patent.

There is no literal infringement because the Five Systems do not have the any testing equipment within (i.e. inside) the housing. This means there is not one or more pumps in the explosion-proof safety housing. As this Court has repeated held, at least one pump of the testing

12

system must be in the explosion-proof safety housing. *See, e.g.,* Ruling (Dkt. 327) at 4-6. This is an explicitly required element of the claims of the '428 Patent. Independent claim 1 contains the required element of "a high-pressure pneumatics testing equipment located *within said housing*." (Dkt. 1-4 at 6:30-31 (emphasis added).) Independent claim 11 requires the element of "high-pressure pneumatics testing equipment located *within said housing*." (*Id.* at 7:19-21 (emphasis added).) Independent claim 16 requires the elements of "Placing a low-pressure pump, an intermediate-pressure pump, and a high-pressure pump *within said housing* to provided to sequential increase in the pressure to said testing high-pressure devices" and "coupling said control panel to *the testing equipment inside said housing*" with "said housing" being "an explosion-proof safety housing." (*Id.* at 8:14-18, 23-24 (emphasis added).)

The requirement that the pumps of the testing equipment must be within/inside the housing permeates the patent. The abstract of the '428 Patent describes the invention to include "a high-pressure pneumatic testing equipment located within the housing." In the "Background of the Invention," the '428 Patent states the reason the testing equipment is within the housing is to minimize the exposure of operators to "flying fragments and debris hazard" caused by failure of the testing equipment (namely, explosion of the testing equipment). (Dkt. 1-4 at 1:46-60.)

The summary of the invention in the specification of the '428 Patent further describes the testing equipment within both the stationary and portable embodiments of the claimed inventions. Figure 1 of the patent (as show below) identifies the testing equipment as inside a stationary housing:



The '428 Patent states in pertinent part, "Located entirely within chamber **12** is at least one high-pressure pneumatics testing equipment…It should be noted that the number of high-pressure equipment testing equipment supported in chamber **12** may varying from as few of one to a plurality of devices and types of high-pressure equipment testing equipments [sic] may all be the same, all different or a combination thereof." (Dkt. 1-4 at 3:1-2, 7-12.) The '428 Patent further describes that the control panel is located "outside" of the housing and connected to the high-pressure testing equipment "within the bunker housing" so that the equipment may be operated from outside the housing. (*Id*. at 3:26-31.) Similarly, the '428 Patent identifies that the testing equipment is located "within" the housing of the portable embodiment of the claimed inventions as shown in Figure 5 of the '428 Patent:



(*Id.* at 5:30-39.)

Neither Total nor PHC have identified or raised an issue with the constructed of the term "within said housing" or "inside said housing." The terms must be given their plain and ordinary meaning. "Within" and "inside" are common synonyms for the position of one thing situation in something else.

That Total has not raised an issue with the meaning of "within" or "inside" is because Mr. Lavergne, the purported inventor, intended for the invention to claim only systems or methods in which the testing equipment is within the housing. As shown in PHC's certified response to Interrogatory No. 4 of the First Set of Interrogatories, the inventive concept behind the '428 Patent was "placing the testing systems inside a bunker along with the tools to be tested, wherein the testing systems may be operated from the outside of the bunker." True and correct copies of Total's Responses to the First Set of Interrogatories with certification are attached to the motion as collective <u>Exhibit A at Exhibit 4</u>. Mr. Lavergne also sent emails to third parties in which he stated that any system where the testing equipment is within the "bunker" (i.e. the housing) infringes "his

patent. A true and correct copy of the emails are attached to the motion as collective <u>Exhibit A at Exhibit 5</u>. Mr. Lavergne specifically stated, "Any system where the pumps are in the bunker will infringe on my patent." *Id.*

As shown in the Declaration of Ron Hyziewicz and the pictures attached thereto (<u>Exhibit A at Exhibit 3</u>), the testing equipment-namely, the pumps that pressurize the device being tested-are located outside of the housing for the Five Systems. The testing equipment, therefore, is not within or inside the housing. There can be no literal infringement.

