**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **TOTAL REBUILD, INC.** | ) | |
| | ) | |
| **Plaintiff/Counterclaim-Defendant,** | ) | **Case No. 6:15-cv-01855-TAD-CBW** |
| | ) | |
| **v.** | ) | **JUDGE TERRY A. DOUGHTY** |
| | ) | |
| **PHC FLUID POWER, L.L.C.,** | ) | **MAGISTRATE JUDGE WHITEHURST** |
| | ) | |
| **Defendant/Counterclaim-Plaintiff.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |

---

## DEFENDANT PHC FLUID POWER, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR RULE 11 SANCTIONS AND OTHER RELIEF

---

### INTRODUCTION

Plaintiff Total Rebuild, Inc. ("Total") claims its assertion of infringement of the six systems at issue was "reasonably supportable by the plain language of [the '428 Patent]." Opposition at 2 (Dkt. 368). This is simply wrong. First, Total has never identified any component in the bunkers of the six accused systems that could reasonably be the claimed "high-pressure pneumatics testing equipment." All the components Total identified as pressure testing equipment (such as hoses in the pictures) are included in other elements of the claims, such as the hoses being the "means within said housing for coupling" element. All the components of the six systems that could be "high-pressure pneumatics testing equipment" are outside the bunker with and including the pumps. Second, the '428 Patent is clear that the claimed "high-pressure pneumatics testing equipment" must include at least one pump, and the six systems have no pump in the bunker. Total's assertions of infringement by these six systems was unreasonable. To make matters worse, this Court has expressly warned Total that it shall not introduce systems with no pumps in the

bunker. Yet, after the Court's order warning that Total is "out of strikes," Total filed its exhibit list containing exhibits for systems with no pumps in the bunker and reports of its experts expressly identifying systems excluded by the Court's orders. Even after the Court's Orders and the pending Motion, Total's frivolous conduct has continued and will do so unless the Court finally ends it.

I.      **TOTAL HAS NEVER IDENTIFIED COMPONENTS IN THE BUNKER THAT CAN BE HIGH-PRESSURE PNEUMATMICS TESTING EQUIPMENT**

In the over four years this case has been pending, Total inspected only two systems, Baker Oklahoma Short and Baker Oklahoma Long. The seventy-three images from the inspections have been filed in the record at Exhibit 1.[1] The following image from the inspection shows the contents of the bunker of Baker Oklahoma Short:



The following image from the inspection of Baker Oklahoma Long shows the contents of the bunker:

---

[1] There is also a video from the inspection that PHC is happy to file with the Court if requested to do so.



[2] However, the hose is the claimed element of a "means within" said housing for coupling said high-pressure pneumatics testing equipment to said high-pressure device for testing" and, thus, cannot be the claimed "high-pressure pneumatics testing equipment."[3] Total's expert even identified these same components for the "means within"

---

[2] The Supplemental Expert Report of Blain LaFleur was filed under seal and does not contain page numbers. Thus, PHC simply refers to the page number of the PDF document.

[3] The Court subsequently confirmed this understanding. Claim Construction Order at 30 (Dkt. 278) ("the Court's construction indicates that plumbing and hoses that couple the high-pressure

element. *Id.* at 21-24. ████████████████████████████████████████████

████████████████████████████████████. *See* Inspection Photos (Exhibit 1).

Simple hoses are not pumps. Total's assertion that these systems infringed was and has always

been wholly without support.

Total's frivolous assertion is also illogical because it negates the primary "invention" of

the '428 Patent. The '428 Patent is directed to a system wherein the high-pressure pneumatics

testing equipment is placed in the bunker where testing occurs. '428 Pat., col. 1, ll. 64-67 (Dkt. 1-

4). Any bunker used in a high-pressure testing system must already include hose or tubing that

brings high-pressure from the pumps, even if the pumps are outside the bunker, to the device to be

tested. The claimed placement of the high-pressure pneumatics testing equipment in the bunker

has no meaning if it refers only to components that necessarily must already be in the bunker. And

this is exactly why Total never proposed this construction during discovery. Bunker systems were

well known prior to the '428 Patent, and any one of them would have invalidated numerous claims

of the '428 Patent if only the hose to the device to be tested needed to be in the bunker. Total spent

four years and hundreds of thousands of dollars of PHC's money in this litigation with changing

constructions to obfuscate the simple fact: the'428 Patent never claimed systems with no pump in

the bunker.[4] Mr. Lavergne, the alleged inventor, agrees with PHC as he warned third parties in an

email that "[a]ny system where the pumps are in the bunker will infringe my patent." Exhibit 2.

