# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **TOTAL REBUILD, INC.** | **CASE NO. 6:15-CV-1855** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **PHC FLUID POWER, L.L.C.** | **MAG. JUDGE CAROL B. WHITEHURST** |

## PRELIMINARY FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a patent infringement case in which Plaintiff Total Rebuild ("Plaintiff") contends systems and/or methods utilized by or through Defendant PHC ("Defendant") infringe claims of United States Patent No. 8,146,428 ("the '428 Patent"). The '428 Patent is directed to systems and methods for safely testing devices and components under high-pressure.

A bench trial on inequitable conduct was conducted from September 12 to September 13, 2019. The Court holds that the '428 Patent is unenforceable due to inequitable conduct, because the inventor, Mr. Terry Lavergne, withheld material information of prior sales from the United States Patent and Trademark Office ("PTO") with the specific intent to deceive the PTO into granting the patent. The following constitutes the Court's preliminary findings of fact and conclusions of law.[1]

## I. FINDINGS OF FACT

1. Mr. Terry J. Lavergne is the sole inventor named in the '428 Patent. Mr. Lavergne filed the earliest provisional application, No. 61/188,435, on August 8, 2008. The '428 Patent issued April 3, 2012. The "critical date" for analyzing the on-sale and public-use bars of 35 U.S.C.

---

[1] The Court will provide a detailed findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a) at a later date.

§ 102(b) is August 8, 2007, one year prior to the earliest application.[2]

2. The "ABSTRACT" of the '428 Patent describes the invention as follows:

> A safety system for testing high-pressure devices comprising an explosion-proof safety housing; a high-pressure pneumatics testing equipment located within the housing; a closeable access opening in the housing for inserting a high-pressure device for testing within the housing; a device located within the housing for coupling the high-pressure pneumatics testing equipment to the high-pressure device for testing; a control panel located outside the housing; and a device linking the high-pressure pneumatics testing equipment to the control panel for operating the high-pressure pneumatics testing equipment within the safety housing from the control panel.

'428 Patent at Abstract.

3. There is clear and convincing evidence of substantial on-sale and public uses of the invention described in the '428 Patent dating as early as June 23, 2006.

4. Mr. Lavergne admitted at trial that prior to the critical date, he and Plaintiff sold, installed, and demonstrated safety systems for testing high-pressure devices containing all of the elements of Claims 1 and 16 of the '428 Patent.

5. Defendant displayed on its website since at least 2002 the safety system for testing high-pressure devices containing all of the elements of Claims 1 and 16 of the '428 Patent.

6. Invoices produced at trial, Mr. Lavergne's testimony, and the testimony of other witnesses establishes that Mr. Lavergne and Plaintiff sold, installed, and demonstrated safety systems for testing high-pressure devices in multiple locations prior to August 8, 2007.

7. The safety systems for testing high-pressure devices was accomplished utilizing the system and method described in the '428 Patent.

8. The invoices prove by clear and convincing evidence that Plaintiff was paid for the

---

[2] The American Invents Act ("AIA"), Pub. L. No. 112-29, took effect on September 16, 2012. Because the application that issued as the '428 Patent was filed before that date, the pre-AIA version §§ 102 and 103 apply. *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 n.1 (Fed. Cir. 2014).

installations and demonstrations of the safety systems prior to the critical date.

9. Mr. Lavergne knew of the significance of the "critical date" and the one-year grace period for filing a patent application.

10. The patent attorney that prosecuted the '428 Patent application, Mr. Thomas Phung, informed Mr. Lavergne of the requirement that the patent process required filing the application within one year after the invention was first offered for sale or used publicly.

11. The '428 Patent was granted pursuant to Application Number 12/462,752 filed on August 7, 2009.

12. On October 21, 2009, Mr. Lavergne declared to the Patent Office, under penalty of perjury, that he understood the contents of the application and acknowledged his duty to disclose material information.

13. Prior sales and uses were not reported to the United States Patent Office.

14. The prior on-sale uses of the invention were not done in secret.

15. The primary reason for the prior uses of the safety systems for testing high-pressure devices was to provide income to Mr. Lavergne and Plaintiff at least more than one year before the critical date.

16. Defendant intentionally withheld discovery, which showed Plaintiff sold, installed, and demonstrated safety systems for testing high-pressure devices containing all of the elements of Claims 1 and 16 of the '428 Patent.

