IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TOTAL REBUILD, INC., | ) |
| | ) No. 6:15-cv-01855-TAD-CBW |
| Plaintiff/Counter-Defendant, | ) |
| | ) JUDGE TERRY A. DOUGHTY |
| vs. | ) |
| | ) MAGISTRATE JUDGE WHITEHURST |
| PHC FLUID POWER, L.L.C., | ) |
| | ) JURY TRIAL DEMANDED |
| Defendant/Counter-Claimant. | ) |
| | ) |

## AFFIDAVIT OF RYAN GOUDELOCKE

**STATE OF LOUISIANA**

**PARISH OF LAFAYETTE**

**Before me**, undersigned Notary Public, on the 10th day of October, 2019, came and appeared Ryan M. Goudelocke, and stated as follows:

1. I am a person of the age of majority, residing in Lafayette Parish, Louisiana.

2. I have been licensed to practice law in the state of Louisiana since 2006; admitted to the bar of this District since approximately the same time; and have been a registered Patent Attorney since 2015.

3. I have reviewed that "Defendant PHC Fluid Power, L.L.C.'s Motion for Rule 11 Sanctions and Other Relief" (Rec. Doc. 332, the "Rule 11 Motion") and its

accompanying Memorandum in Support (Rec. Doc. 332-1); as well as that "Motion for Attorney's Fees, Expenses, and Costs Under 28 U.S.C. 1927" (Rec. Doc. 401) and its accompanying Memorandum in Support (Rec. Doc. 401-1), filed by Defendant, **PHC Fluid Power, L.L.C.**, and this Affidavit is addressed to those filings' allegations as concerns me personally.

4. I first participated in this matter as counsel for Plaintiff, **Total Rebuild, Inc.**, the second week of August, 2019. I assisted other counsel and was copied on correspondence beginning approximately August 7 or 8, 2019. My first correspondence with all counsel was on or about August 16, 2019. My colleagues' motion for my enrollment as counsel for Total Rebuild was filed and granted on August 20, 2019.

5. I was uninvolved with and lack first-hand knowledge about this matter (other than review of certain portions of the record, as described below) prior to my initial involvement as described in the preceding paragraph.

6. I largely drafted, and myself filed on September 6, 2019, Total Rebuild's Memorandum in Opposition to the Rule 11 Motion.

7. I understood the Rule 11 Motion to "focus[] solely on the systems where there are no pumps inside the bunker," as PHC expressly limited it (Rec. Doc. 332, p. 1, FN1).

8. At the time of PHC's filing the Rule 11 Motion, I had read U.S. Patent No. 8,146,428 B2 to Terry Lavergne (the "patent in suit").

9. My own reading of the patent in suit did not indicate that systems with pumps outside their explosion-proof safety housings could not infringe. Instead, I understood the specification and the plain language of the claims, given their broadest reasonable interpretation, to cover systems with some, though not necessarily all, of their "high-

pressure pneumatics testing equipment" located inside an explosion-proof safety housing. Based on my review of the record, that latter term had not been construed by the Court to mean "pumps," or anything else other than the meaning set forth in the specification, which included a "plurality of devices," and I did not find credible PHC's reading of the patent in suit to exclude from potential infringement systems with pumps outside bunkers, so long as those systems located at least some "high-pressure pneumatics testing equipment" inside their bunkers.

10. To my knowledge and based on my review of the record, at the time of filing the Rule 11 Motion, PHC's assertion in the motion that the Court had previously issued "numerous rulings" that "there must be a pump in the explosion-proof housing" (Rec. Doc. 332, p. 1) in order to infringe the patent in suit was incorrect. I was not then and am not now aware that the Court had so ruled except on the day preceding PHC's filing, much less in "numerous rulings."

11. I read PHC's January 8, 2019 "Motion in Limine Regarding Systems with Testing Equipment Outside of Housing" (Rec. Doc. 207) and accompanying memorandum (Rec. Doc. 208), in which PHC argued that "[o]nly safety systems in which the high-pressure testing equipment (e.g. the pumps) is located within or placed in an explosion-proof housing are relevant to support a claim for infringement" (Rec. Doc. 208, p. 3). I also read the Court's June 10, 2019 disposition of that motion in limine (Rec. Doc. 283), which denied the relief PHC sought except to the extent Total Rebuild had failed to sufficiently specify accused systems no later than its second supplemental infringement contentions. I did not believe the Court's June ruling supported PHC's statement in the Rule 11 Motion that the law of the case then dictated that a pump was

required to be present inside an explosion-proof safety housing in order to infringe the patent in suit.

12. At or before the time of the Rule 11 Motion's filing, I had reviewed Total Rebuild's claim-comparison chart (Rec. Doc. 189-10) submitted in connection with its second supplemental infringement contentions. I noted that Total Rebuild had identified as infringing PHC systems which included various "high-pressure pneumatics testing equipment" within housings, including but not limited to "[high-pressure] components," "pumps," "valve[s]," "controls and manual valves," "reservoir[s]," and "pump/valve rack[s]" (Rec. Doc. 189-10, pp. 9-10). My impression from that chart was that Total Rebuild had identified as potentially infringing systems with a variety of high-pressure pneumatics testing equipment, including but not limited to pumps, inside housings. I also noted that those infringement contentions identified potentially-infringing systems with at least some high-pressure pneumatics testing equipment inside bunkers in which the location of pumps was not specified. I understood Total Rebuild's second supplemental infringement contentions to identify as infringing specified systems with any "high-pressure pneumatics testing equipment," including but not limited to pumps, inside housings.

13. I also at the time of the Rule 11 Motion's filing had read PHC's July 26, 2019 "Motion in Limine Regarding Accused Systems" (Rec. Doc. 290) and its accompanying memorandum in support (Rec. Doc. 290-4), which sought essentially the same relief as PHC's January 8, 2019 motion.[1] I assisted in drafting Total Rebuild's Memorandum in Opposition (Rec. Doc. 319) to that July 26 motion, which was filed on August 26, 2019.

---

[1] The later motion is sometimes identified in the record as "Motion in Limine re Accused Systems Pumps Outside."

That memorandum contains material I drafted arguing that: a) Total Rebuild had not previously limited its infringement contentions to restrict "high-pressure pneumatics testing equipment" to mean only "pumps or pump systems;" b) the broadest reasonable interpretation of the claims in light of the specification covered systems with *any* "high-pressure pneumatics testing equipment," including any of the "plurality of devices and types" of such equipment as defined by the specification, inside their housings; and c) PHC's contention then (as would be repeated in the Rule 11 Motion) that the Court had earlier ruled "systems in which all the high-pressure pneumatics testing equipment is not within the explosion-proof housing cannot be raised in this case and cannot infringe any claim" (Rec. Doc. 290-4, p. 5) did not accurately reflect the Court's rulings at that time.

14. I explicitly noted in the above-described opposition memorandum (Rec. Doc. 319) the Court's prior observation of March 28, 2019 (Rec. Doc. 263) that, in the context of striking Total Rebuild's third supplemental infringement contentions as untimely, that that set of contentions "target systems using pumps or pump systems within an explosion-proof safety housing" (Rec. Doc. 263, p. 2). The Court in FN2 of that ruling explained that Total Rebuild "did so by limiting 'high-pressure pneumatics testing equipment' to components located inside a safety housing." The patent in suit did limit itself to such equipment in such housings; but as I noted in the above-described opposition memorandum, "high-pressure pneumatics testing equipment" comprised not only pumps but a "plurality of devices" which, if located inside such housing, could infringe the plain language of at least some of the claims (Rec. Doc. 319, pp. 2-3). Moreover, the Court did not in striking Total Rebuild's third supplemental

infringement contentions reach any finding that systems with pumps outside housings could not infringe; instead, it ordered that Total Rebuild could not proceed on any theory of infringement not sufficiently specified in earlier contentions (Rec. Doc. 263, p. 6). As stated above, I had read the second supplemental infringement contentions to include systems which located some high-pressure pneumatics testing equipment, not necessarily including pumps, inside bunkers. The Court did not rule that Total Rebuild could not pursue infringement claims against systems with pumps outside housings; rather, it held that only systems sufficiently identified in the second supplemental infringement contentions could be pursued.[2] This holding was repeated in Rec. Doc. 283, yet PHC's memorandum in support of its Rule 11 Motion asserted (without reference to the record) that the "Court has already reached determinations on the location of the pumps numerous times" (Rec. Doc. 332-1, p. 5). I believed then, and believe now, that PHC's representation to the Court of its own prior rulings was not reasonably supportable by reference to the record.

15. I was aware of PHC's August 27, 2019 motion (Rec. Doc. 324) for leave to file a reply brief in support of its July 26 motion, which was denied (Rec. Doc. 325) the same day.

16. I read soon after their issuance on August 29, 2019 the Court's Memorandum Ruling (Rec. Doc. 327) and Order (Rec. Doc. 328) on PHC's re-urged motion to exclude evidence on systems with pumps outside housings.

---

[2] Whether the second supplemental infringement contentions were sufficiently specific as to a number of systems was the subject of separate motion practice. PHC moved (Rec. Doc. 296) to strike certain systems it believed were not precisely identified; the Court on September 9, 2019 permitted as accused systems a list of 9 found to have been adequately specified (Rec. Docs. 375, 376). That ruling came after the Rule 11 Motion's filing, and after Total Rebuild's opposition to it was filed.

17. While the Court agreed in its Memorandum Ruling that "the term 'high-pressure pneumatics testing equipment' is not limited to pumps" (Rec. Doc. 327, p. 5), the Court did construe the claim term to "include at least one pump." Id. Therefore, the Court granted PHC's motion to exclude evidence concerning systems "to the extent that the pump or pumps of the accused system are located outside the recited 'explosion-proof safety housing'" (Rec. Doc. 327, p. 6).

18. To my knowledge, the Court's ruling on August 29, 2019 was its first construction of the term "high-pressure pneumatics testing equipment" to include at least one pump; the first ruling that precluded Total Rebuild from alleging infringement by systems without at least one pump inside a bunker, by virtue of that construction; and the first ruling to exclude such systems from evidence.

19. PHC filed its Rule 11 Motion the next day.

20. My understanding of PHC's rationale for the Rule 11 Motion is that a) Total Rebuild knew or should have known in advance, at least as early as January 2019, that the Court would rule as it did on August 29, 2019; and b) that August 29, 2019 ruling was such an obvious outcome that Total Rebuild's maintenance of contentions to the contrary was so "frivolous" and "baseless" as to have had "no chance of success" whatsoever.

21. As I argued in Total Rebuild's opposition (Rec. Doc. 368) to the Rule 11 Motion, PHC's position to me appeared (and still appears) absolutely untenable – leaving aside PHC's assertion in the Rule 11 Motion (and prior to it, repeatedly) that the Court had already ruled to the same effect it did on August 29, which I again believe unsupportable by the record.

22. My own filings, and my participation in the preparation of those filings in this matter which bear my name, in support of Total Rebuild's infringement contentions at issue in the Rule 11 Motion have been grounded in good-faith belief of their validity after the above-described inquiries into the record laid down prior to my involvement. While the Court's August 29, 2019 ruling eliminated the possibility of infringement by the systems listed in the Rule 11 Motion,[3] my review of the record indicated to me that the Court had not earlier done so, and indeed that allegation of infringement by systems with pumps outside housings was supported by the patent in suit, as discussed in my opposition to the Rule 11 Motion.

AND FURTHER, AFFIANT SAYETH NOT.

_____
RYAN GOUDELOCKE, Affiant

SWORN TO AND SUBSCRIBED before me, this 10th day of October, 2019 at Lafayette, Louisiana.

_____
NOTARY PUBLIC

---

[3] Assuming for the sake of argument that those systems do not include at least one pump within their housings.