# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| TOTAL REBUILD, INC. ) | |
| ) | |
| Plaintiff/Counterclaim-Defendant, ) | Case No. 6:15-cv-01855-TAD-CBW |
| ) | |
| v. ) | JUDGE TERRY A. DOUGHTY |
| ) | |
| PHC FLUID POWER, L.L.C., ) | MAGISTRATE JUDGE WHITEHURST |
| ) | |
| Defendant/Counterclaim-Plaintiff. ) | JURY TRIAL DEMANDED |
| ) | |

**DEFENDANT PHC FLUID POWER, L.L.C.'S REPLY IN SUPPORT OF MOTION FOR ATTORNEY FEES, EXPENSES, AND COSTS UNDER 35 U.S.C. § 285**

For its reply in support of its Motion (Dkt. 399), PHC Fluid Power LLC ("PHC") states:

**I.   ACCORDING TO THE FEDERAL CIRCUIT, INEQUITABLE CONDUCT OFTEN RESULTS IN A FINDING OF EXCEPTIONAL CASE.**

Total argues "Inequitable Conduct Does Not Mandate a Finding of Exceptionality." Resp. at 4. PHC does not assert the finding of inequitable conduct mandates attorney fees. Instead, PHC asserted "prevailing on a claim of inequitable conduct often makes a case 'exceptional, leading potentially to an award of attorneys' fees under 35 U.S.C. § 285." (Dkt. 399-1 at 24) (citing *Therasense, Inc. v. Becton Dickinson and Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011)).

It is true that such a finding often results in an exceptional case. In *Energy Heating, LLC v. Heat On-The-Fly*, LLC, 889 F.3d 1291 (Fed. Cir. 2018), the Federal Circuit stated, "District courts have often awarded attorneys' fees under § 285 following a finding of inequitable conduct, and this court has upheld such awards." *Id*. at 1307. The Federal Circuit further explained that following the implementation of the heightened standard for inequitable conduct in *Therasense*, the tendency of courts has been to grant attorneys' fees following a finding of inequitable conduct. *Id*. Thus, contrary to Total's assertion, courts have often found exceptionality after a finding of inequitable conduct both before and, particularly, after *Therasense*. *See, e.g., id.; In re Rembrandt Tech. LP Patent Lit.*, 899 F.3d 1254, 1277-1280 (Fed. Cir. 2018); *Worldwide Home Prods., Inc. v. Bed, Bath and Beyond, Inc.*, 2015 WL 1573325, at *2 (S.D.N.Y. Apr 9, 2015).

Total only cited to pre-*Therasense* cases to support its position there is "no per se rule of exceptionality in cases involving inequitable conduct." Resp. at 4-5. Total neglected to include all the post-*Therasense* cases where courts, affirmed by the Federal Circuit, have found inequitable conduct renders those cases exceptional.

**II.   TOTAL COULD NOT HAVE EXPECTED TO PREVAIL AT TRIAL.**

Total responds that its "Defense to Inequitable Conduct Was Not Exceptionally Weak."

1

Resp. at 5. Setting aside that "exceptionally weak" alone is not the standard for a finding of an exceptional case, Total provides no explanation how it could believe its defense was not exceptionally weak when Judge Jackson found Total's argument "implausible" when denying Total's Motion for Summary Judgment. Yet faced with being told its position was implausible, Total continued to trial with an implausible position.

The only defense asserted by Total was the unbelievable assertion Mr. Lavergne did not understand the '428 Patent covered a pressure testing system without an interlock feature until the last day of trial. Simple questioning at trial revealed Mr. Lavergne intended to patent the inventions without the interlock features; he asserted to at least one third party that such systems infringed his patent; and he both read and understood the meaning of the words in the non-interlock claims when he signed his declaration. To have a good faith belief it could overcome the defense, Total apparently either failed to prepare Mr. Lavergne for such questions (which would have shown the weakness before trial) or intentionally ignored the likelihood for such testimony and evidence.

Total's attempt to blame its prior counsel (while in response to the motions against those counsel, Total's former counsel blames Total and Mr. Lavergne), likewise fails. Total's counsel did not thoroughly "conduct[] a pre-filing investigation" and "continue[] to investigate Total's claims and defenses through the pendency of this litigation…" Resp. at 6. Had they done so, no reasonable counsel would have advised Total to proceed to trial. It is unclear from the response whether the investigations pertained to the defense or were simply to the merits of the infringement portions of the claims. To the extent the investigations are directed to other aspects, such as claim construction, the allegation is incorrect. PHC incorporates by reference its Memo. and Reply in support of Motion for Rule 11 Sanctions and Motion for Sanctions under 27 U.S.C. § 1927 (Dkts. 332-2, 382, 401-1, 431). PHC also believes the Court should ignore this argument because it is

based on communications Total asserted were privileged. *See Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1303 (Fed. Cir. 2018) (affirming exclusion of attorney testimony where patentee was using attorney-client privilege as both sword and shield).

Total's attempt to shield itself behind the conduct of its patent attorney also fails. Whether Mr. Phung viewed Total's then-current website during the prosecution of the application is irrelevant. There is absolutely no testimony Mr. Phung viewed Total's website for the period of more than one year before the application date. To the contrary, Mr. Phung testified he did not view WayBackMachine images of the website from years prior. That Mr. Phung viewed Total's website during the patent application process does not demonstrate that Mr. Phung knew the Millennium Test System was displayed on Total's website and on sale more than a year before the effective filing date of the '428 Patent. Mr. Phung testified that he would not have filed the application had he known the Millennium Test Systems before the critical date.

### III. TOTAL'S INFRINGEMENT POSITION HAD NO REASONABLE BASIS.

Total argues its infringement position were reasonable based on the arguments its prior counsel made in response to PHC's Motion for Rule 11 Sanctions (Dkt. 332) and PHC's Motion for Attorneys' Fees under 28 U.S.C. § 1927 (Dkt. 401). As explained in its Memo. and Reply in Support of Motion for Rule 11 Sanctions (Dkts. 332-1, 382) and Motion for Attorney Fees under 28 U.S.C. § 1927 (Dkts. 401-1, 431), both of which are incorporated herein by reference, Total never asserted a viable infringement position.

Total also cites to *TechRadium, Erfindergemeinschaft,* and *Printeron* for the proposition that "[i]f a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims." Resp. at 9. The cases do not support Total's position this case is not exceptional.

3

In *TechRadium*, a case in which a finding of "exceptionality" issued, inequitable conduct was not at issue. *TechRadium, Inc. v. FirstCall Network, Inc.*, 2015 WL 862326 (S.D. Tex. Feb. 27, 2015). Thus, the case is inapplicable. Further, the *TechRadium* court noted "the most commonly cited ways to establish exceptionality include evidence showing. .. the plaintiff proceeding in bad faith; or litigation misconduct," both of which apply here. *Id*. at *6. The *TechRadium* court also found the case exceptional based in part on the defendant's broad interpretation of the claim recitation "user." Total's unreasonably broad interpretation (after discovery closed and long after the time for disclosing infringement contentions had based) of "high-pressure pneumatics testing equipment" to be tube or hose was similarly unreasonable.

*UroPep* and *Printeron* are not applicable because they did not involve the assertion of a patent obtained through fraud. *Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*, 2017 WL 3044558 (July 18, 2017); *Printeron, Inc. v. BreezyPrint Corp.*, 2015 WL 7149442 (S.D. Tex. Nov. 10, 2015). Further, in *UroPep*, the patentee sought a finding of exceptionality based, in part, on the alleged infringer's refusal to concede infringement, which is not at issue here.

IV. **TOTAL'S DEFAMATORY ASSAULT ON PHC'S COUNSEL AND PHC FAILS.**

As an initial matter, Total's personalized attack of Mr. Miller is reprehensible, defamatory, and should considered as another factor for assessing fees against Total.[1] Other than the Magistrate Judge chastising both parties during a single discovery conference, there has not been a single warning, censure, or threat of sanction against Mr. Miller or any other counsel for PHC. The assertion that Mr. Miller or PHC has engaged in "extensive litigation misconduct" (or any litigation

---

[1] Total argues PHC should be precluded from obtaining its fees because in another unrelated case in which Mr. Miller served as local counsel, the Court stated that "[b]oth counsel are cautioned that their language is excessive and personal attached are not appreciated or helpful in this case." Resp. at 17. Total does not identify any statement or conduct specifically by Mr. Miller (because there was none) from that case.

4

misconduct ) is false. It is Total's counsel who has repeatedly been warned by the Court not to make unsubstantiated claims. Ruling at 3, n5 (Dkt. 161); Ruling at 4-5 (Dkt. 263). This Court also cautioned Total that it is "out of strikes" after Total continued to assert infringement by systems that could not infringe. Ruling at 4 (Dkt. 357). It is Total that hid the key documents only to produce them the day before a forensic examination.

Yet, despite Total and its counsel being warned by the Court and facing motions for Rule 11 sanctions and § 1927 sanctions, Total and its counsel now grossly distort the facts and alleged cases they say would avoid a finding of an exceptional case. In the briefs filed by PHC and identifying several counsel, not just Mr. Miller, PHC has stated the truth in clear terms. As the Court's determination shows, Mr. Lavergne's declaration was untruthful and his position on why he did not disclose invalidating prior sales not credible. It is neither exaggeration nor "egregious rhetoric" to use the phrases "untruthful," "feigned ignorance," "devoid of credibility," or the other phrases Total cites. They correctly describe Total's, Mr. Lavergne's, and Total's prior counsel's assertion Mr. Lavergne did not understand what the claim of a patent was or why pressure testing systems without the interlock feature were relevant to this litigation through over four years of litigation, until the last day of trial, notwithstanding overwhelming evidence to the contrary.[2]

After four years of litigation, it also is neither unreasonable nor unprofessional conduct for PHC and its counsel to oppose further extensions. Mr. Carver indicated he and Mr. Hasford (who still has not filed a pro hac motion or otherwise requested admission), as new counsel for Total, would seek an extension of time for reply and move for an extension of 30 days. Motion for Extension at 2 (Dkt. 418). One of the bases for the extension is Total's alleged new counsel (who

---

[2] That Mr. Lavergne did not know during this four-plus year litigation that claim 1 of the '428 Patent did not require an interlock feature or the relevance of pressure testing systems without an interlock feature is unbelievable.

5

has not yet entered a notice of appearance in this case) was out of the country. *Id*. PHC, through its counsel, simply refused to agree to any extension or substitution of counsel that would require an extension because of the numerous other patent counsel available at Finnegan and throughout the United States. The Court denied Total's request for a 30-day extension and provided Total with an extension of only 15 days (Order (Dkt. 422)).

The cases cited by Total in their attack on Mr. Miller and PHC also do not support Total's position. The best example is the *Intellectual Ventures II LLC v. Federal Express* case. There the Eastern District of Texas chastised Federal Express not for zealous use of words but because Federal Express produced "2.5 [terabytes] of data, including archived files, complied code, installed sets, and development binaries that were unreviewable" and "in so doing, FedEx failed to follow the basic tenets of discovery that it should only produce relevant materials." Copy of decision attached hereto as <u>Exhibit 1</u> at 7 The Eastern District of Texas concluded that "such actions fall outside the bounds of typical advocacy or even aggressive litigation, and cross into the realm of misconduct." *Id*. at 8. This finding of excessive and useless production was among several discovery actions criticized by the Eastern District of Texas including but not limited expert issues and excessive depositions. *See*, *e.g.*, id. at 9-10. Unlike that case, there has not been a single finding of discovery or other misconduct by PHC. There is no litigation misconduct to hold against PHC.

## V. PHC'S FEE REQUEST IS REASONABLE

"When awarding attorneys' fees, a court may award fully compensatory fees that encompass all hours reasonably expended on the litigation '[w]here a plaintiff has obtained excellent results." *Applied Materials, Inc. v. Multimetrixs, LLC*, 2009 WL 1457979, at *4 (N.D. Cal. May 26, 2009) (citing *Hensely v. Eckerhart*, 461 U.S. 424 (1983)); *see also In re Rembrandt Tech.*, 899 F.3d at 1280 ("In the run-of-the-mill patent infringement case . . . a finding of pervasive

6

misbehavior or inequitable conduct . . . may justify an award of all of the fees incurred."). Here, PHC should be awarded its attorney fees because all Total's claims were dismissed with prejudice after inequitable conduct was found and, further, because Total's infringement positions and litigation conduct also render the case exceptional.

Neither case cited by Total suggests the fees awarded to PHC should be reduced. First, in *Universal Elecs.* inequitable conduct was not at issue. *Universal Elec., Inc. v. Universal Remote Control, Inc.*, 2015 WL 12733442, at *8 (C.D. Cal. Mar. 10, 2015). Second, *Universal Elecs.* involved several patents, and the court ordered "Plaintiff to pay for the portions of the case attributable to the '428 and '067 Patents, and the motion for reconsideration regard the '367 Patent." *Id*. The court did not distinguish between various positions as to a single patent, as is the case here. Third, Total's conduct in almost every aspect of this litigation renders it exceptional. PHC notes in the actual order on attorney fees, the *Universal Elecs.* court, in a well-considered decision, awarded the defendant $4,144,847.62 in attorney fees and $478,542.06 in expenses, well over what PHC seeks here, even considering differences in scope. *Universal Elec., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1343 (C.D. Cal. 2015). Second, *UltimatePointer* also is irrelevant because it did not involve claims for inequitable conduct. *UltimatePointer, LLC v. Nintendo Co., Ltd.*, 2015 WL 3822577 (W.D.Wa. Mar. 11, 2015). Only the plaintiff's pre-suit investigation of some of the accused products was at issue. *Id*.

Total does not argue the total fees and expenses requested by PHC are excessive, and PHC has submitted the Affidavit of P.Hebert and documents from the AIPLA demonstrating they are. Affidavit (Dkt. 399-6); AIPLA 2019 Report (Dkt. 399-13); *see also Worldwide Home*, 2015 WL 1573325, at *3 ("In patent infringement cases, the district court may also consider the [AIPLA] surveys of typical litigation costs."). This was an over four-year litigation involving "complex

7

engineering and legal issues involve[ing and] interpreting the previous judicial rulings in the case." Respondents' Opp. at 7 (Dkt. 426). The fees, costs, and expenses requested by PHC are not unreasonable considering the purpose of § 285. *Universal Elec., Inc.,* 130 F. Supp. 3d at 1336-1343 (performing global fee analysis after holding "[t]here is a growing trend that District Court judges should award fees based on an overall global understanding and review of a case, rather than a tedious review of voluminous time entries and hourly rates.").

Total cites to the Magistrate Judge's order early in the case finding prevailing rates within the district were between $260/hour and $275/hour. Resp. at 19 (citing Ruling at 7 (Dkt. 99)). However, Magistrate Judge Whitehurst noted "the requested fees pertain to a discovery matter as opposed to a complex dispositive motion." Ruling at 7 (Dkt. 99). They do not impose a cap on the hourly rate in this complex patent case. Indeed, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Further, the Magistrate Judge reduced the requested fees after noting "PHC did not prevail as to all aspects of the Motion to Compel," and "[t]he parties have not argued that the *Johnson* factors mandate an enhancement of the lodestar amount." *Id*. at 5, 8. Here, PHC obtained a complete victory because the entire '428 Patent was rendered unenforceable, which militates for a complete award.[3] Further, the *Johnson* factors of at least (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (3) the amount involved and the results obtained; and (4) awards in similar cases also militate for

---

[3] That the Court did not grant PHC's counterclaim for inequitable conduct based on PHC's alternative theory that the '428 Patent incorrectly named Mr. Lavergne as an inventor does not suggest PHC's award should be reduced. First, the Court ruled in PHC's favor and dismissed with prejudice all Total's claims based on its finding of inequitable conduct. Parties should not be dissuaded from asserting alternate theories. Second, PHC's allegations relating to inventorship were never the primary basis for its inequitable conduct claim and caused little, if any, additional work. *See, e.g.* PHC's Second Amended Ans. and Countercl. at 25-38 (Dkt. 75) (explaining basis for inequitable conduct counterclaim was nondisclosure but not mentioning inventorship).

8

a fee enhancement. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

The specific entries cited by Total also are not unreasonable and do not infer the remainder of the entries are unreasonable. Total first cites to eight entries for travel to and from Lafayette for trial and states that "entries similar to the above are abundant throughout the invoices submitted with PHC's request for attorney fees." Resp. at 20-21. First, the entries are for the only time in this litigation any counsel for PHC drove to Lafayette (at least from outside of Louisiana). They do not represent other entries. Second, PHC's counsel drove so the case could be discussed and so they would have all binders, folders, documents, and exhibits needed. Driving in lieu of taking a connecting flight and paying shipping and baggage fees from Nashville was not unreasonable.

Total next argues several of PHC's billing entries should be excluded because they are "block billing." Resp. at 20. Total has acknowledged that block billing does not per se result in denial of attorneys' fees. Here, the entries are sufficiently detailed and include complex and time-consuming legal tasks such as prior art searches, completing detailed invalidity contentions, and drafting the response and supporting documents to Total's motion for summary judgment on PHC's inequitable conduct counterclaim (which included 60 exhibits (Dkt. 189)); and trial preparation with the client. Total cites only to entries on or after page 187 of the time entries submitted by PHC, an acknowledgement that the vast majority of the entries are acceptable. *Id*. No reduction in PHC's requested fees is warranted.

VI. **MR. LAVERGNE MUST BE HELD JOINTLY AND SEVERALLY LIABLE**

When it aided Total to avoid dismissal, Total asserted Mr. Lavergne and Total are "alter egos." Now that Total has lost, Total asserts that other factors have to be considered to determine whether Total and Mr. Lavergne are "alter egos." Even if they could have it both ways and were not judicial estopped for so arguing, their arguments fail.

9

Total incorrectly asserts Mr. Lavergne cannot be held directly liable because "inequitable conduct ***does not*** constitute common law fraud." Resp. at 24. The Federal Circuit distinguished inequitable conduct from common law fraud based on the pre-*Therasense* standard. *See In re Spalding Sports Worldwide*, 203 F.3d 800, 807 (Fed. Cir. 2000). Post-*Therasense*, these standards are not different. Even if they were different, the Court's findings fall within the type of *Walker Process* fraud as defined in *Spalding*.

Total implicitly argues only "common law fraud" is sufficient to hold a shareholder directly liable under Louisiana law. Total's response does not cite to any case to support this position, which makes sense because that position is contradicted by statute and caselaw. *See, e.g.*, *First Downtown Dev. v. Cimochowski*, 613 So.2d 671, 676-77 (La.Ct.App. 1993) (citing LSA-C.C. art 1953). Mr. Lavergne can be held directly liable for his fraud in procuring the '428 Patent.

Total's assertion Mr. Lavergne only testified he was Total's alter ego in a narrow sense fails. Resp. at 24. Mr. Lavergne's testimony and Total's statements show they both asserted broadly Mr. Lavergne was Total's alter ego. *See, e.g.*, Total's SOMF regarding Alleged Infringement (Dkt. 66-1) ("<u>Acting under his authority as the director and sole shareholder of Total, Mr. Lavergne is the alter ego of Total.</u>") (emphasis added).

Finally, Total's assertion that *Iris Connex* does not provide for direct liability against Mr. Lavergne fails. Resp. at 24-25. PHC relies upon *Iris Connex* for the broad proposition this Court can hold Mr. Lavergne directly liable because (1) it is equitable to do so; and (2) Mr. Lavergne had notice and participated. However, whether Total is undercapitalized remains unknown. That Total has made hundreds of thousands of dollars in sales in the last 30 years does not show it is not undercapitalized. PHC further notes Total has cited no caselaw in opposition to *Iris Connex*.

10

Dated: October 29, 2019

Respectfully submitted,

MILLER LEGAL PARTNERS PLLC

/s/ Nicholas R. Valenti
Samuel F. Miller, TN Bar No. 22936
Nicholas R. Valenti, TN Bar No. 35420
Sara R. Ellis, TN Bar No. 30760
Hayley H Baker, TN Bar No. 37439
Fifth Third Center–Suite 2000
424 Church Street
Nashville, Tennessee 37129
Tel/Fax: (615) 988-9011
Email: smiller@millerlegalpartners.com
         nvalenti@millerlegalpartners.com
         sellis@millerlegalpartners.com
         hbaker@millerlegalpartners.com


NEUNERPATE

/s/ Brandon Letulier
Brandon W. Letulier - #28657
Cliff A. LaCour - #30581
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
Tel: (337) 237-7000
Fax: (337) 233-9450
Email: bletulier@neunerpate.com
         clacour@neunerpate.com

*Attorneys for PHC Fluid Power, L.L.C.*

11

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 29th day of October 2019, a copy of the foregoing was served on counsel of record listed below via the Court's ECF system:

James C. Carver, Ph. D.
The Carver Law Firm, LLC
20 St. Charles St.
Baton Rouge, LA 70802
Telephone: (225) 636-2642
Facsimile: (225) 757-6551
jim@thecarverlawfirm.com

Brandon W. Letulier
Cliff A. LaCour
NeunerPate
One Petroleum Center, Suite 200
1001 W. Pinhook Road
Lafayette, LA 70503
bletulier@neunerpate.com
clacour@neunerpate.com

James H Gibson
Charles M. Kreamer
Alan W. Stewart
Gibson Law Partners, LLC
2448 Johnston Street (70503)
Post Office Box 52124
Lafayette, LA 70505
Telephone: (337) 761-6024
Facsimile: (337) 761-6061
jimgibson@gibsonlawpartners.com
charleskreamer@gibsonlawpartners.com
alanstewart@gibsonlawpartners.com

/s/ Nicholas R. Valenti
Nicholas R. Valenti