# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **TOTAL REBUILD, INC.** | **CASE NO. 6:15-CV-1855** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **PHC FLUID POWER, L.L.C.** | **MAG. JUDGE WHITEHURST** |

## RULING

This is a patent infringement case in which Plaintiff Total Rebuild ("Plaintiff") contends systems and/or methods utilized by or through Defendant PHC ("Defendant") infringe claims of United States Patent No. 8,146,428 ("the '428 Patent"). The '428 Patent is directed to systems and methods for safely testing devices and components under high-pressure.

Pending before the Court is Defendant's "Motion for Rule 11 Sanctions and Other Relief" [Doc. No. 332]. Plaintiff responded to the motion. [Doc. No. 368]. Defendant filed a reply. [Doc. No. 377]. For the following reasons, the motion is DENIED.

Also pending before the Court is Defendant's "Motion for Attorney Fees, Expenses, and Costs under 35 U.S.C. § 285" [Doc. No. 399]. Plaintiff responded to the motion. [Doc. No. 433]. Defendant filed a reply. [Doc. No.436]. For the following reasons, the motion is DENIED.

Finally, pending before the Court is Defendant's "Motion for Attorney Fees, Expenses, and Costs under 28 U.S.C. § 1927" [Doc. No. 401]. Plaintiff responded to the motion. [Doc. No. 426]. Defendant filed a reply. [Doc. No.431]. For the following reasons, the motion is DENIED.

## I.     PROCEDURAL HISTORY

### A. Defendant's Motion for Rule 11 Sanction and Other Relief.

On January 3, 2019, Defendant delivered to Plaintiff notice under Fed. R. Civ. P. 11 of Defendant's intent to file a motion for sanctions. (Doc. No. 332-1 at 4, Doc. No. 368 at 3). On January 11, 2019, within the safe harbor period, Plaintiff responded to Defendant's January 3,

2019 proposed motion and memorandum. (Doc. No. 368-1). Following receipt of Plaintiff's January 11, 2019 correspondence, Defendant waited a period of approximately eight months before filing the present motion on August 30, 2019.

**B. Defendant's Motion for Attorney Fees, Expenses, and Costs under 35 U.S.C. § 285 and 28 U.S.C. § 1927.**

A bench trial on inequitable conduct was conducted from September 12 to September 13, 2019. The Court entered Preliminary Findings of Fact and Conclusions of Law on September 13, 2019, and concluded that the '428 Patent is unenforceable due to inequitable conduct. (Doc. No. 388). The Court canceled the jury trial set to begin on September 16, 2019, and ordered Defendant to file a motion for attorney fees under 35 U.S.C. § 285 no later than Wednesday, September 18, 2019. (*Id.* at 6). On September 18, 2019, Defendant filed the present motions for attorney fees, expenses, and costs under 35 U.S.C. § 285 and 28 U.S.C. § 1927. (Doc. Nos. 399 and 401). On October 15, 2019, the Court entered a Memorandum Opinion and Judgement finalizing the Findings of Fact and Conclusions of Law related to the bench trial on inequitable conduct. (Doc. Nos. 427 and 428).

## II. LAW AND ANALYSIS

**A. Defendant's Motion for Rule 11 Sanction and Other Relief.**

Federal Rule of Civil Procedure 11 requires attorneys to certify that their claims are well-grounded in fact and in law, and their filings are not being presented for any improper purpose. Rule 11(b) provides in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or

>reversing existing law or for establishing new law; [and]
>
>(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
>. . . .

FED. R. CIV. P. 11(b).

In determining compliance with Rule 11, an attorney is measured under a standard of objective reasonableness based on the circumstances. *Whitehead v. Food Max of Miss., Inc*., 332 F.3d 796, 802–03 (5th Cir. 2003) (en banc). The reasonableness of the conduct involved is to be viewed at the time counsel signed the document alleged to be the basis for the Rule 11 violation, commonly referred to as the "snapshot rule." *Marceaux v. Lafayette City Par. Consol. Gov't*, 14 F. Supp. 3d 760, 766 (W.D. La. 2014). This rule "ensures that Rule 11 liability is assessed only for a violation existing at the moment of filing." *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir. 2006).

The determination of a Rule 11 motion is not a determination of the merits of the action. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 396 (1990). "Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.* To succeed on their request for Rule 11 sanctions, Defendant must establish that Plaintiff lacked a reasonable basis for its allegations at the time that it filed its federal court pleadings. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988). This determination is a "fact intensive inquiry" that turns on an "assessment of the gravity of the conduct at issue," and is measured by an objective standard of reasonableness under the circumstances. *Id.* at 872-73; *see also Smith v. Our Lady of the Lake Hosp.*, 960 F.2d 439, 444 (5th Cir. 1992) (reversing the imposition of Rule 11 sanctions, although the Court "doubted the merits of Smith's suit," and finding that "the attorneys' investigation, while not perfect, was reasonable under the circumstances"). The purpose of Rule 11 is to "deter baseless filings in district court" and

"streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 2454, 110 L. Ed. 2d 359 (1990).

In this case, the entirety of Defendant's argument is that Plaintiff and its counsel continued to frivolously assert that systems where a pump is not in the explosion-proof housing infringe the claims of the '428 Patent. (Doc. No. 332-1 at 1).[1] Specifically, Defendant identify six systems that they contend do not have testing equipment inside the housing. (*Id.* at 6–9). Defendant argues that each of the independent claims of the '428 Patent require the pressure testing equipment to be located within the explosion-proof safety housing where high-pressure testing takes place. (*Id.* at 5-6). Defendant further contends that Plaintiff's conduct is frivolous because it cannot directly infringe claims 3-5, 11-15, and 18-19 of '428 Patent through the identified systems. (*Id.* at 12-17).

On January 3, 2019, Defendant served a demand letter and draft of a Motion for Sanctions and supporting memorandum. (*Id.* at 3-4). Defendant argues that since receiving the January 3, 2019 Demand Letter and Draft Motion, Plaintiff and its counsel asserted infringement of a sixth system where all pumps are outside the explosion-proof safety housing. (Doc. No. 332-1 at 17).

Plaintiff responds that it is respectful of the Court's recent ruling excluding evidence of infringement by accused systems "to the extent that the pump or pumps of the accused system are located outside the recited 'explosion-proof safety housing'" (Doc. No. 368 at 2) (citing Doc. No. 327 at 6). Plaintiff argues that since the filing of the motion, it has "worked extensively with counsel for PHC on joint documents (jury charges, jury verdict form) that explicitly exclude the systems subject to the Court's ruling and subject of the instant Motion." (Doc. No. 368 at 2). Plaintiff further argues that the Court's recent determination is a far cry from the accusation that it

---

[1] Citations to the parties' filings are to the filing's number in the docket (Doc. No.) and pin cites are to the page numbers assigned through ECF.

was not only wrong, but frivolous or baseless. (*Id.* at 2). The Court agrees.

In patent infringement actions, a reasonable inquiry under Rule 11 requires that an attorney (1) perform a nonfrivolous claim construction analysis and (2) apply it as part of a reasonable infringement analysis. *Q–Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301-02 (Fed. Cir. 2004). Evidence of a nonfrivolous claim construction analysis consists of a claim interpretation that "comport[s] with the plain meaning of the claim language and do[es] not appear to be inconsistent with the patent's written description and prosecution history." *Id.* at 1301. Claim construction positions are analyzed on a spectrum of reasonableness. "Reasonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous." *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012).

At one end of that spectrum, a threshold exists where a claim construction position is so unreasonable that "no reasonable litigant could believe it would succeed." *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011). Should a claim construction position meet this high threshold, the claim construction is frivolous, and Rule 11 mandates sanctions. *Id.* Regarding a reasonable infringement analysis, an attorney need only show that "a good faith, informed comparison of the claims of a patent against the accused subject matter" took place. *Q–Pharma*, 360 F.3d at 1302. "[T]he presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11." *Id.*

Here, the Court finds that Plaintiff's contentions that the term "high-pressure pneumatics testing equipment" was never limited to "pumps" or "pump systems" was objectively reasonable and in good faith. (*See, e.g.*, Doc. No. 319 at 4). As indicated in the August 29, 2019 Ruling, the Court did not adopt Plaintiff's construction for this phrase. (Doc. No. 327 at 4-6). However, the Court finds that this is a case where "[r]easonable minds can differ as to claim construction

positions" without the "losing constructions" being frivolous. *See Raylon*, 700 F.3d at 1368. Specifically, Plaintiff argued that to limit the scope of the independent claims to a limitation recited in dependent claim 6 would "run afoul of claim differentiation." (Doc. No. 368 at 9). Plaintiff is correct that "separate claims are presumed to indicate that the claims have different meanings and scope." *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 972 (Fed. Cir. 1999). Plaintiff also argued that the Court improperly limited the claims to the disclosed embodiments. (Doc. No. 278 at 35). Again, Plaintiff is correct that the Federal Circuit has "cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification," *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002).

However, for the reasons stated in the Claim Construction Ruling (Doc. No. 278), and the August 29, 2019 Ruling (Doc. No. 327), the intrinsic evidence indicates that the disputed term was not improperly limited to the disclosed embodiments, and that claim differentiation does not apply in the manner which Plaintiff contends. Therefore, the Court ultimately rejected Plaintiff's arguments and construction. However, this fact alone does not make Plaintiff's position frivolous. Indeed, "it is not unusual for parties to offer competing definitions of even the simplest claim language." *Q-Pharma*, 360 F.3d at 1301.

Defendant's assertion that the "Court has already reached determinations on the location of the pumps *numerous times*" is incorrect. (Doc. No. 332-1 at 5) (emphasis added). This is an over statement of the facts in this case prior to the August 29, 2019 Ruling. For example, Defendant argues that "[a]s this Court has repeated[ly] held, at least one pump of the testing system must be in the explosion-proof safety housing. *See, e.g.,* Ruling (Dkt. 327) at 4-6." (*Id.* at 12-13). Defendant cites to Docket Number 327 to support its argument. However, Docket Number 327 is the August 29, 2019 Ruling. It was only one day after this Ruling that Defendant filed the present

motion.

More importantly, it was after the August 29, 2019 Ruling that Plaintiff "worked extensively with counsel for PHC on joint documents (jury charges, jury verdict form) that explicitly exclude the systems subject to the Court's ruling and subject of the instant Motion." (Doc. No. 368 at 2). Prior to the August 29, 2019 Ruling, the Court had not explicitly provided a claim construction for the term "high-pressure pneumatics testing equipment" that required it to include "at least one pump." (Doc. No. 327 at 5). Thus, Plaintiff's Third Infringement Contentions were struck by Judge Jackson, prior to assignment to the undersigned, but not because of this construction. Indeed, the Court had not construed any terms at that time. Instead, the Court struck Plaintiff's Third Infringement Contentions because it did not seek leave to amend its infringement contentions per the Local Patent Rules adopted by the parties. (Doc. No. 263 at 3). The undersigned noted that subsequent rulings and orders related to Plaintiff's infringement contentions proceeded under and were informed by Judge Jackson's Order. (*See, e.g.*, Doc. No. 282 at 3). Thus, the Court finds that Plaintiff's conduct was objectively reasonable based on the circumstances. Accordingly, the Court DENIES Defendant's Motion for Rule 11 Sanction and Other Relief.

Finally, the Court is disturbed by certain actions of Defendant in filing its motion for Rule 11 sanctions. Specifically, the Court finds that the inclusion of Brazee & Edwards Law Firm, L.L.C. d.b.a. "Brazee, Edwards, and Durio" (hereafter, "Brazee & Edwards") was not objectively reasonable. Defendant's counsel incorrectly assumed that the "Durio" in the firm "Brazee, Edwards, and Durio," is related to Mr. Steven G. Durio of the law offices of Durio, McGoffin, Stagg & Ackermann, P.C. ("DMSA") who represents Plaintiff. However, the record indicates that "Durio" in Brazee & Edwards is Mr. Lee C. Durio, and Mr. Lee Durio has never met Mr. Steven

G. Durio of DMSA, and to his knowledge is not aware of any relation. (Doc. No. 380 at 3). Moreover, the record further indicates that Defendant failed to provide Brazee & Edwards with the required notice and safe harbor period under Fed. R. Civ. P. 11(c), and also failed to properly serve Brazee & Edwards as required by Fed. R. Civ. P. 5. (*Id.* at 2).

In response, Defendant argues that to the extent Brazee & Edwards "was truly not aware of the draft motion and pending Motion, PHC is willing to withdraw its request for sanctions." (Doc. No. 377 at 10). This is the wrong reply. Under the Federal Rules of Civil Procedure, it was Defendant's duty to make a reasonable inquiry, and then properly serve the motion at least 21 days before filing it with the Court. Defendant failed to follow the rules and went straight for "its attorneys' fees, expenses, and all costs incurred in this litigation, jointly and severally, against . . . Brazee, Edwards, & Durio (under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927)." (Doc. No. 332 at 3). Ultimately, the parties agreed to withdraw the Motion for Sanctions as it relates to Brazee & Edwards, but this and similar actions by Defendant's counsel cast a significant shadow on the manner in which the case was litigated.

**B. Defendant's Motion for Attorney Fees, Expenses, and Costs under 35 U.S.C. § 285.**

Section 285 of the Patent Act provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In *Octane Fitness*, the Supreme Court rejected the two-pronged standard articulated in *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), and clarified what constitutes an exceptional case:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The Supreme Court explained that "[t]here is no precise rule or formula for making" that determination. *Id.* at 1756 (internal quotation marks and citation omitted). In considering the totality of the circumstances, the Supreme Court suggested that district courts should exercise "equitable discretion" in considering a nonexclusive list of factors that could include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

Thus, the inquiry into the objective reasonableness of a party's litigating position is still relevant under *Octane* because, if a case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated," it is "exceptional" under § 285. *Id.* "This includes the conduct of the prevailing party that is seeking attorney's fees." *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1340 (Fed. Cir. 2017). In *Gaymar Industries v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369 (Fed. Cir. 2015), the Federal Circuit clarified that "the conduct of the parties is a relevant factor under *Octane's* totality-of-the-circumstances inquiry, including the conduct of the movant." *Id.* at 1373.

The Federal Circuit has also stated that "although the Supreme Court rejected our *Brooks Furniture* test in *Octane Fitness*, it gave no indication that we should rethink our litigation misconduct line of § 285 cases. Indeed, the Supreme Court sanctioned a district court's discretion to find a case exceptional based on 'the unreasonable manner in which the case was litigated.'" *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015) (citing *Octane Fitness*, 134 S. Ct. at 1756). The opinion concluded that "under *Octane Fitness*, the district court must consider

whether the case was litigated in an unreasonable manner as part of its exceptional case determination, and that district courts can turn to our pre-*Octane Fitness* case law for guidance." *Id.*

Moreover, the Federal Circuit has stated that "[t]he Supreme Court's decision in *Octane* did not . . . revoke the discretion of a district court to deny fee awards even in exceptional cases. Long before *Brooks Furniture*, we held that 'an exceptional case does not require in all circumstances the award of attorney fees.'" *ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) (citing *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986)). That said, the Federal Circuit has also stated that "given the strict standard in *Therasense*, we are of the view that a district court must articulate a basis for denying attorneys' fees following a finding of inequitable conduct." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1307 (Fed. Cir. 2018). In addition, after *Octane Fitness*, a fee-seeking party must show that it is entitled to § 285 fees by a "preponderance of evidence," *id.* at 1758—a "change in the law lower[ing] considerably the standard for awarding fees," *Oplus Technologies, Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374 (Fed. Cir. 2015).

Thus, the issue before the Court is whether, considering the totality of the circumstances, this case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. Defendant argues that this case is "exceptional" under § 285 for the following reasons:

(1) Defendant prevailed on its inequitable conduct counterclaim (Doc. No. 399-1 at 6-10);

(2) Plaintiff concealed documents (*Id.* at 10-15);

(3) Plaintiff took unreasonable infringement positons (*Id.* at 15-19);

(4) Plaintiff made unreasonable settlement demands (*Id.* at 19-20);

(5) Plaintiff made false assertions that Defendant engaged in litigation misconduct (*Id.* at 20-22);

(6) Plaintiff dropped it LUTPA claims at the last moment (*Id.* at 22).

Defendant seeks attorney fees and expenses in the amount of $1,309,510.02 ($1,174,276.98 in fees adjusted for the $16,960.56 previously paid by Plaintiff (Doc. No. 99), and $135,233.04 in expenses), plus costs, prejudgment and post-judgment interest. (Doc. No. 399 at 4, Doc. No. 399-1 at 22).

After considering the facts and the history of this case, the Court finds that it is not "exceptional" given the totality of the circumstances. More specifically, the Court finds Defendant's own conduct indicates that it does not have "clean hands" sufficient to render this an "exceptional case." *Motiva Patents, LLC v. Sony Corp.,* No. 9:18-CV-00180-JRG-KFG, 2019 U.S. Dist. LEXIS 166549, at *42 (E.D. Tex. Sep. 27, 2019) ("[One] who seeks attorneys' fees under § 285 must have clean hands.").

Defendant first argues that the Court's finding of inequitable conduct "alone is sufficient for a finding of exceptional case." (Doc. No. 99-1 at 24). Contrary to Defendant's argument, a finding of inequitable conduct is one factor the Court considers in exercising its "equitable discretion," and this finding alone does not make the case exceptional. Indeed, other district courts have noted that "the imposition of fees under Section 285, even after *Octane Fitness*, remains an exception to the American Rule, the standard for finding a case exceptional befits its definition—'uncommon,' 'rare,' or 'not ordinary.'" *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 848 (N.D. Ill. 2014) (citing *Octane Fitness*, 134 S. Ct. at 1756).

Moreover, the Court's inequitable conduct decision was based on Mr. Lavergne's failure to disclose pre-critical date sale activities to the USPTO. Other courts have held that a failure to

disclose in and of itself does not warrant a finding of exceptionality. *See, e.g., Isco Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 511-12 (D. Del. 2003) (no exceptional case despite inequitable conduct finding based on failure to disclose prior art reference); *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1377-78 (Fed Cir. 2002) (no exceptional case when inventors failed to name additional inventor); *c.f., Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 849 (N.D. Ill. 2014) (exceptional case when inventor made affirmative, false representations to the PTO about having reduced the patented invitation to practice in order to "swear behind" prior art.). Here, the fact that Mr. Lavergne made no affirmative misrepresentations to the USPTO weighs against finding this case exceptional. Accordingly, the Court is convinced that the evidence of inequitable conduct, although substantial, does not reveal conduct that is so egregious as to render the case exceptional.

Defendant next argues that Plaintiff "has made enormous unsupportable settlement demands." (Doc. No. 399-1 at 24). The first issue is that Defendant failed to inform the Court in its opening brief that Plaintiff proposed a "walkaway" settlement offer in January 2017, wherein each party would mutually dismiss their claims and assume their own costs. Defendant also failed to mention that it denied that offer that same day and made no counteroffer. (Doc. 423-2 at ¶ 11). Specifically, on January 19, 2017, counsel for Defendant emailed Mr. Chase Manuel, advising that "this case needs to be brought to a swift end." (Doc. No. 423-5 at ¶ 57). Defendant's counsel also wrote in that email, "At a certain point, there will be no opportunity to dismiss this case that will not include a payment of fees from or request for fees against your client, your firm, and you personally. You are on the precipice of crossing that point. Your client has a bad and unlawful case. It needs to end now." (*Id.* at ¶ 57).

Plaintiff's attorneys indicated that they perceived that email to be a "walkaway" settlement

offer from Defendant, wherein each party would mutually dismiss their claims, with each party to assume their own costs. (Doc. No. 423-2 at ¶ 11). On January 27, 2017, Mr. Manuel wrote to Defendant's counsel, "We consider your [January 19, 2017] email to be a walk away offer with the parties bearing their own costs and attorneys fees. In light of this, Total accepts." *Id.*

Defendant's attorney responded, "I do not have authorizite [sic] to propose a walk-away and should not be construed to be doing so. . . . With that said, you have made an offer and I am legally required to present it to our client. I will do so and get back to you promptly." (Doc. No. 423-5 at ¶ 57.). Defendant rejected the walkaway settlement offer that same day. (Doc. No. 423-2 at ¶ 11).

Defendant's omission of Plaintiff's "walkaway" settlement offer is very troubling to the Court. It would be one thing if the settlement discussions were not at issue, but since Defendant have made this a primary part of its motion, it is completely misleading to contend that "Total and its counsel continued to demand unreasonable sums of money for the life of the patent." (Doc. No. 399-1 at 20). This is simply a lack of candor to the Court.

Furthermore, a review of Defendant's attorneys' billing for January 27 and 30, 2017, suggest that Defendant's motive was to deny the walkaway settlement, seek a judgment against Plaintiff, and then file the present sanctions motion to hit its competitor with a large judgment. Specifically, a January 27, 2017 billing entry states the following: "Review email from Chase Manuel regarding Total Rebuild position regarding possible settlement; confer with Sam Miller regarding attempt by Total Rebuild to walk away from case." (Doc. No. 399-7 at 85). On January 30, 2017, Defendant's attorney recorded the following entry: "Telephone conference with Mark Mire and Bret Adams regarding proposal for walk-away settlement from Total Rebuild, and discussion of alternative settlement proposal versus pursuant of judgment and legal costs; follow

up with Sam Miller regarding same." (*Id.* at 86). Thus, it appears that Defendant squashed any settlement discussion and continued the litigation in hopes of seeking a significant award of attorneys' fees against its direct competitor.

Defendant argues that "there is nothing wrong with that." (Doc. No. 431 at 6). As it relates to determining whether this is an exceptional case, there is certainly something wrong with Defendant's actions. As a matter of judicial and economic efficiency, Defendant's deliberate choice to continue to incur costs and attorneys' fees without engaging in any meaningful settlement discussions weighs against finding the case exceptional. Defendant has every right to its day in Court. But at the same time, Defendant must also assume the risk with its decision to continue the litigation without attempting to negotiate. Accordingly, Defendant's choice to continue to incur costs and attorneys' fees, and refusing to engage in good-faith settlement discussions weighs against finding this case to be exceptional.

Defendant further argues that Plaintiff concealed documents. (Doc. No. 399-1 at 24). The Court first notes that the issue of the concealed documents was considered in the Court's Findings of Fact and Conclusion of Law, which determined that the '428 Patent was unenforceable due to inequitable conduct. (Doc. No. 427 at 8-12). The Court further notes that Plaintiff paid all costs associated with the forensic examination (an amount over $14,000) without intervention by the Court, as well as paying the Court ordered $16,960.56, representing the reasonable attorneys' fees incurred by Defendant in preparing and submitting matters related to its Motion to Compel. (Doc. No. 99 at 10). Accordingly, Defendant was compensated for the cost related to the Motion to Compel.

Defendant also argues that Plaintiff took unreasonable infringement positons. Defendant references its pending Rule 11 motion in support of its argument. (Doc. No. 399-1 at 24). As

discussed above, the Court has addressed the Rule 11 motion, and found that Plaintiff did not take unreasonable infringement positons, and that its claims were brought in good faith.

Defendant next argues that Plaintiff made false assertions that Defendant engaged in litigation misconduct (Doc. No. 399-1 at 20-22). The Court notes that it was not only Plaintiff that was previously warned by the Court regarding its behavior. Indeed, after Defendant filed its second discovery motion, the Court "admonished *both* parties regarding their behavior in the discovery process, and encouraged the parties to cooperate from this point forward." (Doc. No. 136 at 2) (emphasis added).

The Court further finds that Defendant's counsel has engaged in counter-productive and cost-increasing litigation tactics. For example, Defendant's counsel refused to consent to an extension of time after he learned that Plaintiff's new counsel was traveling in Japan. In fact, in an email that Defendant's counsel sent to Plaintiff's counsel, Defendant's counsel boasted that "if you decide to back out when the Court doesn't grant the motion for extension, I'm always open to making new connections." (Doc. No. 433-2). Similarly, Defendant's counsel's name-calling of his adversary as an "untruthful predator" (Doc. No. 399-1 at 6) to describing Mr. Lavergne as "untruthful" and having "feigned ignorance" (*id.* at 9), to the inflammatory statements of Plaintiff's actions as "devoid of credibility" (*id.* at. 8), "false and misleading" (*id.* at 14), in "telling display of bad faith" (*id.* at. 18 n. 1) and "hoping to run out the clock" (*id.* at 21), to the characterization of this case as "ripe for inclusion in a patent textbook" (*id.* at 4), all weighs against finding this case exceptional. Granted, these actions and statements come at the end of the case, but this is just a microcosm of Defendant counsel's approach throughout the case.

In sum, these type of litigation tactics lack the decorum required when practicing before a federal court. *See, e.g., Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999) (denying

motion for fees where movant's brief was "long on hyperbole and personal attacks and short on thoughtful analysis"). Furthermore, it is this type of behavior that the Court previously "admonished both parties" about, because it creates an environment that is counter-productive and inefficient for both the Court and the parties litigating the dispute. (Doc. No. 136 at 2). Accordingly, Defendant is not entitled to benefit from fueling an environment that increased the cost to litigate this case.

Finally, Defendant argues that Plaintiff dropped it LUTPA claims at the last moment. (Doc. No. 399-1 at 22). Specifically, Defendant argues that Plaintiff did not have a reasonable basis to assert this claim, and simply omitted it from the proposed Pretrial Order. (*Id.* at 22). Plaintiff did not respond to Defendant's argument regarding the LUTPA claims, which suggests that this fact weighs in favor of finding the case exceptional. However, Defendant is not without blemish and also made untimely procedural steps. Specifically, the Court points to the *Daubert* motion filed by Defendant on August 19, 2019, which was denied by the Court as untimely. (Doc. No. 309).

In the Order, the Court stated that the parties were "on notice that *Daubert* motions should not be filed on the eve of trial, because these motions require time for proper evaluation." (Doc. No. 359 at 5) (citing *Feliciano-Hill v. Principi*, 439 F.3d 18, 24 (1st Cir. 2006) ("Parties have an obligation to object to an expert's testimony in a timely fashion, so that the expert's proposed testimony can be evaluated with care.")). Defendant confirmed that it received the Royston Report on November 30, 2018, and failed to provide any reasonable explanation for its statement that it was "unable to depose Total about the documents." (*Id.* at 5). Likewise, the Court stated that Defendant failed to explain why it moved to exclude the testimony of Plaintiff's infringement expert on January 8, 2019, but did not move to exclude the Royston Report on or near that same date. (*Id.* at 6). Accordingly, similar to Plaintiff's LUTPA claims, Defendant's untimely *Daubert*

motion needlessly increased the cost of litigation, and neither party is entitled to shift the entire blame to the other side.

In summary, the Court in exercising its equitable discretion finds that the facts of this particular case, when considered in the context of the totality of the circumstances, do not indicate that it stands out from others as being "exceptional." Accordingly, the Court DENIES Defendant's Motion for Attorney Fees, Expenses, and Costs under 35 U.S.C. § 285.

**C. Defendant's Motion for Attorney Fees, Expenses, and Costs under 28 U.S.C. § 1927.**

Defendant moves the Court for entry of an award of attorneys' fees, expenses, and costs under 28 U.S.C. § 1927 and the inherent power of the Court against, jointly and severally, Durio, McGoffin, Stagg, Ackerman, PC and attorneys Chase A. Manuel, Steven G. Durio, William W. Stagg, and Ryan Goudelocke (collectively, "Plaintiff's Counsel"). Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Section 1927 does "not distinguish between winners and losers or between plaintiffs and defendants. The statute is designed to curb litigation abuses by counsel, irrespective of the merits of the client's claims or defenses." *Manton v. Strain*, 2011 U.S. Dist. LEXIS 27539, at *16 (E.D. La. 2011) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980)). An award of attorney's fees under 28 U.S.C. § 1927 is considered "'punitive in nature' and should only be awarded if a party 'multiplies the proceedings . . . unreasonably and vexatiously.'" *Manton*, 2011 U.S. Dist. LEXIS 27539, at *17 (quoting *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010); *see also Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416 (5th Cir. 1994) (noting that Section 1927 must be strictly construed

so as "not to dampen the legitimate zeal of an attorney in representing his client"). This standard, which "focuses on the conduct of the litigation and not on the merits, requires clear and convincing evidence that every facet of the litigation was patently meritless and evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Manton*, 2011 U.S. Dist. LEXIS 27539, at *17 (internal quotations omitted).

"Punishment under this section, however, is 'sparingly applied, and except when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in . . . .'" *Butler v. Rapides Foundation*, 365 F. Supp. 2d 787, 797 (W.D. La. 2005) (quoting *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996). "Accordingly, the emphasis in Section 1927 is that personal liability of counsel is only for the excess costs, expenses, and fees where counsel both 'unreasonably and vexatiously' multiplies the litigation." *Butler*, 365 F. Supp. 2d at 797.

In the present action, Defendant's briefs do not contain clear and convincing evidence that would persuade the Court that every facet of the litigation was patently meritless and evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. *See Manton*, 2011 U.S. Dist. LEXIS 27539, at *17. Accordingly, the Court DENIES Defendant's Motion for Attorney Fees, Expenses, and Costs under 28 U.S.C. § 1927.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Rule 11 Sanctions and Other Relief [Doc. No. 332] is DENIED; Defendant's Motion for Attorney Fees, Expenses, and Costs under 35 U.S.C. § 285 [Doc. No. 399] is DENIED; and Defendant's Motion for Attorney Fees, Expenses, and Costs under 28 U.S.C. § 1927 [Doc. No. 401] is DENIED.

MONROE, LOUISIANA, this 8th day of November, 2019.

                                              TERRY A. DOUGHTY
                                     UNITED STATES DISTRICT JUDGE