There also can be no direct infringement by the doctrine of equivalents. The very structure claimed by Total is the location of the testing equipment within the housing. The location prevents harm to the system operator(s) due to the explosion of the testing equipment or device being tested. Placing the pumps outside of the housing would not solve the problem of protecting the operator(s). Instead, the pumps outside the housing is the very solution that Mr. Lavergne purported to resolve with the claimed inventions.

2.   <u>PHC Has Not Indirectly Infringed the '428 Patent.</u>

The Five Systems also cannot be found to indirectly infringe claims 3-5, 11-15, and 18-19 of '428 Patent. Indirect infringement under 35 U.S.C. §271(b) (induced infringement) and 35 U.S.C. §271(c) (contributory infringement) requires there to be direct infringement by a third party.

Under §271(b), liability can only be found when a defendant "actively" induces infringement. "[W]here there has been no direct infringement, there can be no inducement of infringement under § 271(b)." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 922 (2014).

Similarly, under §271(c), liability can only be found when a defendant offers to sells or sells within the United States or imports a component or material for use for direct infringement. "It is settled that if there is no direct infringement of a patent there can be no contributory

16

infringement." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961); *cf. Limelight Networks*, 572 U.S. at 922 (citing *Aro Mfg.* for proposition that "Liability for inducement must be predicated on direct infringement.").

Here, the Five Systems do not have the testing equipment – specifically no pumps - within or inside the housing. The Five Systems do not constitute infringement by any third party. There can be no indirect infringement by PHC.

## C.   TOTAL AND ITS COUNSEL'S REFUSAL TO DROP THE FIVE SYSTEMS IS EGREGIOUS.

The Five Systems cannot infringe the '428 Patent as a matter of law. Total has ignored evidence directly to the contrary in pursuit of its claims, much of which was available prior to Total's service of the Third Supplemental Contentions on December 10, 2018. Yet, Total persists in its assertion of infringement through the Five Systems anyway. This fact should weigh heavily on the decision to sanction Total, Mr. Lavergne, and their attorneys and law firm. The conduct is particularly egregious here where such unreasonable allegations have led to addition trial preparation to address each of the Five Systems when that preparation was unnecessary and could have been avoided by Total and its counsel.

1.   Since Receiving the January 3, 2019 Demand Letter and Draft Motion, Total and Its Counsel Asserted Infringement of a Sixth System where All Pumps Are Outside the Explosion-Proof Safety Housing.

Despite being on notice that it infringement contentions for systems with pumps outside the explosion-proof safety housing could not as a matter for over seven months, on July 19, 2019, Total served a Proposed Pretrial Order in which it identified a sixth system that allegedly infringes '428 Patent. *See* Memorandum in Support of Motion in Limine (Dkt. 290-4) at 7 and Ex. 2. This sixth system, PHC-TB-10-W-ATV-GSF100-DL-1 to Baker Hughes Oklahoma (hereinafter "Baker Ok Short") and identified as infringing by Total in numbered paragraph 38 of the Proposed Pretrial Order (Dkt. 310 at 11), also does not have pumps within the explosion-proof safety housing.

*See* Memorandum in Support of Motion in Limine (Dkt. 290-4) at 11-12 and Ex. 3 (Declaration of Ron Hyziewicz (Dkt. 292)). Accordingly, despite this sixth system not being included in the draft Motion sent on January 3, 2019, the addition of the sixth non-infringing systems shows a pattern of extreme and intentional indifference to merits of the claims despite being advised of the error of Total's and its counsel's ways seven months earlier. Given the Court's ruling in the Ruling and Order (Dkt. 282 at 5) on June 10, 2019, there is no possible good faith basis for Total to add this sixth non-infringing system to the Proposed Pretrial Order on July 19, 2019. This should factor heavily in the determination of sanctions at this time. It is clear that no amount of efforts will keep Total and its counsel from asserting completely bogus and bad faith claims for infringement.

2.  Attorney Ryan Goudelocke Should be Sanctioned as well as the Original Attorneys on the Case for Total.

Attorney Ryan Goudelocke, a partner at Durio, McGoffin, Stagg & Ackermann, PC, entered an appearance in this case long after PHC delivered the Demand Letter and Draft Motion on January 3, 2019.  Unlike Messrs. Durio, Stagg, and Manuel who filed this case and then continued to push forward with bad faith claims of infringement, Mr. Goudelocke knew of the problems with the case, entered an appearance, and pushed forward the bonus and bad faith claims of infringement anyway. He did not have to take on this case or even enter any appearance in this case. Instead, he knowingly submitted himself to the risk of sanctions.

D.  **THIS IS AN EXCEPTIONAL CASE FOR ATTORNEY FEES, EXPENSES AND COSTS.**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "In 1952, when congress used the word ['exceptional'] in § 285 (and today, for that matter), 'exceptional' meant 'uncommon,' 'rare,' or 'no ordinary.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014) (citing Webster's New Int'l Dictionary 889 (2d ed. 1934)). "[A]n exceptional case is simply one that stands out from others with respect

18

to the substantive strength of a party's litigating position (considering both the government law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

For the reasons set forth above, this is an exceptional case for which PHC is entitled to an award under 35 U.S.C. § 285 given the meritless claims as well as inequitable conduct, withholding of evidence, discovery conduct, and other factors to be proven if the case is not dismissed.

## IV.    CONCLUSION

PHC is entitled to an award of the full extent of Rule 11 sanctions, jointly and severally, against Total and its attorneys and their firm(s) as is set forth in the Motion.  PHC also is entitled to monetary sanctions, jointly and severally, against Total's attorneys and their firm(s) under 28 U.S.C. § 1927. Total's attorneys and firm's persistence through multiple infringement contention supplements and the pretrial order, knowing that there can be no infringement through the Five Systems is exactly the type of exceptional circumstances or "unreasonable and vexatious" conduct necessary to warrant the imposition of sanctions.

Dated: August 30, 2019

Respectfully submitted,

MILLER LEGAL PARTNERS PLLC

/s/ Samuel F. Miller
Samuel F. Miller, TN Bar No. 22936
Nicholas R. Valenti, TN Bar No. 35420
Hayley Hanna Baker, MO Bar No. 70101
Fifth Third Center – Suite 2000
424 Church Street
Nashville, Tennessee 37129
Tel/Fax: (615) 988-9011

Email: smiller@millerlegalpartners.com
nvalenti@millerlegalpartners.com
hbaker@millerlegapartners.com

NEUNERPATE

/s/ Cliff A. Lacour
Brandon W. Letulier - #28657
Cliff A. LaCour - #30581
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
Tel: (337) 237-7000
Fax: (337) 233-9450
Email: bletulier@neunerpate.com

*Attorneys for PHC Fluid Power, L.L.C.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 30th day of August 2019, a copy of the foregoing was

served on counsel of record listed below via email and by hand:

William W. Stagg
Chase A. Manuel
Steven G. Durio
Tyler Rush
Ryan Goudelocke
Durio, McGoffin, Stagg & Ackermann, PC
220 Heymann Boulevard (70503)
Post Office Box 51308 Lafayette, LA
70505-1308
Bill@dmsfirm.com
Chase@dmsfirm.com
Buzz@dmsfirm.com

Brandon W. Letulier
Cliff A. LaCour
NeunerPate
One Petroleum Center, Suite 200
1001 W. Pinhook Road
Lafayette, LA 70503
bletulier@neunerpate.com
clacour@neunerpate.com

s/ Samuel F. Miller
Samuel F. Miller