Total fairs no better with regard to the other systems because it has not identified any

components other than the pumps (which are outside the bunkers) that could even be the high-

---

pneumatics testing equipment to the high-pressure device for testing are not the recited "high-pressure pneumatics testing equipment."). However, the Court's ruling is not necessary to show that Total's infringement position was unreasonable.

[4] And even this was only an attempt by Total to have PHC settle the case before being heard on its claim for inequitable conduct.

pressure pneumatics testing equipment. Regarding GE Oil, Total's expert alleges the "high-pressure pneumatics testing equipment" is "all pressure piping from the pump/valve racks into each bunker." Supplemental Expert Report of Blain LaFleur at 10-11 (Dkt. 247-3). For Baker Hughes Emmott Road, Total's expert asserts:

> Document Baker Hughes Emmott PHC-TB-15-W-ATV4-GSF100-ASF150-AGT62-152-RC's description of a 4 Bunker Gas/Water Test System, specifically including pumps, valves, and lines for the purpose of a testing system, I can conclude that that the high-pressure equipment is located within the housing to facilitate the testing process.

*Id*. at 10-11. Thus, Total never had a reasonable basis to assert infringement of these two systems.

With regard to Cameron Brown, Total's expert identifies the following for the "high-pressure pneumatics testing equipment":

> Document Cameron Tanner PHC-TB-15-W-ASFB22-HSF202-RC specifically states:
> - Below is the update quote for the 2 additional full bunker test units with accumulator and pump built in. This quote also includes the larger cabinet with desk area, the larger and brighter
> - Pneumatic and Hydraulic Co offers two different systems. The first System offers 3 large bunkers that has a Pump/Valve Rack each (all high pressure) inside the bunker and the electrical system control console outside the bunker.

*Id*. at 10-11. However, the 3 large bunkers refer to the Cameron Black system. On March 24, 2017, over 2 years ago, PHC sent Total a letter demonstrating that this description could not refer to Cameron Brown and that Cameron Brown could not infringe. 2017.03.24 Letter at p. 6 (Dkt. 115-2) Total never had a reasonable basis for asserting infringement by Cameron Brown and knew it did not infringe after receiving the March 24, 2017 letter.

Finally, with regard to GE Canton, Total's expert identifies the "high-pressure pneumatics testing equipment" as follows:

> The safety system described by PHC specifically outlines that the remote control vent valve manifold will be located inside the bunker. Document GE Canton Ohio PHC-TB-20-W-ATV4-HSF202-RC specifically describes the vent valve manifold as an integral piece of the high-pressure pneumatic testing equipment also known as "Item #3" on page fifteen (15). In the same document PHC specifically details the scope of items that will be provided and further states "….and a remote control Vent Valve Manifold for inside the bunker."

Supplemental Expert Report of Blain LaFleur at 10-12 (Dkt. 247-3). However, the vent valve is simply the bleed valve, which like the "means within said housing for coupling," is a separately claimed component. Total cites the same disclosure for the "bleed valve" element. *Id*. at 14-16. Thus, the vent valve cannot be the "high pressure pneumatics testing equipment." Total did not have a reasonable basis for asserting infringement by GE Canton. Total's January 11, 2019 letter, cited in the Opposition, confirms that Total did not have a reasonable basis to assert infringement of any of the six systems. In that letter, Total asserts "high-pressure testing equipment is the pumps, pump skid assemblies, as well as the hoses and lines extending from them." 2019.01.11 Letter at 2 (Dkt. 368-1). That is not a reasonable position because the hoses and lines are claimed elsewhere.

## II. THE CLAIMED HIGH-PRESSURE PNEUMATICS TESTING EQUIPMENT REQUIRES AT LEAST ONE PUMP

Even if Total had identified components in the bunker that were not the "means within said housing . . ." or "bleed valve" elements (which it did not), the '428 Patent requires the claimed "high-pressure pneumatics testing equipment" to include at least one pump. Mr. Lavergne, the alleged inventor of the '428 Patent, understood precisely that the "high pressure pneumatics testing equipment" must include at least one pump. Exhibit 2. Total and its counsel's frivolous arguments to the contrary do not change that result.

Total first argues that under the doctrine of claim differentiation the high-pressure pneumatics testing equipment of claim 1 must refer to components that do not need to include a pump because it must be broader than dependent claim 6, which refers to systems with pumps. However, this cannot be correct because claim 6 is directed to systems where the "high-pressure pneumatics testing equipment" "includes a low-pressure pump, an intermediate-pressure pump, and a high-pressure pump to provide sequential increase in the pressure." Claim 6 is narrower than claim 1 because claim 1 simply refers to components that include at least 1 pump.

6

Total next argues that "[t]he specification itself has room for location of at least *some* high-pressure equipment *outside* the chamber. That equipment includes, but is not limited to, pumps." Opposition at 10. However, this argument is irrelevant because, that the "high-pressure pneumatics testing equipment" must include at least one pump, does not mean that no "high-pressure pneumatics testing equipment" can be outside the bunker. It is undisputed that none of the six systems at issue have a single pump in their bunkers. Total's assertion that they infringed was unsupportable from the start and is plainly unreasonable.

Total also cites to PHC's delay in filing its Motion for Sanctions as evidence that Total's infringement position was not unreasonable. Opposition at 3-4. As Total notes, PHC did not file a motion for summary judgment or file the Motion for Sanctions for several months after providing Total with the proposed Motion for Sanctions on January 3, 2019. PHC did not do so for two reasons. First, Judge Jackson in chambers told counsel for the parties not to file dispositive motions. Like many things in this case, it is unclear why Total ignores that direction by Judge Jackson and filed such a motion. PHC followed Judge Jackson's directive. Second, even if it ignored Judge Jackson's direct instructions as Total did, PHC could not file either a dispositive motion or a motion for sanctions because Total's infringement contentions were unclear and ever changing. Throughout the case, Total changed its infringement theories and even the systems it was accusing of infringement. For example, Total's Second Supplemental Infringement Contentions include the following two entries (among others) for the claim element "an explosion-proof safety housing":

> PHC's Custom Hydrostatic Pressure Test Systems description stating "[t]hese systems can be provided as a **completely enclosed cabinet**".
> [http://pneumaticandhydraulic.com/hydrostatic-testing-equipment/custom-hydrostatic-pressure-test-systems/] (**emphasis added**).

> PHC's Bunker Test Systems, also identified as "Test Bench", "Test Bunker", "High/Low Pump System" denoted with the model no. prefix "PHC-TB…", disclosing the system as having a "**Bunker**". See Exhibit E at Total Rebuild 580, 586, 602-603, 606, 608-609, 611-612, 615-619, 621, 623-624, 626-627, 630-635, 638-639, 641-645, 647-648, 651-654, 658, 661-666 (**emphasis added**).

Dkt. 189-10 at 8. Was Total going to claim the enclosed cabinet outside of the bunker was the explosion-proof safety housing (which itself would be unreasonable)? By simply citing to everything and anything in its infringement contentions, Total prevented PHC from moving earlier.[5]

Total's assertions that it could maintain theories of infringement that were not timely disclosed (and, in fact, disclosed years late and only after discovery closed), even after several Court rulings to the contrary, is just as egregious as its assertion that the six systems infringed. However, as Total correctly notes, "the instant Motion has nothing to do with timeliness of Plaintiff's contentions."[6] Opposition at 3, n 3. Total's inclusion in the Opposition of the history of the Court's rulings at Section A is, therefore, perplexing.[7] The issue here is whether Total's assertion of infringement of the six system through four years of litigation and the pretrial order was reasonable. Total never had a reasonable basis for asserting that those systems infringe, and particularly lacked a reasonable basis for continuing this litigation as to those systems after the inspection. The Court's rulings as to timeliness are irrelevant.

PHC does note that on August 29, 2019 this Court unambiguously ruled the term "high-pressure pneumatics testing equipment … must include at least one pump located within the

---

[5] This is precisely why PHC's pending Motion in Limine Regarding Accused Systems Not Identified in Infringement Contentions should be granted. (Dkt. 296).

[6] PHC reserves the right to raise Total untimeliness and Total refusal to acknowledge the Court's rulings that its disclosures were untimely in subsequent motions.

[7] There are numerous incorrect and misleading statements in that section. For example, Total asserts "with due respect for Judge Jackson, Total had not in fact limited its infringement contentions to systems whose high-pressure components are all 'located inside a safety housing.'" Opposition at 6. That is not what Judge Jackson held.

housing." Ruling at 5 (Dkt. 237). And, <u>completely ignoring that Ruling</u>, Total subsequently confirmed it would assert infringement by the six systems at issue at trial without any basis for doing so. Total's Opposition to PHC's Motion in Limine Regarding Accused Systems Not Identified in Infringement Contentions at 1, n. 1 (Dkt. 331). Only after PHC filed the instant Motion for Sanctions (and because of it) did Total withdraw its assertion of infringement by these six systems. Total's confirmation was itself sanctionable. Total also asserts "the parties' agreed jury charges and verdict form (Rec. Docs. 366 and 361, respectively) explicitly include only systems with pumps inside their housings." Opposition at 5, n. 5. However, Total fails to inform the Court that <u>after</u> the parties agreed on those jury charges and verdict forms, Total filed an Exhibit List that includes numerous exhibits directed to the six systems at issue. Exhibit List (Dkt. 364) at Id. Nos. 14-22, 24-35, 37-51. If Total intended to truly comply with the Court's orders, it would have removed those exhibits from its Exhibit List because the Court has precluded those exhibits.

## III.   MR. MANUEL IS COUNSEL OF RECORD FOR TOTAL

Finally, there is the issue of Mr. Manuel. Mr. Manuel is an enrolled and noticed attorney in this case who never filed a motion to withdraw and, by his own admission in his Declaration, has continued to provide support to Total even after moving to a new firm seven months ago. Manuel Decl. (Dkt. No. 369-4). By his own admission in paragraph 7 of his Declaration, he <u>knew and intended to remain counsel of record to help Total in its case against PHC.</u> (Dkt. No. 369-4) ("…I have only remained an attorney of record in this case to the extent that I may be available to Total Rebuild, Inc.'s current counsel for purposes of answering any questions that may have with regard to" the case.) Further, he has intentionally not withdrawn and therefore under Local Rule 83.2.11 he remains held to represent Total. If he has not moved the Court to withdraw, this Court has not granted a motion to withdraw, and Mr. Manuel continues to provide assistance to Total in

the preparation of this case, he necessarily is not "*former* trial counsel." Mr. Manuel was aware of the draft Motion for Sanctions. To the extent he failed to update the Court with his correct contact information or motion to withdraw, that is on him.[8]  Because he continues at his new firm to provide support to Total and he is a partner, there is good cause to hold his firm accountable. However, to the extent his firm (namely his other partners at the new firm) was truly not aware of the draft motion and pending Motion, PHC is willing to withdraw its request for sanctions against his new firm. PHC's counsel has reached out to Mr. Manuel's firm regarding explaining PHC's position and to offer to withdraw against the new firm. PHC, however, is not willing to withdraw against Mr. Manuel because he is one of the primary actors of bad actions during this case and if excused, Total's remaining counsel might very well point to Mr. Manuel's "empty chair" as a defense to any improper conduct and litigation. PHC has not yet received a response from Mr. Manuel or his firm.

## **CONCLUSION**

PHC respectfully requests that the Motion for Sanctions be granted.

---

[8]  See Local Rule 11.1 which states "[e]ach attorney and pro se litigant has a continuing obligation to promptly notify the court in writing of any address change."

Respectfully submitted,

**MILLER LEGAL PARTNERS PLLC**

/s/ Samuel F. Miller
Samuel F. Miller, TN Bar No. 22936
Nicholas R. Valenti, TN Bar No. 35420
Sara R Ellis, TN Bar No. 30760
Hayley H. Baker, TN Bar No. 37439
Fifth Third Center–Suite 2000
424 Church Street
Nashville, Tennessee 37129
Tel/Fax: (615) 988-9011
Email: smiller@millerlegalpartners.com
nvalenti@millerlegalpartners.com
sellis@millerlegalpartners.com
hbaker@millerlegalpartners.com

**NEUNERPATE**

/s/ Cliff A. LaCour
Brandon W. Letulier - #28657
Cliff A. LaCour - #30581
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
Tel: (337) 237-7000
Fax: (337) 233-9450
Email: bletulier@neunerpate.com
        clacour@neunerpate.com

*Attorneys for PHC Fluid Power, L.L.C.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 9th day of September 2019, a copy of the foregoing was served on counsel of record listed below via the Court's ECF system:

William W. Stagg
Chase A. Manuel
Steven G. Durio
Tyler Rush
Ryan Goudelocke
Durio, McGoffin, Stagg & Ackermann, PC
220 Heymann Boulevard (70503)
Post Office Box 51308 Lafayette, LA 70505-1308
Bill@dmsfirm.com
Chase@dmsfirm.com
Buzz@dmsfirm.com
tyler@dmsfirm.com
ryan@dmsfirm.com

Brandon W. Letulier
Cliff A. LaCour
NeunerPate
One Petroleum Center, Suite 200
1001 W. Pinhook Road
Lafayette, LA 70503
bletulier@neunerpate.com
clacour@neunerpate.com

/s/ Samuel F. Miller_____
Samuel F. Miller