## II. APPLICABLE LAW

"As an equitable doctrine, inequitable conduct hinges on basic fairness." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (en banc). To prevail on inequitable conduct, the accused infringer must prove by clear and convincing evidence that the

applicant knew of the reference or prior commercial sale, knew that it was material, and made a deliberate decision to withhold it. *Id.* at 1290. In a case such as this, which involves nondisclosure of information to the Patent Examiner, "clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Id.* (citation omitted). Thus, the Court must find by clear and convincing evidence that the withheld reference was material, that the applicant knew of the reference, and that the applicant "made a deliberate decision to withhold it." *Id.*

Intent and materiality are separate requirements for a finding of inequitable conduct. *Id.* The Court "must weigh the evidence of intent to deceive independent of its analysis of materiality." *Id.* "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Id.* That said, there is no clear and convincing evidence of an intent to deceive unless such an intent is "the single most reasonable inference able to be drawn from the evidence." *Id.* (citation omitted). The evidence must be sufficient "to *require* a finding of deceitful intent in light of all the circumstances." *Id.* (citation omitted). If there are "multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91.

In order for the court to find that information withheld from the Patent Examiner was material, the court must use a "but-for" analysis." *Id.* at 1291. "Hence, in assessing the materiality of the withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Id.* "In making this patentability determination, the court" applies "the preponderance of the evidence standard" and gives "claims their broadest reasonable construction." *Id.*

Congress has provided that a "person shall be entitled to a patent unless – . . . the claimed

invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective date of the claimed invention . . ." 35 U.S.C. § 102(a)(1). However, under certain circumstances, disclosures "made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention . . . ." 35 U.S.C. § 102(b)(1). In applying the statutory on-sale bar, the court "must follow the test set forth in *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 66-67 (1998)." *Honeywell Internat'l, Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982, 996 (Fed. Cir. 2007). A single sale is sufficient to bar patentability. *Electromotive Division of General Motors Corp. v. Transportation Systems Division of General Electric Co.*, 417 F.3d 1203, 1209 (Fed. Cir. 2005).

In order for the on-sale bar to work to invalidate a patent, clear and convincing evidence must establish that "(1) the invention be the subject of a commercial sale or offer for sale and (2) the invention be 'ready for patenting' at the time of the offer or sale." *Honeywell Internat'l, Inc.*, 488 F.3d at 996 (citing *Pfaff v. Wells Elec., Inc.*, 525 U.S. 55). An invention is ready for patenting "when the evidence shows that the invention was reduced to practice or described in a written description sufficient to permit one of ordinary skill in the art to practice the invention without undue experimentation." *Id.* at 997. "An invention is reduced to practice when the patentee has an embodiment that meets every limitation and operates for its intended purpose." *Id.* "Reduction to practice requires proof that the invention worked for its intended purpose." *Honeywell Internat'l Inc.*, 488 F.3d at 997 (citing *EZ Dock v. Shafer Sys., Inc.*, 276 F.3d 1347, 1351 (Fed. Cir. 2002)).

III. **CONCLUSIONS OF LAW**

1. Defendant has proven with clear and convincing evidence that Mr. Lavergne deliberately withheld information regarding prior sales from the PTO.

2. Defendant has proven that the patent would not have issued if the Examiner had been

provided with the information regarding the prior sales.

3. Defendant has proven with clear and convincing evidence that the withheld information was material to the issuance of the patent.

4. The single most reasonable inference to be drawn from the evidence requires a finding of deceitful intent in light of all of the circumstances.

5. Defendant has proven with clear and convincing evidence that Mr. Lavergne specifically intended to deceive the PTO, and engaged in inequitable conduct in order to obtain the '428 Patent.

6. Accordingly, the inequitable conduct renders the '428 Patent unenforceable. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) ("Unlike validity defense, which are claim specific, inequitable conduct regarding a single claim renders the entire patent unenforceable.").

## IV. CONCLUSION

The Joint Jury Verdict Form submitted by the parties indicates that the fact issues to be decided by the jury are related to infringement of the claims of the '428 Patent, and the validity of the claims of the '428 Patent. [Doc. No. 361-1]. Given that an invalid patent cannot be infringed, the outstanding jury issues are MOOT.[3] Accordingly, **IT IS ORDERED** that the jury trial set to begin on Monday, September 16, 2019 is **CANCELED.**

**IT IS FURTHER ORDERED** that Defendant shall file a motion for attorney fees under 35 U.S.C. § 285 no later than Wednesday, September 18, 2019. Plaintiff is to file a response no later than Wednesday, September 25 2019.

---

[3] *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542 (Fed. Cir. 1983).

Lafayette, Louisiana, this 13th day of September, 2019.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE